IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ALLSTATE INSURANCE COMPANIES,

    Plaintiff,

vs.

CHARLES HERRON,

    Defendant.
_____)

NO: A04-0043 CV (JKS)



RECEIVED
SANDBERG, WUESTENFELD & COREY
OCT 13 2005
ATTY._____ L. ASST_____
APPROVED FILE_____

DELIVERED 10:55

DEPOSITION OF SCOTT MILLAR

Thursday, September 29, 2005, 9:03 a.m.

Anchorage, Alaska

RECEIVED JAN 13 2006



### Alaska Stenotype Reporters
511 West Ninth Avenue
Anchorage AK 99501-3520
*Serving Alaska Since 1953*

Telephone 907.276.1680
Email AkSteno@aol.com
Fax 907.276.3016

Rick D. McWilliams, RPR, Ret.
Fred M. Getty, RPR, Ret.

EXHIBIT 9

Page 1

Scott Millar — Deposition — June 29, 2005

### Page 49

1  identifier numbers for every individual who was
2  involved, correct?
3  A.  Yes, I would believe so. Either
4  peripherally or directly.
5  Q.  And would you have determined which of those
6  people were entitled to med pay benefits -- or med pay
7  coverage? I'm sorry. To med pay coverage?
8  A.  Yes. And typically, when a file is
9  transferred to me, that lets me know that there most
10 likely is med pay coverage available.
11 Q.  Okay. Now, you realize Angelina Trailov was
12 seriously injured in the accident, correct?
13 A.  Based on the initial entry here and the
14 exhibit in front of me, from what I can recall.
15 Q.  And did you do anything to determine whether
16 Angelina Trailov was entitled to med pay coverage?
17 A.  I believe I looked at the coverage screens
18 to see what was available.
19 Q.  And there would have been a coverage screen
20 already set up for each of these individuals?
21 A.  There would be --
22 Q.  Or let me stop putting words in your mouth.
23 Tell me what you would have looked at and what would
24 be there.
25 A.  There would be a main coverage screen under

### Page 50

1  the named insured's ID identifying all coverages.
2  Q.  In other words, identifying the coverages
3  that existed on the policy.
4  A.  Yes.
5  Q.  It would look kind of like a dec sheet that
6  says these are the things?
7  A.  Yes.
8  Q.  Okay. But how about determining whether or
9  not Angelina Trailov was entitled to med pay coverage;
10 did you do that?
11 A.  I believe so.
12 Q.  And what did you determine?
13 A.  That there was coverage available.
14 Q.  Did you disclose the existence of med pay
15 coverage to Miss Trailov or her mother?
16 A.  I never spoke with them, because when I got
17 to the file, there was an attorney involved.
18 Q.  Did you disclose the existence of med pay
19 coverage to the attorney involved?
20 A.  I don't believe so. I believe that it was
21 already disclosed at that time.
22     MR. SANDBERG: Okay. Let's take a look at
23 our general claim log, because I haven't marked the
24 earlier pages.
25     Let's go off the record for a second.

### Page 51

1      (Discussion off the record.)
2  BY MR. SANDBERG:
3  Q.  Let's go back on record, if we may. What
4  I've just done is produced -- or provide you with a
5  copy of the claim file sans the redactions as it was
6  originally produced to Mr. Valcarce. And what I'd
7  like you to do is simply go through the claim log of
8  events prior to October the 1st, 2002 and tell me if
9  you are able to determine who disclosed the existence
10 of med pay coverage to Angelina Trailov or her lawyers
11 prior to October 1st, 2002.
12 A.  You want me to go through all the claim
13 file, the ones that are tabbed here?
14 Q.  No. Just look through the log for any dates
15 prior to October 1st.
16     MR. WILKERSON: He's focussing on before
17 October --
18     THE WITNESS: Before October 1st?
19     MR. SANDBERG: Before the claims --
20     MR. WILKERSON: In other words, it's not a
21 huge volume just --
22 BY MR. SANDBERG:
23 Q.  Before October 1st.
24     Keep in mind, Scott, I'm just asking you
25 prior to October.

### Page 52

1  A.  Yes. And I just got to that right now.
2  There's a number of screens that I've never seen
3  before, so I had to look through them.
4  Q.  Okay.
5  A.  And they are specifically dealing with Kathy
6  Berry's --
7      Can you repeat your question again?
8  Q.  Yes. Do you see anywhere in the claim
9  log prior to the time you were assigned the med
10 pay adjustment that someone disclosed to Ms. Trailov,
11 her mother or their lawyer that med pay coverage
12 existed?
13 A.  Not from this claim file.
14 Q.  Okay. If the existence of med pay coverage
15 was disclosed, would you expect to be able to find it
16 in the claim log?
17 A.  Normally.
18 Q.  As we sit here today, are you aware that any
19 person that you know disclosed the existence of med
20 pay coverage to Ms. Trailov, her mother or their
21 lawyer?
22 A.  Not without making assumptions, no.
23 Q.  No. I'm asking what you know.
24 A.  I do not.
25 Q.  Med pay coverage isn't mandatory, correct?

Scott Millar                         Deposition                         June 29, 2005

### Page 53

1  A.  Correct.
2  Q.  So some policies will have it and some
3  won't, correct?
4  A.  Correct.
5  Q.  And there's no way for Ms. Trailov, her
6  mother or their lawyer to know unless someone at
7  Allstate tells them, correct?
8  A.  Or our named insured communicates that to
9  them.
10 Q.  Fair enough. So when you got this
11 assignment, did you send out a package like we looked
12 at with Exhibit number 1 or any part of it to Angelina
13 Trailov, her mother or their lawyer?
14 A.  I don't believe so.
15 Q.  Why not?
16 A.  Looking back, I was probably expecting to
17 work in conjunction with the attorney that was
18 involved and expecting them to forward the
19 documentation or the bills to me to address.
20 Q.  Did you send that attorney a medical
21 authorization?
22 A.  Not that I can recall, not within the claim
23 file.
24 Q.  Who's the attorney we're talking about?
25 A.  It's just what -- it's Angstman law group.

### Page 54

1  Michele Power, I believe.
2  Q.  Did you -- you didn't send Ms. Power a
3  medical authorization?
4  A.  Not that I can recall.
5  Q.  Were you hoping nobody would ever make a med
6  pay claim on behalf of Ms. Trailov?
7  A.  No.
8  Q.  Had someone told you not to send a medical
9  authorization form?
10 A.  No.
11 Q.  Had someone told you not to disclose the
12 existence of coverage?
13 A.  No.
14 Q.  We are certainly very quickly going to
15 exceed my ability to handle paper here. But take a
16 look at page -- what's stamped 81, Bates number 81
17 there, if you can.
18    MR. WILKERSON: Scott --
19    THE WITNESS: I'm there.
20 BY MR. SANDBERG:
21 Q.  Now, looking at 81, do we see an entry
22 involving you on 81?
23 A.  Yes.
24 Q.  And can you translate it for me?
25 A.  That's just addressing a letter that went to

### Page 55

1  our named insured.
2  Q.  And SMO6?
3  A.  And I can't recall what letter, specific
4  letter that is, based on that acronym.
5  Q.  You don't know what an SMO6 is?
6  A.  Not that I can recall at this time. I'm
7  assuming that it is a -- just identification letter to
8  Mr. Herron.
9  Q.  Okay. And SSM is you?
10 A.  Correct.
11 Q.  Okay. And we're looking at something that
12 you did on October 3rd, 2002, correct? You sent some
13 kind of a letter to Mr. Charles Herron?
14 A.  Yes.
15 Q.  And would that have been something similar
16 to the -- to Exhibit number 1 where you invited
17 Mr. Herron to submit a med pay claim or forward an
18 authorization?
19 A.  Without looking at the letter, I can't
20 recall if it had all that or a portion of that.
21 Q.  Well, did you identify to Mr. Herron that he
22 had med pay benefits available, if you recall?
23 A.  I believe that's just a transfer letter
24 letting him know that the file has been transferred to
25 me, not disclosing any coverages.

### Page 56

1  Q.  I see. The next place I see you in the file
2  is at 18.
3     MR. WILKERSON: I'm sorry. Eighteen?
4     MR. SANDBERG: Eighteen.
5     MR. WILKERSON: He's there.
6     THE WITNESS: Yeah, I'm there.
7  BY MR. SANDBERG:
8  Q.  Can you tell me what we're looking at at 18?
9  A.  This is when I'm indicating that we do not
10 have name and address information to send on any
11 letters.
12 Q.  Now, let me ask -- first of all, the date of
13 this entry is October 22nd, 2002, correct?
14 A.  Correct.
15 Q.  And the author of this note is you, correct?
16 A.  Yes, correct.
17 Q.  And it concerns your med pay adjustment,
18 correct?
19 A.  Correct.
20 Q.  And it says Renee, do we have an address and
21 phone number on 04 to send MAA and transfer letter.
22 "04" would be Angelina Trailov?
23 A.  Correct.
24 Q.  And --
25 A.  Or any -- or any other information for

