Rebecca J. Hozubin
Wilkerson Hozubin
310 K Street, Suite 405
Phone: 907 276-5297
Fax: 907 276-5291
E-mail: rebecca@wilkersonlaw.net
AK Bar No. 9806016

Attorneys for Plaintiff Allstate

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANIES, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> CHARLES HERRON, ) <br> ) <br> Defendant. ) <br>_____) | Case No. A04-0043 CV (TMB) |

**MEMORANDUM IN SUPPORT OF ALLSTATE'S
MOTION TO ESTABLISH LAW OF THE CASE**

I.   **Introduction**

The issue in this case, as set forth in the parties' Joint Status Report and in this court's prior Orders, is one of alleged insurer **third-party bad faith**: whether Herron's breach by confessing judgment and assigning rights was excused by a total prior contract breach by Allstate. More specifically, was Herron's breach of contract justified because Allstate violated its duty to act in Herron's best interests by failing to accept Trailov's and Kenick's third-party liability policy limits demands on or before the arbitrary deadline?

An insurer's duty towards **first-party** claimants is materially different than its duty to defend and indemnify its insured in third-party claims. For that reason, an insurer's handling of a first-party medical payments claim is irrelevant to the issue of insurer third-party bad faith.

However, contrary to the parties' Joint Status Report and contrary to clear Alaska law, Herron's Motion for Summary Judgment wrongfully and repeatedly seeks to inject consideration of the manner in which Allstate supposedly mishandled Trailov's **first-party** medical payments claim. Herron then attempts to bootstrap Trailov's first-party claims to his claims of alleged bad faith handling of **third-party** liability claims against Herron. Trailov is not a party to this action, Herron has no standing to assert such claims,[1] and (as indicated above) the issue in this case is whether or not Allstate breached duties owed to Herron in connection with the third-party claim against him.

Permitting Herron to inject first-party issues regarding medical payments in this third-party case will unfairly prejudice Allstate's defense of the third-party bad faith claim. Further, permitting Herron to assert claims that relate in no way to him will potentially confuse and mislead the fact finder as to the appropriate standard by which Allstate's conduct

---

[1] Docket 91.

should be judged as well as the genuine issues to be decided. As such, Allstate asks the court to enter an order precluding Herron from relying upon, or asserting, any allegations of wrongdoing by Allstate in its adjustment of any first-party claims.

## II. Background[2]

This declaratory judgment action stems from a single-vehicle accident that occurred on September 14, 2002. Allstate's insured, Charles Herron, was driving at the time of the accident. Angelina Trailov, a passenger in Herron's vehicle, was injured. Herron's policy provided for liability, medical payments and underinsured motorist coverage.

On September 25, 2002, Trailov, through her mother Mary Kenick and her attorney, asserted a claim against Herron's liability policy.[3] As of that date, neither Trailov nor Kenick asserted a claim under the medical payments provision of the policy.[4]

On February 14, 2003, Trailov and Kenick made separate policy limits demands to Allstate for their respective claims.

---

[2] In order to avoid duplication of massive exhibits, all of the evidentiary support for these facts can be found in the exhibits to Allstate's Opposition to Herron's Motion for Summary Judgment and are incorporated herein.
[3] It was not until February 2003 that Mary Kenick, though her daughter's attorney, asserted a claim for negligent infliction of emotional distress.
[4] On May 12, 2003, Allstate tendered medical payments policy limits to Trailov.

3

On May 30, 2003, Allstate tendered a full policy limit to Trailov and made a $10,000 offer to Kenick, noting that it still did not have the requested documentation to fully evaluate Kenick's claim.

On May 30, 2003, or after, Allstate learned that Trailov and Kenick, through new counsel, had withdrawn their offers to settle.

On July 3, 2003, Trailov and Kenick filed suit in state court in Bethel against Herron for personal injury damages allegedly resulting from the September 14, 2002 automobile accident.[5]

Allstate retained James Valcarce as independent counsel for Herron.[6] Valcarce entered an appearance and filed an Answer on Herron's behalf. Allstate reaffirmed that it had tried unsuccessfully to settle Trailov's claims for policy limits, and specifically authorized Valcarce to settle Trailov's claims within the policy limits.

On February 16, 2004, the parties attempted to mediate the underlying personal injury action. After mediation failed, Allstate received a letter from Valcarce demanding that Allstate

---

[5] *Mary Kenick, individually and as parent and natural guardian of Angelina Trailov, a minor v. Charles Herron*, 4BE-03-194 CI.
[6] Valcarce had been in the role of independent counsel since the accident; defending Herron's drunk-driving charges, advising Herron of possible excess exposure, and communicating with Allstate to, among other things, demand settlement within policy limits.

agree to the terms of a Confession of Judgment and settle for a sum in excess of policy limits or provide an assurance letter that it would cover any judgment against Herron in excess of policy limits.  Allstate declined and informed Herron that, if necessary, it would file a declaratory judgment action to determine the rights and obligations between itself and Herron.  Herron responded that same day by acknowledging Allstate's position and indicating that Herron would have no choice but to sign the Confession of Judgment.

Given Herron's refusal to cooperate and the very real threat of coercive litigation, Allstate filed this declaratory judgment action on March 2, 2004.  Allstate sought a declaration from the court that Herron would be in breach of his contractual obligations to Allstate under the insurance policy without excuse by confessing judgment.

On April 2, 2004, one month after Allstate filed this action and three weeks after Herron's counsel was provided the Complaint, Herron confessed judgment in favor of Trailov and Kenick in the amount of $1,937,500 and assigned any claims he had against Allstate to Kenick, individually and on Trailov's

behalf, in return for a covenant from Trailov and Kenick not to execute against him.[7]

On November 24, 2004, Herron filed his Statement of Issues in this case.[8] All of the issues that Herron asserted therein involve third-party bad faith claims. This was reaffirmed in the parties' recently filed Joint Status Report:

> 6. Principle factual issues:
>
> a. Whether Allstate's claim handling breached the contract of insurance.
>
> b. Whether Herron's conduct breached the contract of insurance.
>
> c. If Herron's conduct did not breach the contract of insurance, whether the amount of damages to which he confessed is reasonable.[9]

Herron filed his Motion for Summary Judgment on April 28, 2006.[10] All of the assertions contained in Herron's Motion for Summary Judgment, as in his Statement of Issues, set forth third-party bad faith. Herron has not asserted, and could not assert, a claim of first-party bad faith on behalf of non-parties like Angelina Trailov.

---

[7] Allstate amended the Complaint on April 2, 2004, to reflect that Herron had followed through on his threat to confess judgment to Trailov and Kenick.
[8] Docket 44.
[9] Docket 113.
[10] Allstate's Opposition is currently due by June 16, 2006.

III. **Discussion**

Liability insurance protects the insured from claims asserted by third parties, thus it is third-party coverage. First-party insurance covers insureds directly from harm to them. Within both types of coverage, there is a covenant of good faith and fair dealing. "The covenant of good faith and fair dealing is implicit within every insurance contract; it requires 'that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'"[11]

While an insurer has a duty of good faith and fair dealing in handling both first and third-party claims,[12] an insurer's relationship with a first-party claimant is different from its relationship with its insured in a third-party claim.[13] The different relationships result in different legal duties for the insurer.

A first-party claimant is a person making a claim directly against the insurer for payment under the terms of the insurance policy. In this case, Trailov was a first-party insured for

---

[11] Jackson v. American Equity Ins. Co., 90 P.3d 136, 142 (Alaska 2004), quoting Guin v. Ha, 591 P.2d 1281, 1291 (Alaska 1979).
[12] State Farm Fire & Cas. Co. v. Nicholson, 777 P.2d 1152, 1156 (Alaska 1989).
[13] This is readily apparent in the insurance regulation which separate out an insurer's duties between first-party and third-party claims. See 3 AAC 26.010 et seq.

first-party medical payments coverage because she was a passenger in the Herron vehicle.

The nature of the relationship between an insurer and its insured in a first-party context is essentially that of a creditor and debtor. Unlike a third-party claim, a first-party claim exists against the policy and not against the insured. The insured that caused the injury has no liability exposure in connection with a first-party claim. Thus, there is no fiduciary relationship[14] between the insurer and the non-claimant insured who caused the injury in this first-party context. The insurer's duty in the first-party context is limited to paying the claim, unless there is a reasonable basis not to do so.[15] Thus, in a first-party context, the claim is brought directly against the insurer by the first party (e.g., *Trailov v. Allstate*).[16]

---

[14] Although this relationship is not that of a true fiduciary, such as in a trustor/trustee relationship, it is a special relationship involving the protection of the insured from the lawsuit. *See* Jackson v. American Equity, 90 P.3d 136, 142 (Alaska 2004).
[15] Peter v. Progressive, 2006 WL 438658, p. 4; Hillman v. Nationwide, 855 P.2d 1321, 1324 (Alaska 1993).
[16] And in fact, Trailov is pursuing a claim against Allstate for Allstate's actions in adjusting her medical payments claim: "Allstate and its agents owed a duty to disclose Angelina's medical coverage to her attorney. After a prompt investigation, Allstate and its agents owed a duty to promptly pay that medical coverage." Exhibit 1, at 5 (attached).

A third-party claim, on the other hand, arises when a third party asserts a claim directly against the insured for damages.[17] The insurer is required to defend and indemnify its insured. Pursuant to the terms of the policy, the insured grants the insurer control over the defense and settlement of covered claims on behalf of its insured. This contract condition creates the special relationship between the insurer and its insured, with a concurrent duty of the insurer to exercise good faith and fair dealing in handling the claims against its insured and protecting the insured's interests.[18] Consistent with this duty, an insurer has a number of obligations to its insured, including an obligation to inform its insured of settlement offers, and to tender policy limits when there is a substantial likelihood of an excess verdict against the insured.[19] In a third-party situation, the insurer must place its insured's interests on par with its own to avoid wrongfully exposing the insured to personal liability.

Examination of Allstate's differing duties in the first and third-party claims in this case illustrates why Allstate's

---

[17] Lloyd's & Inst. of London Underwriting Companies v. Fulton, 2 P.3d 1199, 1207 n. 29 (Alaska 2000).
[18] O.K. Lumber v. Providence Wash. Ins. Co., 759 P.2d 523 (Alaska 1988).
[19] Jackson v. American Equity, 90 P.3d 136, 142 (Alaska 2004); Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin, 828 P.2d 745, 768 (Alaska 1992).

conduct in the first-party medical payments context is irrelevant to Herron's claims of insurer third-party bad faith.[20]

Allstate's duty in the third-party setting was to protect Herron's interests in the context of Trailov's and Kenick's liability claims. Trailov's right as an insured for purposes of medical payments coverage was a first-party claim enforceable solely against the policy, not against Herron. Trailov became a first-party insured only because she was a passenger in Herron's vehicle. Herron's conduct, and indeed his existence, were irrelevant to Trailov's first-party claims. Allstate's conduct in regards to Trailov's medical payments claim posed no risk at all to Herron. It simply cannot be said that Allstate violated its fiduciary duty to defend and indemnify Herron by allegedly engaging in bad conduct to a separate insured in a first-party case.

Allstate's handling of Trailov's first-party medical payments claim sheds no light on Herron's claim of insurer third-party bad faith. Any evidence regarding Allstate's handling of Trailov's medical payments claim is irrelevant and should be excluded from evidence at trial.

Even if there were some marginal relevance to Allstate's handling of Trailov's first-party medical payments claim, such relevance is outweighed by the likelihood that such evidence

---

[20] Federal Rule of Evidence 401.

will prejudice the fact finder against Allstate and cause confusion as to the real issue in this case.[21]

Assuming for the sake of argument that Herron produces some evidence that Allstate acted improperly in handling Trailov's first-party medical payments claim against Allstate, that evidence would potentially taint the fact finder's view of Allstate's conduct in the context of the real issue in the case: Allstate's handling of Trailov's and Kenick's third-party claims against Herron. Such evidence would bias the fact finder against Allstate, risking a finding based on emotional reaction to irrelevant conduct rather than the evidence in the case.

Permitting Herron to inject first-party medical payments issues involving non-party, separate insureds to his third-party bad faith case also will cause confusion as to the appropriate standard by which to judge Allstate's conduct vis-à-vis its insured.[22]

Further, such evidence is inadmissible to demonstrate Allstate acted in conformity.[23] An insured could not meet his burden of proof by showing breach to individuals not party to the insurance contract. There is no argument that a failure to timely pay a first-party property damage claim to one insured could be evidence of breach of the duty to defend and indemnify

---

[21] Federal Rule Evidence 403.
[22] Federal Rule Evidence 403.
[23] Federal Rule Evidence 404(b).

a separate insured.[24]  An insured must prove breach of <u>his</u> contract; must prove breach of duties owed to <u>him</u>, not to others and not separate and independent duties owed to others.

Yet, this is what Herron attempts.  Herron dwells, almost to the exclusion of all other "evidence," on Allstate's supposed maltreatment of medical payments claims to separate insureds who are not parties to this litigation: individuals owed separate and distinct legal duties under separate contracts of insurance, which duties are judged by a different legal standard.  Herron must be made to prove his case with evidence of Allstate's treatment of **him** in connection with the third-party liability claim which was asserted **against him**.

This is not to say that Herron is to be precluded from putting on all evidence he can muster to show that Allstate's handling of his third-party liability claim breached Allstate's duties to <u>him</u>.  It is only the first-party claim conduct that is irrelevant and inadmissible.

As noted above, the real issue in this case, as set forth in the parties' Joint Status Report, and in this court's prior Orders, is one of insurer third-party bad faith: whether Herron's breach by confessing judgment and assigning rights was

---

[24] If this is taken out of the insurance context, the court certainly would not permit John to put on evidence that Jane was treating Bill unfairly to prove Mary treated John unfairly. Federal Rule of Evidence 404(b) specifically prohibits this.

excused by a total prior breach by Allstate.  Specifically, was Herron's breach of contract justified because Allstate violated its duty to act in Herron's best interests by failing to accept Trailov's and Kenick's liability policy limits demands on or before the arbitrary deadline?

The Alaska Supreme Court previously disapproved of injecting an insurer's duties in a first-party bad faith claim into a third-party bad faith case.  In *Jackson v. American Equity*,[25] a third-party bad faith case, the second paragraph of Jury Instruction No. 22 was at issue.  The instruction provided that:

> Bad faith does not mean bad judgment or negligence, but means having a dishonest purpose through some motive of self-interest or ill-will, or having maliciousness or hostile feelings towards its insured, or acting with reckless indifference to the interests or rights of its insured.[26]

The Alaska Supreme Court specifically disapproved the instruction in a third-party bad faith case, stating that:

> Because the second paragraph of Instruction No. 22 incorrectly states the standard for finding bad faith in third-party insurance disputes, this paragraph should not have been submitted to the jury.  The disputed language appears in a jury instruction discussed in *State Farm Fire & Casualty Co. v. Nicholson*, in which we held that an insured's cause of action against an insurer for breach of the duty of good faith and fair dealing sounded in tort in first-party insurance disputes.  The disputed paragraph may also have originated in a punitive damages claim.  In

---

[25] *Jackson v. American Equity*, 90 P.3d 136 (Alaska 2004).
[26] *Id*. at 144.

>any event, it erroneously described the standard for finding bad faith in this case.  **We disapprove of the submission of this language on the issue of bad faith in a third-party dispute, the type of dispute we have here**.[27]

The *Jackson* Court went on to note that the appropriate standard of third-party bad faith is whether the insurer refused to settle a third-party claim against its insured within the limits of its policy when there was a substantial likelihood of an excess judgment against its insured.[28]

    *Jackson* is instructive here because it acknowledges the different legal standards involved in first versus third-party claims.  And, *Jackson* underscores the impropriety of intermingling first and third-party issues in a third-party bad faith case.  Permitting Herron to inject first-party issues into this third-party case will result in the intermingling of first and third-party standards of insurer conduct expressly disapproved by the Alaska Supreme Court.

## IV. Conclusion

    Herron's defense to Allstate's request for a declaration that Herron breached the insurance contract is that his breach was excused by Allstate's preceding violation of its third-party duties to him.  In short, this is an insurer third-party bad faith case.  Allstate's handling of Trailov's right to first-

---

[27] Id. at 145 [citation omitted, emphasis added].
[28] Id.

party medical payments under Herron's policy is irrelevant to Herron's third-party bad faith claim. Injecting first-party medical payments issues in this third-party bad faith case is highly prejudicial to Allstate; it would not only taint the admissible evidence, but it would confuse and mislead the fact finder as to the real issues to be decided in this third-party action. Evidence regarding Allstate's handling of Trailov's first-party claims should be excluded from all motion practice and the trial in this third-party bad faith case.

DATED this 16th day of June, 2006, at Anchorage, Alaska.

        WILKERSON HOZUBIN
        Attorneys for Plaintiff

By: s/Rebecca J. Hozubin
    Rebecca J. Hozubin
    310 K Street, Suite 405
    Phone: 907 276-5297
    Fax: 907 276-5291
    E-mail: rebecca@wilkersonlaw.net
    Attorneys for Plaintiff Allstate
    AK Bar No. 9806016

**CERTIFICATE OF SERVICE**
I hereby certify that on
June 16, 2006, a true and
correct copy of the foregoing was
served electronically on the following:

Mark A. Sandberg, Esq.
Sandberg, Wuestenfeld & Corey
701 West 8th Avenue, Suite 1100
Anchorage, AK  99501


WILKERSON HOZUBIN

By:   s/Rebecca J. Hozubin
1000.788/plead/Dec Action/Mtn to Establish Law of Case.memo Final