week before the deadline expired. Defendants did not advise Mr. Valcarce of the deadline at all. Defendants did not send a copy of the April 10, 2003, letter to Mr. Herron or Mr. Valcarce. Defendants did not advise them of Mr. Herron's exposure to excess judgments if the deadline was not complied with. Defendants did not inform them that more time was needed or that Allstate could not complete its evaluation or respond by May 16, 2003.

23. In the letter of May 9, 2003, to Ms. Power, the defendants indicated they intended to respond by the deadline of May 16, 2003. There was no objection to the deadline. There was no indication defendants felt the deadline was unreasonable. There was no request for an extension. There was no indication that more time was needed. There was no indication that defendants could not complete their evaluation.

24. On or about May 12, 2003, almost eight months after Allstate was aware of the September 14, 2003, crash, Allstate finally paid the $25,000 medical payments coverage for Angelina Trailov. Between May 9, 2003, and May 16, 2003, defendants did not inform Mr. Herron or Mr. Valcarce that Allstate would not comply with the May 16, 2003, deadline.

25. However, on May 16, 2003, defendants informed Ms. Power that their evaluation was not complete and that they would perhaps respond within the next two weeks. The policy limits offers lapsed with no objection by defendants. Defendants did not promptly inform Mr. Herron or his attorney that the deadline had

Angstman Law Office
ATTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

-8-

Exhibit A  8 of 13

APR. 16. 2004  3:21PM     LITIGATION & EMP LAW                    NO. 6087   P. 13

been allowed to expire. They did not promptly inform Mr. Herron or Mr. Valcarce of Mr. Herron's exposure to excess judgments because of expiration of the offers. Defendants did not inform Mr. Herron and his lawyer that they had unreasonably delayed in investigating and evaluating the claims and that Allstate claims personnel in the Anchorage office had been remiss in seeking settlement authority from the Allstate Home Office until after expiration of the offers.

26. On May 20, 2003, defendant Berry finally referred the matter to the Allstate Home Office for review. On May 29, 2003, Kathy Berry's supervisor, Karen Peterson, finally ordered her to seek Home Office settlement authority and to open the underinsured motorist coverage.

27. On May 29, 2003, a letter was sent by Mary Kenick's attorney, Doug Johnson, informing Allstate that no further policy limits offers would be made or accepted. On May 30, 2003, defendants offered the stated limits of $112,500 of the liability coverage of Charles Herron for settlement of the claim of Angelina Trailov. Defendants offered $10,000 for the claim of Mary Kenick. No disclosure or offer of UIM coverage was made. A suit was filed on July 3, 2003, on behalf of Angelina Trailov and Mary Kenick.

28. A reasonable, competent, and prompt investigation and evaluation of the claims of Angelina Trailov and Mary Kenick would have shown that those claims were each in excess of policy limits. A reasonable, competent, and prompt investigation and evaluation would have resulted in a settlement of each claim within policy limits.

Angstman Law Office
ATTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

-9-

Exhibit A  9 of 13

Allstate unreasonably failed and refused to offer policy limits for each claim and unreasonably failed and refused to offer settlements for policy limits within the eight-month time period when such settlements were available.

29. On or before June 6, 2003, Allstate retained the law firm of Wilkerson & Associates. Said firm acted as the agent of Allstate at all times thereafter and Allstate is liable for its actions. On June 11, 2003, said firm announced it had been appointed by Allstate to defend Mr. Herron. It represented to Mr. Herron that it was his legal representative and would protect his interests at all stages thereafter. Said firm, however, conspired with Allstate to act against the interests of Mr. Herron. After review of Allstate's records, it misrepresented to Mr. Herron and his personal attorney that Allstate had done nothing wrong. The law firm wrongfully proceeded to defend, and continues to wrongfully defend, Allstate's interests against Mr. Herron.

30. When Mr. Herron's personal attorney, Mr. Valcarce, requested copies of Allstate's records, Wilkerson & Associates withheld the Allstate records it had reviewed after it had announced it was Mr. Herron's legal counsel. The law firm claimed various false privileges against Mr. Herron, including so-called adjuster privileges, work product, and attorney client privileges. The law firm refused to disclose or advise Mr. Herron and Mr. Valcarce of the existence of important information and took an adverse posture to Mr. Herron's interests. Further, the law firm threatened Mr. Herron and/or Mr. Valcarce with legal action if they took steps to protect Mr. Herron by way of a covenant settlement.

Ingstman Law Office
ATTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

-10-

Exhibit A  10 of 13

APR. 16. 2004  3:21PM    LITIGATION & EMP LAW                NO. 6087   P. 15

31. During the litigation, Allstate and its agents negligently and recklessly rejected a second policy limits offer for Mary Kenick's claim. On March 11, 2004, Wilkerson & Associates sent a letter to Mr. Valcarce announcing the law firm had given authority to a mediator to reject a second offer by Mary Kenick to settle her claims within policy limits by offering less than the offer. In the same letter, said law firm outrageously announced that, acting for Allstate, it had also sued Mr. Herron.

### THE COVENANT SETTLEMENT

32. The actions of Allstate and its agents, including, but not limited to, Kathy Berry and Wilkerson & Associates, were in reckless disregard of the rights of Charles Herron. Allstate and its agents, including, but not limited to, Kathy Berry and Wilkerson & Associates, engaged in a scheme of deceptive and outrageous conduct. They intentionally ignored conflicts of interest and refused to disclose conflicts of interest that were created by Allstate's mishandling of the claims. They further conspired to conceal, misrepresent, and disloyally act against the interests of Mr. Herron. Fiduciary duties and the duty of good faith and fair dealing were repeatedly violated in an outrageous manner. Such conduct renders Allstate and Kathy Berry liable for punitive damages.

33. The actions of Allstate, together with its agents, including, but not limited to, Kathy Berry, negligently, recklessly and/or deliberately breached their legal duties to Mr. Herron, and caused him to be needlessly exposed to excess and non-dischargeable judgments in favor of Angelina Trailov and Mary Kenick. Those

Ungatman Law Office
ATTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2872

-11-

Exhibit A   11 of 13

APR. 16. 2004  3:22PM   LITIGATION & EMP LAW                           NO. 6087   P. 16

actions of Allstate, together with its agents, constituted material breaches of the duties owed to Mr. Herron, and thus, justified Mr. Herron entering into a covenant settlement to protect his personal assets and interests.

34. On April 2, 2004, with the assistance and approval of his new legal counsel, Mr. Roger Holmes, Mr. Herron entered into a fair covenant settlement, including a confession of judgment in favor of Angelina Trailov for $1,750,000 and a confession of judgment in favor of Mary Kenick for $187,500. These settlement amounts are fair and reasonable and within the expected range of jury verdicts for the claims.

35. As part of the covenant settlement, Mr. Herron assigned his claims against Allstate and its agents to Mary Kenick, individually, and as parent and natural guardian of Angelina Trailov. In return, Mr. Herron was provided with a covenant not to execute on his personal assets. Mary Kenick brings these claims against defendants as the assignee of Mr. Herron's claims.

36. On behalf of Angelina Trailov and herself, Mary Kenick asserts that the defendants are liable for the confessions of judgment, and requests compensatory damages of $1,750,000 for Angelina Trailov and for $187,500 for Mary Kenick.

37. Mary Kenick further request that punitive damages be assessed against the defendants in amounts to be determined by the jury, but which considers the reckless, outrageous, disloyal and deceptive conduct of Allstate and its agents, including, but not limited to, Kathy Berry. In determining such an amount, the jury

Ungstman Law Office
ATTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

-12-

Exhibit A  12 of 13

APR. 16. 2004  3:22PM    LITIGATION & EMP LAW                NO. 6087   P. 17

should also consider compensatory damages and the defendants' wealth, and award an amount sufficient to dissuade defendants from engaging in such conduct in the future.

WHEREFORE, plaintiff prays for relief as follows:

(1) for compensatory damages for Angelina Trailov in the amount of $1,750,000.00, plus accrued interest at 5%;

(2) for compensatory damages for Mary Kenick in the amount of $187,500.00, plus accrued interest at 5%;

(3) for punitive damages in an amount to be assessed by the jury;

(4) for costs and attorney's fee; and

(5) for such other and further relief as the Court may deem just.

DATED this ___9___ day of April, 2004.

ANGSTMAN LAW OFFICE
Co-counsel for Plaintiff

By: _____
Myron E. Angstman
ABA No. 7410057

LAW OFFICES OF DENNIS M. MESTAS, P.C.
Co-counsel for Plaintiff

By: _____
Dennis M. Mestas
ABA No. 7575028

Angstman Law Office
ATTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

-13-

Exhibit A  13 of 13