Mark A. Sandberg, Esq.
SANDBERG, WUESTENFELD & COREY, PC
701 West 8th Avenue, Suite 1100
Anchorage, AK 99501
Tel:   907-276-6363
Fax:   907-276-3528

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3-04-0043 CV (TMB) |
| | ) | |
| CHARLES HERRON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

REPLY TO ALLSTATE'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ON ASSIGNABLE CLAIMS

I.      INTRODUCTION

Defendant Herron moved this court to grant summary judgment in his favor,

asserting that under the law of the state of Alaska, he had recognized legal claims

against Allstate which he validly assigned to Mary Kenick and Angelina Trailov so that

he owns no claims against Allstate for the court to rule on. Herron does not assert he

is entitled to summary judgment on the legal claims themselves, as he does not own

these claims and has no standing to so assert. Rather, he asserts that his claims were

legally recognized and were supported by sufficient facts so that even if a standard of

"viability" applies, they were clearly "viable" or "capable of an independent

existence or standing" when he legally assigned them.

The assignees, Mary Kenick or Angelina Trailov are not parties to this suit. Kenick and Trailov, as well as Allstate and Allstate adjuster Kathy Berry are parties in an action in Bethel Superior Court in relation to the assigned claims. Three out of four of the real parties in interest are not before this court.

Allstate cannot and does not dispute that Alaska common law recognizes the legal right of insureds to bring legal claims against insurers and their agents for bad faith and negligent claims handling. Moreover, Allstate cannot and does not dispute that these legal claims may be assigned. Finally, the form and sufficiency of the assignment documents are not questioned in any way by Allstate. So, rather than confronting Herron's motion, Allstate ignores Alaska substantive law and that Herron's motion is well taken, and instead attempts to escape the fact by a fog of argument devoid of applicable authority, or logic.

Allstate argues that there is a condition precedent to Herron's right to assign his claims due to dicta in a previous order by Judge Singleton denying summary judgment to Allstate on bad faith claims, so that according to Allstate, Herron must establish the merits of his claims in a trial before the assignment may considered valid.

Allstate provides no precedent or legal authority whatsoever for this novel view of the law of assignments in Alaska, because of the dual realities that no such authority exists and that such contention is completely contrary to: the basic legal concepts of assignments, Alaska substantive law on

assignments, and the public policy rulings of the Supreme Court of Alaska in the field of insurer bad faith and negligent claims handling.

Allstate and its experts ignore the clear holdings of Alaska Supreme Court in *Continental v. Bayless and Roberts*, 608 P.2d 281 (Ak. 1980) which set forth the legal liability of insurers for both bad faith adjustment by adjusters as well as negligent adjustment by adjusters . They ignore the holding of *O.K. Lumber Co. v. Prov. Wash. Ins. Co.,* 759 P.2d 523 (Ak. 1988) which set forth the duty to fully advise an insured as the *possibility* of an excess judgment. Similarly, they ignore or dismiss the unfair, delayed, and inadequate investigation including violations of the Unfair Claims Practices statutes and regulations and Allstate's own internal standards that clearly constitute bad faith and negligence according to these and other cases such as *Ace v. Aetna*, 139 F.3d 1241(9th Circ. 1998).

Although, *Continental*, *O.K. Lumber*, and a host of other Alaska Supreme Court cases have held that it is the insurer who owes the duties to investigate, fully advise its insured, promptly and fairly offer and seek settlements, Allstate and its experts attempt to shift these legal burdens onto the shoulders of the attorney for third party claimants, Ms. Power. They ignore the fact that courts considering assigned causes of action against insurers, including for example, *Ace v. Aetna*, supra , have rejected all such attempts in the past.

Allstate ignores the long delayed and woefully incomplete investigation of Trailov's and Kenick's damages and the requirement that the investigation be conducted with "due diligence". 3 AAC 26.050 (a) specifically requires an

investigation be completed in 30 days unless it cannot be completed with "due diligence". In *Ace*, the court listed as evidence of bad faith a litany of failures to promptly investigate and evaluate including, failures to promptly and fairly secure and evaluate all appropriate medical records and other medical information including interviewing the claimant, failures to advise, attempts to shift the burden of investigation, and violations of the Unfair Claims Act and regulations promulgated thereunder. Ignoring these realities, and that body of applicable Alaska, Allstate's opposition is entirely devoted to citing and arguing selective facts in an attempt to show there is a question of fact as the merits of the claims Herron assigned.

There is no authority to support the position that "viability" is a condition precedent to assignment or that a genuine issue of material fact as to the merits of assigned claims will defeat an assignment. However, even if "viability" is considered as a requirement for a valid assignment, Herron clearly had "viable" legal claims under Alaska common law, Alaska and Federal Rules of Civil Procedure and in view of the evidence.

Herron made a valid assignment of his claims and owns no claims for this Court to adjudicate. Herron's motion should be granted.

II.    ASSIGNMENTS OF LEGAL CLAIMS IN ALASKA

Assignments are widely used and are very important to the pursuit of many types of commerce in Alaska and elsewhere in the U.S. An assignment is simply a "transfer of rights or property". Blacks Law Dictionary 8th Ed. 2004. Because of their importance and heavy use in commerce, assignments in the

context of sales contracts, negotiable instruments, and secured transactions are heavily regulated in Alaska and elsewhere. Numerous sections of Alaska's Uniform Commercial Code relate to assignments. For instance, see AS 45.02.210, AS 45.29.209 and AS 45.29.403-406.

Assignments of legal claims and assignment of claims to insurance proceeds often take place in relation to businesses providing security for loans. Similarly, individuals often assign legal claims and claims to insurance proceeds in applying for loans. Assignments of legal claims by insureds to insurers are widely used in the insurance industry in insurance contracts and in claims settlements.

Legal claims are known as "things in action" or choses in action. Things in action may generally be assigned in Alaska and defenses that survive assignment should be asserted against the assignee asserting the assigned claim. For instance, AS 09.68.060 provides:

> If there is an assignment of a thing in action, the action by the assignee is without prejudice to a setoff or other defense existing at the time of, or before notice of the assignment. But this section does not apply to a negotiable promissory note or bill of exchange transferred in good faith and upon valuable consideration before due.

There is no statute or common law in Alaska supporting a requirement of "viability" for a condition or limitation of an assignment of a thing in action. The only limitation upon assignments of unliquidated legal claims in Alaska is that the assignment must not violate public policy. For instance, unliquidated claims for personal injury damages may not be assigned due to concerns to

avoid champerty and maintenance. *Croxton v. Crowley*, 758 P.2d 97, 99 (Ak. 1988).

As to the public policy issue, for over a quarter of a century, the Alaska Supreme Court has repeatedly recognized that liability coverage insureds have causes of action for both bad faith claims handling and negligent claims handling against their insurers and that these claims may be assigned. *Continental v. Bayless and Roberts,* 608 P.2d 281 (Ak. 1980). Every Alaska Supreme Court case since *Continental* has followed these principles, including: *O.K. Lumber Co. v. Prov. Wash. Ins. Co.,* 759 P.2d 523 (Ak. 1988); *Bohna v. Hughes, Thorsness,* 828 P.2d 745(Ak. 1992); *Grace v. Ins. Co. of N. America*, 944 P.2d 460 (Ak. 1997) *C. P. v. Allstate,* 996 P.2d 1216(Ak. 2000); *Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599 (Ak. 2003); and *Jackson v. American Equity*, 90 P.3d 144 (Ak. 2004). Thus, the legal assignability of Herron's claims for bad faith and negligence cannot and is not questioned by Allstate.

There is not the slightest suggestion in any Alaska statute or case law that a legal claim for bad faith or negligence must be "viable" in order to be validly assigned to another person.

III.    VIABILITY OF HERRON'S ASSIGNABLE LEGAL CLAIMS

Although it would seem to be contrary to all Alaska law on assignability of legal claims, Judge Singleton's dicta in a previous ruling did refer to the issue of whether or not the assigned claims were "viable". This ruling was early in the case before substantive discovery and Judge Singleton did not define this

term "viable". The negligence claims against Allstate were never considered by Judge Singleton, who only considered claims for bad faith conduct.

Generally, "viable" means "capable of living". See Webster's Ninth New Collegiate Dictionary. In addition to this meaning, Black's Law Dictionary, 8th Ed. 2004, also defines "viable" as "capable of an independent existence or standing <a viable lawsuit>". Allstate completely ignores the issue of what is a "viable claim". It cites no law to support the view that it is a claim which must be litigated to finality to be assignable. This view would destroy well established and indeed ancient principles of assignability.

The only possible legal criteria that Herron can deduce for determining if an assignable legal claim in Alaska is "viable" or otherwise "capable of an independent existence or standing" in Alaska  is by reference to the Alaska case law and Alaska  statutes, such as those cited above, and to Rule 12(b)(6) and Rule 56 of the Alaska Rules of Civil Procedure that are virtually identical to the same Federal Rules of Civil Procedure. These authorities all support the viability of Herron's assigned claims.

Under Alaska Rules of Civil Procedure, or the Federal Rules of Civil Procedure, the viability of a claim may be tested in two ways. First, a motion to dismiss for failure to state a claim under Civil Rule 12(b)(6) may test the legal sufficiency of the pleaded claims. However, as noted above, there is no question that the legal causes of action for bad faith and negligent claims handling exist in Alaska, and pleaded allegations are taken as true for the purposes of a motion to dismiss for failure to state a claim. Allstate could not

have prevailed against Herron if had he sued Allstate and such a motion had been made.

Secondly, a party may move for summary judgment under Alaska Civil Rule 56 or Federal Civil Rule 56 asserting there are no material questions of fact. The facts are viewed from the standpoint of the non-moving party. If there are questions of material fact, the claims may not be dismissed. Prior to substantive discovery in this matter, Allstate failed to obtain summary judgment as to bad faith claims against Allstate. Herron's claims for negligent adjustment against Allstate were not considered or addressed by the court.

Claims for negligent adjustment against insurers such as Allstate that arise out of the insurer's *respondeat superior* legal responsibility for the negligent acts of its adjusters and other such claims personnel were recognized and discussed by the Alaska Supreme Court in both *Continental v. Bayless and Roberts*, supra, at 293-294, and *C.P. v. Allstate*, supra 1220-1222. Allstate's bald assertion that an insurer is not liable for negligent claims handling is directly contrary to these cases.

Although it is a red herring that does not affect assignability, it should be noted that Allstate also cites no authority for the assertion that negligent claims handling is not a breach of the insurance contract. Indeed in *C.P. v. Allstate*, supra at 1220, Allstate asserted to the Alaska Supreme Court that negligent adjustment by its employed adjuster was a claim arising out of the insurance contract. *Continental v. Bayless and Roberts*, supra at 293-294, is

also consistent with negligence being a breach of contract, as the court held Continental liable for an excess judgment due to its negligence.

At the time of Herron's assignment, Alaska law clearly recognized both the bad faith and the negligent claims handling claims against Allstate that Herron assigned to Kenick and Trailov. By their very nature, legal claims or "things in action" are not liquidated and finalized judgments, but are rather ongoing and living legal rights. Moreover, there is a mountain of admissible evidence to support these legal claims for bad faith and negligent claims handling. Thus, under Alaska common law, and under Rule 12(b)(6) and Rule 56 of the Alaska or Federal Rules of Civil Procedure, the assigned claims were clearly "viable".

IV.    SUMMARY OF EVIDENCE SUPPORTING VIABILITY

If, arguendo, the court considers that a recognized legal claim, or an element thereof such as a bad faith breach of an insurance contract or negligence, must be supported by evidence in order to be "viable" or "capable of independent existence or standing" in order to be assignable, there is abundant evidence of capability. The Allstate claims file and the depositions of Allstate claims personnel have been cited ad nauseum to the court by both parties. Therefore, Herron relies on the previously claims chronology, the previously cited Allstate claims file exhibits, and the Allstate claims personnel depositions attached to the Herron's Memorandum In Support of Motion For Summary Judgment. Docket No.91. A fair summary of the evidence supporting the assigned claims is set forth below.

A.  Evidence Of Breach Of Covenant Of Good Faith And Fair Dealing

There is clearly adequate evidence that would support a jury finding that Allstate put its own financial interests far ahead of Herron's and breached the covenant of good faith and fair dealing. Evidence of Allstate's numerous acts of bad faith include:

1) exposing Herron to an excess judgment as part of an effort from Sept. 16, 2002 to May 12, 2003 to promote Allstate's financial interests in concealing and not paying a $25,000 first party claim for medical payments coverage and all times acting to prevent Trailov or Kenick from being aware of or making claims for $200,000 or more of available UIM coverage which Allstate investigated as early as Sept. 18, 2003;

2) in spite of Allstate's very swift investigation of its own UIM exposure, failing over a period of 8 months from Sept. 16, 2002 to May 16, 2003 to promptly and fairly investigate the claims against Herron, including failing to promptly secure and evaluate: medical records and reports, physician interviews, IME's, medical consultations, claimant interviews, and violating the standards of the Unfair Claims Practices Regulation 3 AAC 26.050(a), (b) that requires a prompt investigation "using due diligence"; See also *Ace v. Aetna,* 139 F.3d 1241, 1247, 1249 (9th Circ. 1998);

3) failing to promptly and fairly evaluate the claimants' damages over the same  period of 8 months resulting in no evaluation and no

attempt to seek authority to settle by the lapse of a policy limits offer on May 16, 2003;

4) failing to ever advise Herron or his attorney of the true status of the case, lack of timely investigation, lack of evaluation, and the possible exposure to an excess judgment, including after Allstate internally designated Trailov's claim as a Serious Injury Claim requiring a mandatory evaluation and a mandatory Home Office Referral report within 14 days of the designation of March 3, 2003, and including after a settlement deadline of May 16, 2003 was set by Ms. Power letter of April 10, 2003;

5) failing to fully advise Herron of the settlement status of the claims including not copying him with Ms. Power's settlement deadline letter of April 10, 2003 that set a deadline of May 16, 2003; not explaining the meaning of a settlement deadline of May 16, 2003; and not explaining the risks and possible consequences of not complying with the deadline;

6) failing to advise Herron's attorney of the settlement status of the case after his appearance on March 26, 2003 including failure to copy Herron's attorney Valcarce with the deadline letter of April 10, 2003 and not advising him at all in relation to the May 16, 2003 settlement deadline set forth in that letter;

7) failing to advise Herron or his attorney Valcarce of Allstate's intent to not comply with that May 16, 2003 deadline and of the risk that settlement within policy limits was thus jeopardized.

8) failing to allow Herron and his attorney Valcarce the opportunity to seek an extension of the deadline or to try to force or demand that Allstate settle one or both cases before May 16, 2003;

9) failing to timely and unconditionally tender any settlement offers within policy limits at any time before the May 16, 2003 deadline lapsed; and

10) failing to accept either policy limits offer before the May 16, 2003 deadline lapsed.

11) even after the May 16, 2003 deadline, seeking to conceal the potential UIM claims of Trailov and Kenick by not disclosing them and on May 30, 2003 offering full and final settlement for their all bodily injury claims without reference to or any reservation of the UIM claims.

B. Evidence Of Negligent Claims Handling

There is also more than adequate evidence that Herron had a claim that Allstate was negligent in its adjusting of the claims against him under the well known case of *Continental v. Bayless and Roberts*, supra, including:

1) failing over a period of 8 months to promptly secure and use medical releases, medical records, physician interviews, medical consultations, IME's, and interviews so as to competently and reasonably

investigate and evaluate the potential amounts of the claims against Herron;

2) failing to comply with Alaska regulations on investigating claims promptly and with due diligence;

3) failing to comply with Allstate internal standards on a designated Serious Injury Claim in relation to evaluating and reporting to the Home Office within 14 days and indeed not doing so until 2 ½ months had elapsed and a settlement offer deadline of May 16, 2003 had lapsed;

4) failing to comply with internal Allstate procedures regarding promptly advising Allstate supervisors of the settlement deadline of May 16, 2003;

5) failing to comply with Allstate's Demand procedure requiring entry of the deadline of May 16, 2003 into the Allstate Demand Log;

6) failing to advise Herron as to the true status of the claims including the lack of timely investigation, lack of any evaluation, and the insured's exposure to an excess judgment;

7) failure to fully and promptly advise Herron as to settlement status, including explaining a settlement demand deadline of May 16, 2003 and explaining the potential risks and consequences if the deadline was missed;

8) after his appearance on March 26, 2003, completely failing to advise Herron's attorney Valcarce of the true status of the case,

including lack of investigation and evaluation, Herron's exposure to an

excess judgment and a settlement demand deadline of May 16, 2003;

9) failing to timely advise an insured and his attorney Valcarce of

Allstate's intent not to meet a settlement demand deadline of May 16,

2003 and the risks posed by such decision;

10) failing to promptly offer or accept settlement within policy

limits within a known settlement deadline of May 16, 2003.

V.    CONCLUSION

Since Herron had a sound legal basis for his claims of bad faith and

negligent adjustment and facts to support them, he had legal claims that were

"capable of an independent existence or standing" or otherwise "viable" legal

claims that he could and did assign. The attempts by Allstate to argue its view

of the evidence, to supply expert opinions, or to assert questions of fact do not

destroy the "capability" of these claims to stand or their assignability to Kenick

and Trailov.

Herron's assignment transferred all his legal rights against Allstate and its

agents. Thus, this action by Allstate against Herron to resolve the claims

against Allstate that were assigned is futile as he does not own those

transferred legal rights. Assignees Trailov and Kenick who do own these claims

are before the Bethel Superior Court in an action against Allstate and its

adjuster Berry wherein all issues and claims can be resolved.

Herron requests that the court issue a judgment that Herron assigned his legal claims against Allstate on April 2, 2004 and that he owns no claims for the court to resolve. He requests this matter be dismissed.

Dated this 10th day of July, 2006.

s/ Mark A. Sandberg_
701 W 8th Avenue, Ste. 1100
Anchorage, Alaska 99501
Phone: (907) 276-6363
Fax: (907) 276-3528
E-Mail: msandberg@aol.com
ABA: 7510084

CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July 2006 a copy of the foregoing was served electronically on:

Mark Wilkerson
Wilkerson & Associates
310 K Street, Suite 405
Anchorage, Alaska  99501

s/Mark A. Sandberg