UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANIES,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES HERRON,<br><br>Defendant. | No. 3:04-cv-00043-TMB<br><br>ORDER<br>[Re: Motions at Dockets 91, 116, and 124] |

## I.  MOTIONS PRESENTED

At Docket 91 defendant Charles Herron ("Herron") has moved for summary judgment declaring that: (1) Herron possessed viable claims against plaintiff Allstate Insurance Co. ("Allstate"); (2) the claims are assignable under Alaska law; and (3) the claims were properly assigned by Herron.  The motion also requests the Court decline to adjudicate any other issues.  At Docket 135 Allstate has opposed the motion and at Docket 146 Herron has replied.

At Docket 116 Allstate has filed a Motion Summary Judgment Applying the Noneconomic Damages Cap of AS 09.17.010(b).  At Docket 141 Herron has opposed the motion and at Docket 150 Allstate has replied.

At Docket 124 Allstate has filed a Motion for Summary Judgment Dismissing Mary Kenick's NIED Claim. At Docket 141 Herron has opposed the motion and at Docket 152 Allstate has replied.

The Court heard oral argument on October 13, 2006, and now renders its decision on the motions.

## II.  BACKGROUND

The basic underlying facts of this case are undisputed.  This lawsuit arises out of an accident that occured on September 14, 2002, when a vehicle operated by Herron, Allstate's insured, was involved in a single-car collision in which Angelina Trailov

("Trailov") was a passenger.  Allstate was timely notified of the accident on September 16, 2002.  On September 19, 2002, James Valcarce ("Valcarce"), the attorney for Herron, was informed by Michelle Power ("Power") that she represented Mary Kenick ("Kenick") on behalf of Kenick's minor child, Trailov;[1] this letter was forwarded to Herron's father on September 23.[2]  On September 21, 2002, Allstate resolved the issue of liability, determining that Herron, its insured, was 100% liable for the accident.[3]  From that point, the only matter left for resolution was the extent of the injuries suffered and the amount of the damages for which Herron and, ultimately, Allstate would be liable.  Subsequent to determining its insured was 100% liable, Allstate undertook to investigate the extent of the damages.  It is this activity that is the subject matter of the dispute between the parties in this case.  The following is a summary of the pertinent facts.

September 25, 2002:  Allstate requested the accident report from the Bethel Police Department by letter.[4]  Allstate also sent a letter to Margaret Herron introducing Renee Vanzant and advising the insureds that Allstate was working on the claim.[5]  Robert Herron, Herron's father, then faxed this letter to Valcarce on October 7, 2002.[6]  That same afternoon, Valcarce faxed the same letter to Michele Power.[7]  The insured left a message with Allstate that Trailov had an attorney.[8]

---

[1] Opposition to Motion for Summary Judgment ("Opposition"), Exh. 7, Docket 135-14.

[2] Opposition, Exh. 9, Docket 135-16.

[3] Opposition, Exh. 6, Deposition of Craig Elkins, Allstate Frontline Performance Leader, 46:12–24, Docket 135-12 at 15.

[4] Opposition, Exh. 10, Docket 135-17.  The Court will refer to all correspondence or communications with other parties for or on behalf of Allstate as originating with or received by Allstate without identifying the individual.

[5] Opposition, Exh. 12, Docket 135-19.

[6] *Id.*

[7] Opposition, Exh. 13, Docket 135-20.

[8] Opposition, Exh. 14, Docket 135-21.

October 18, 2002:  Allstate sent a letter to Power identifying an ongoing investigation and requesting (1) a complete description of injuries; (2) the names and addresses of treating physicians; (3) whether Trailov was still receiving treatment; and (4) a signed release or, in the alternative, all medical records and bills as Power received them.[9]

October 30, 2002:  Allstate received the police report from Bethel.[10]

November 7, 2002:  Allstate discovered that the letter sent on October 18 to Power did not include the release and sent it to Power.[11]

November 25, 2002:  Allstate received the medical release form signed by Kenick of behalf of Trailov.[12]  Also the Alaska Native Medical Center ("ANMC") recorded its lien in the amount of $10,416.23.[13]

December 10, 2002:  Power corresponded with Allstate requesting a copy of Herron's policy and informed Allstate that Trailov would be examined by a neuropsychologist on December 17, 2002, but provided no further information.[14]

January 17, 2003:  Allstate corresponded with Power acknowledging receipt of the records of the Yukon-Kuskokwim Delta Regional Hospital and requested execution of a special release form for the ANMC.  Also enclosed was a copy of the policy declarations pages.[15]

February 6, 2003:  Power returned the signed ANMC release form.[16]

---

[9] Opposition, Exh. 18, Docket 135-25.

[10] Opposition, Exh. 19, Docket 135-26.

[11] Opposition, Exh. 21, Docket 135-28.

[12] Opposition, Exh. 23 Docket 135-30.  Although its significance is not apparent, this release form may have had an incorrect Social Security Number.

[13] Opposition, Exh. 24, Docket 135-31.

[14] Opposition, Exh. 25, Docket 135-32.

[15] Opposition, Exh. 26, Docket 135-33.

[16] Opposition, Exh. 28, Docket 135-37.  The form indicates it was signed on January 27, 2003.

ORDER [Re: Motions at Dockets 91, 116 and 124]
*Allstate Ins. Co. v. Herron*, No. 3:04-cv-00043-TMB      3

February 14, 2003:  Power sent a "demand" letter to the adjuster making a policy limits demand on behalf of Trailov for her injuries and a similar demand on behalf of Kenick for negligent infliction of emotional distress ("NIED").  The letter did not specify a deadline date for response.[17]

March 17, 2003:  Allstate corresponded with Power acknowledging receipt of Power's February 14 letter and requested additional information concerning medical care received by Trailov other than as had been provided, further information concerning the extent the injuries affected Trailov's school work, and concerning Kenick's NIED claim.[18]  Allstate also on that date sent a request to ANMC for copies of Trailov's medical records.[19]

March 18, 2003:  Allstate corresponded with Herron, and included a copy of the demand letter from Power and an explanation that punitive damages were not covered.[20]

March 26, 2003: Valcarce, on behalf of Herron, corresponded with Allstate insisting that Allstate accept a policy limits offer and, if it did not, Herron would look to Allstate for all damages awarded, including any punitive damage claim.[21]  Allstate also received a response from ANMC that requests for information take 3 to 5 business days to process.[22]

March 27, 2003:  Allstate received copies of the bills for services rendered to Trailov by City of Bethel, Alaska Regional Hospital, Alaska Imaging Associates, Denali Anesthesia, and ANMC.[23]  Allstate also received a copy of a letter sent to Kenick by her

---

[17] Opposition, Exh. 29, Docket 135-38.

[18] Opposition, Exh. 30, Docket 135-39.

[19] Opposition, Exh. 32, Docket 135-41.

[20] Opposition, Exh. 33, Docket 135-42.

[21] Opposition, Exh. 35, Docket 135-44.

[22] Opposition, Exh. 32, Docket 135-41.

[23] Opposition, Exh. 22, Docket 135-29.   All of these bills appear to have been submitted by the providers between November 8 and December 17, 2002.

health insurer on December 9, 2002, advising her of the need to provide it with information concerning a primary automobile insurance carrier.[24]

April 10, 2003: Power wrote to Allstate again stating: "While the offer dated February 14, 2002, [sic] remains open, it will be revoked May 16, 2003, and a complaint will be filed, unless there is some discussion regarding pre-filing resolution."[25] The letter also included some additional medical records from the Yukon-Kuskokwim Delta Regional Hospital.

May 9, 2003: Allstate responded to Power acknowledging receipt of the April 10, letter and requesting further backup documentation for Kenick's NIED claim.[26] The letter also stated:

> We are in the process of completing our evaluation of Angelina Trailov's claim and anticipate responding to your demand by your May 16, 2003 deadline.
>
> With regard to Mary Kenick's claim, we do need some type of documentation that her job change resulted from the effects of Angelina's injury and that she is earning less money at her new job.  Please provide any documentation that will support Ms. Kenick's claim for negligent inflection of emotional distress.

May 12, 2003: Allstate paid $25,000 in medical payments.[27]

May 16, 2003: Power informed Allstate by facsimile that Kenick's income decreased by $13,000 per year.[28]  Allstate responded by facsimile, stating:[29]

> Thank you for the documentation you faxed today regarding Mary Kenick's claim.  Is there any documentation to show why she left her job at USDA, e.g., a letter of resignation, a documented discussion with management, or her application for her new job?  Alternatively, did Ms. Kenick discuss

---

[24] *Id.* at 10.

[25] Opposition, Exh. 36, Docket 135-45.

[26] Opposition, Exh. 37, Docket 135-46.

[27] Memorandum in Support of Motion for Summary Judgment, Exh. 1, pp. 100084–100085, Docket 95 at 2–3.

[28] Opposition, Exh. 38, Docket 135-47.  Although the letter bears a date of May 15, 2003, it also shows that it was transmitted by facsimile at 11:27 a.m. May 16.

[29] Opposition, Exh. 39, Docket 135-48.

issues related to her job with any medical provider?  Please provide any
documentation there may be relating to her job change to Angelina's
injury.

With regard to Angelina's claim, unfortunately our evaluation is not
completed today as expected.  Obviously this is a claim that needs a
thorough review and the policy limits that you have demanded comprise a
significant amount of money.  Our evaluation will be completed by the end
of the month, and I am hoping to respond to your demand sooner than
that.

May 30, 2003: Allstate sent a letter by facsimile to Power, which included the

following offer.[30]

At this time we are prepared to offer the $100,000.00 face value of the
Herron's auto policy plus Rule 82 attorney's fees of $12,500.00, for a total
of $112,500.00 as full and final settlement of Ms. Trailov's bodily injury
claim. * * * *

Please note that checks totaling $25,000 have already been issued to
your office on behalf of Ms. Trailov under the medical payments coverage
of the Herron's policy.

With regard to Mary Kenick, we are prepared to offer $10,000 inclusive as
full and final settlement NIED claim in an effort to resolve this matter
expeditiously.  We have previously requested additional documentation
from you regarding her change in employment and any other factors that
may support her claim and if Ms. Kenick does not accept this offer, we will
continue to require that documentation.

On the same day, that offer was faxed by Power to "D.J." (presumably Douglas

Johnson).[31]  Allstate also received correspondence from Douglas G. Johnson

("Johnson") dated May 29, 2003, which stated in part:[32]

I have been retained to file suit, as co-counsel in this matter.  As
you know the last time-limited policy limits offer in this matter lapsed on
May 16, 2003.  No further policy limits offers will be made or accepted.

---

[30] Opposition, Exh. 40, Docket 135-49.

[31] Opposition, Exh. 41, Docket 135-50.

[32] Opposition, Exh. 42, Docket 135-51.  Allstate's claims adjuster did not receive the
May 29 letter before the May 30 letter to Power was sent. Opposition, Exh. 43, Deposition of
Kathy Berry, 110:9–13, Docket 135-52 at 13.  Nor was Allstate informed by Power that Johnson
was co-counsel in the case.  Opposition, Exh. 27, deposition of Michele L. Power, 32:6–21,
Docket 135-35 at 9.

Allstate has had a great deal of time to investigate and evaluate this clear liability and large damages case. It had more than adequate time to accept the policy limits offers. Separate offers were made for Ms. Trailov and for Ms. Kenick. Allstate never accepted an offer for either. It never made any offers to either of them.

That correspondence also expressed a willingness "to enter into good faith negotiations to settle this matter for the full and past future damages of our clients, if Allstate is willing to assume full responsibility for all those damages in writing."[33]

June 4, 2003: Allstate responded to Johnson noting that his May 29 and Allstate's May 30 correspondence appeared to cross in the mail and asked if there was a settlement of one or both claims.[34]

July 3, 2003: Kenick and Trailov file an action against Herron in the Alaska Superior Court, Case No. 3BE-03-194-CI.[35]

February 16, 2004: Power sent Valcarce a request to enter a Confession of Judgment.[36]

February 18, 2004: Valcarce informed Allstate that mediation efforts had failed and that Herron would confess judgment if Allstate did not: (1) pay the amount specified in an attached confession; (2) resolve the matter by agreeing to pay some other amount; or (3) agree to pay the final judgment entered after trial.[37]

---

[33] There is no evidence in the record that at any time thereafter Kenick or Trailov considered accepting policy limits.

[34] Opposition, Exh. 45, Docket 135-54.

[35] Second Amended Complaint for Declaratory Relief ¶ 16, Docket 58, admitted in Answer to Second Amended Complaint, Docket 66 incorporating the admissions in Answer to Amended Complaint for Declaratory Relief, ¶ 16, Docket 19.

[36] Second Amended Complaint for Declaratory Relief ¶ 17, Docket 58, admitted at Answer to Second Amended Complaint, Docket 66, incorporating the admissions in Answer to Amended Complaint for Declaratory Relief, ¶ 17, Docket 19; Errata to Plaintiff's Amended Complaint for Declaratory Relief, Exh. 9, Docket 59 [Admitted by Herron].

[37] Second Amended Complaint for Declaratory Relief ¶ 18, Docket 58, admitted in Answer to Second Amended Complaint, Docket 66, incorporating the admissions in Answer to Amended Complaint for Declaratory Relief, ¶ 18, Docket 19; Errata to Plaintiff's Amended Complaint for Declaratory Relief, Exh. 10, Docket 59 [Admitted by Herron].

<u>March 2, 2004</u>: Allstate initiated the instant action in this Court.[38]

<u>April 2, 2004</u>: Herron consented to entry of judgment in favor of Trailov and Kenick, and assigned all his rights and claims against Allstate to Trailov and Kenick.[39]

Prior to this motion, Herron brought two motions.  First, Herron moved to decline jurisdiction or, alternatively, stay proceedings, which was denied.[40]  Herron then moved to dismiss or substitute Trailov and Kenick as defendants, which motion was denied without prejudice to amending the complaint to add them as defendants in light of the apparent assignment to them of Herron's rights under the policy.[41]  Allstate also filed a prior motion for summary judgment, which motion was denied.[42]

## III.  ISSUES

In its second amended complaint Allstate alleges two claims: (1) that it is entitled to a declaration that it attempted in good faith to settle the Trailov and Kenick claims; and (2) that in executing the confession of judgment Herron breached the terms of the insurance policy, which breach was not excused by any prior breach by Allstate. Allstate's prays for relief in the alternative; (1) that its obligation to Herron is limited to the policy limits; or (2) Herron's breach voided the policy, excusing Allstate's performance entirely and it owes no obligation to Herron at all.

Herron in his motion at docket 91 argues that the evidence establishes Allstate breached its obligations under the policy by (1) negligently handling the claim and (2) acting in bad faith.  Allstate argues in its motion at docket 116 that the evidence establishes that the noneconomic cap of AS § 09.17.010(b) [$400,000] applies to Trailov because she did not suffer severe permanent physical impairment or severe

---

[38] Docket 1.

[39] Second Amended Complaint for Declaratory Relief ¶ 19, Docket 58 admitted in Answer to Second Amended Complaint, Docket 66, incorporating the admissions in Answer to Amended Complaint for Declaratory Relief, ¶ 19, Docket 19; Errata to Plaintiff's Amended Complaint for Declaratory Relief, Exhs. 11 and 12, Docket 59 [admitted by Herron].

[40] Docket 20.

[41] Docket 34.

[42] Docket 79.

disfigurement. Allstate also argues in its motion at docket 124 that it is entitled to judgment on the claim of Mary Kenick for negligent infliction of emotional distress ("NIED") because she either had no legally cognizable claim or because Allstate had no duty to offer policy limits.

## IV. APPLICABLE LAW

Generally, a federal court exercising diversity jurisdiction applies the law of the forum state,[43] including its choice of law rules.[44] When interpreting state law, this Court is bound by the decisions of the state's highest court. In the absence of a decision by the highest state court, this Court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."[45] In deciding choice of law questions, Alaska generally looks to the Restatement and for contract cases has adopted the "most significant contacts" test.[46] In this case the insured is an Alaska resident, the policy insured activities or business operations expected by the parties to be conducted in Alaska, and the injury upon which the claim is based occurred in Alaska. Alaska clearly has the most significant contacts in this case. In addition, the Alaska Supreme Court has consistently applied Alaska law to cases involving foreign insurers in disputes where the insured is an Alaska resident.[47] Consequently, the substantive law to be applied in this case is the law of Alaska.

---

[43] *Conestoga Servs. Corp. v. Executive Risk Indem., Inc.*, 312 F.3d 974 (9th Cir. 2002).

[44] *Fields v. Legacy Health Systems*, 413 F.3d 943, 950 (9th Cir. 2005).

[45] *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001); *Paulman v. Gateway Ventures Partners III L.P.* (*In re Filtercorp, Inc.*), 163 F.3d 570, 578 (9th Cir. 1998).

[46] *Palmer G. Lewis Co., Inc. v. ARCO Chemical Co.*, 904 P.2d 1221, 1227 (Alaska 1995) (adopting RESTATEMENT (SECOND) CONFLICT OF LAWS, § 188).

[47] *See, e.g., Dugan v. Atlanta Cas. Companies*, 113 P.3d 652, 655 (Alaska 2005) and the cases cited therein.

## V.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment in its favor as a matter of law.[48]  Support and opposition to a motion for summary judgment is made by affidavit made on personal knowledge of the affiant, depositions, answers to interrogatories, setting forth such facts as may be admissible in evidence.[49]  In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial.[50]  The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a trier of fact or judge to resolve the parties' differing versions of the truth at trial.  In order to show that a genuine issue of material fact exists a non-moving plaintiff must introduce probative evidence that establishes the elements of the complaint.[51]  Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment."[52]  There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[53]

---

[48] FED. R. CIV. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir.1989).

[49] FED. R. CIV. P. 56(e)

[50] *Id.*; *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir.2002).

[51] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[52] *Id.* at 255.

[53] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

## VI.  DISCUSSION

Herron primarily focuses on the phrase in the Court's July 14, 2004, Order:[54] "Allstate seeks a determination that the assignment was a nullity, i.e., that Herron had no viable claim to assign."  Herron places too much emphasis on the word "viable."  At oral argument Herron tended to equate "viable" with "colorable."  Even if the Court were to construe the word "viable" literally, it requires more than just being colorable; a claim is viable when all the elements of that claim can be established.[55]  Indeed, the Court may very well have inadvertently understated Allstate's position.  Linguistics aside, Allstate seeks a declaration that Herron breached the insurance agreement by unilaterally confessing judgment and that breach was not justified by any prior action by Allstate.  The position of Allstate in this litigation is that as a result Herron had no claim, *i.e.*, he had nothing to assign.

Herron asserts that Allstate acted in bad faith is established by:

(1) exposing him to an excess judgment as part of an effort from September 16, 2002, to May 12, 2003, to promote Allstate's financial interests in concealing and not paying a $25,000 first party claim for medical payments coverage and at all times acting to prevent Trailov or Kenick from being aware of or making claims for $200,000 or more of available uninsured motorist coverage ("UIM"), which Allstate investigated as early as September 18, 2003;

(2) in spite of Allstate's very swift investigation of its own UIM exposure, failing over a period of 8 months from September 16, 2002 to May 16, 2003 to promptly and fairly investigate the claims against Herron, including failing to promptly secure and evaluate medical records and reports, physician interviews, IME's, medical consultations, claimant interviews, and violating the standards of the Unfair Claims Practices Regulation 3 AAC 26.050(a), (b) that requires a prompt investigation "using due diligence";

---

[54] Docket No. 20.

[55] *See Kidder, Peabody & Co., Inc. v. Brandt*, 131 F.3d 1001, 1004 (11th Cir.1997).

(3) failing to promptly and fairly evaluate the claimants' damages over the same period of 8 months resulting in no evaluation and no attempt to seek authority to settle by the lapse of a policy limits offer on May 16, 2003;

(4) failing to ever advise Herron or his attorney of the true status of the case, lack of timely investigation, lack of evaluation, and the possible exposure to an excess judgment, including after Allstate internally designated Trailov's claim as a Serious Injury Claim requiring a mandatory evaluation and a mandatory Home Office Referral report within 14 days of the designation of March 3, 2003, and including after a settlement deadline of May 16, 2003, was set by Ms. Power's letter of April10, 2003;

(5) failing to fully advise Herron of the settlement status of the claims including not copying him with Ms. Power's letter of April 10, 2003, that set a deadline of May 16, 2003, not explaining the meaning of a settlement deadline of May 16, 2003, and not explaining the risks and possible consequences of not complying with the deadline;

(6) failing to advise Herron's attorney of the settlement status of the case after his appearance on March 26, 2003, including failure to copy Herron's attorney with the deadline letter of April 10, 2003, and not advising him at all in relation to the May 16, 2003, settlement deadline set forth in that letter;

(7) failing to advise Herron or his attorney of Allstate's intent not to comply with that May 16, 2003, deadline and of the risk that settlement within policy limits was thus jeopardized;

(8) failing to allow Herron and his attorney the opportunity to seek an extension of the deadline or to try to force or demand that Allstate settle one or both cases before May 16, 2003;

(9) failing to timely and unconditionally tender any settlement offers within policy limits at any time before the May 16, 2003, deadline lapsed; and

(10) even after the May 16, 2003, deadline, seeking to conceal the potential UIM claims of Trailov and Kenick by not disclosing them and on May 30, 2003, offering full and final settlement for all their bodily injury claims without reference to or any reservation of the UIM claims.

Herron also argues that Allstate's negligent handling of the claim is evidenced by:

(1) failing over a period of 8 months to promptly secure and use medical releases, medical records, physician interviews, medical consultations, IME's, and interviews so as to competently and reasonably investigate and evaluate the potential amounts of the claims against Herron;

(2) failing to comply with Alaska regulations on investigating claims promptly and with due diligence;

(3) failing to comply with Allstate internal standards on a designated Serious Injury Claim in relation to evaluating and reporting to the Home Office within 14 days and indeed not doing so until 2½ months had elapsed and a settlement offer deadline of May 16, 2003, had lapsed;

(4) failing to comply with internal Allstate procedures regarding promptly advising Allstate supervisors of the settlement deadline of May 16, 2003;

(5) failing to comply with Allstate's Demand procedure requiring entry of the deadline of May 16, 2003, into the Allstate Demand Log;

(6) failing to advise Herron as to the true status of the claims including the lack of timely investigation, lack of any evaluation, and the insured's exposure to an excess judgment;

(7) failure to fully and promptly advise Herron as to settlement status, including explaining a settlement demand deadline of May 16, 2003, and explaining the potential risks and consequences if the deadline was missed;

(8) after his appearance on March 26, 2003, completely failing to advise Herron's attorney of the true status of the case, including lack of investigation and evaluation, Herron's exposure to an excess judgment and a settlement demand deadline of May 16, 2003;

(9) failing to timely advise an insured and his attorney of Allstate's intent not to meet a settlement demand deadline of May 16, 2003, and the risks posed by such decision;

(10) failing to promptly offer or accept settlement within policy limits within a known settlement deadline of May 16, 2003.

The outcome of this case is dependent upon whether at the time Herron consented to judgment Allstate had so breached the insurance contract that it amounted to a repudiation sufficient to excuse Herron from his obligation to assist Allstate in the defense of the lawsuit.   This, in turn depends on whether Allstate's failure to accept the policy limits demand made on April 10, 2003, within the time specified, May 16, 2003, was unreasonable under all the facts and circumstances.[56]

The law is clear in Alaska that an insurer owes a duty to its insured to tender a policy limits offer as soon as the insurer recognizes that its insured is potentially liable for the injuries and that the injured party's damages will easily exceed the limits of the coverage.[57]   In this case, the first element—recognition that its insured was potentially liable for the damages arising out of the accident, *i.e.*, that it was more likely than not that Allstate's insured was the responsible party, was established approximately a week after the accident.[58]   From that point the only element remaining to be established was whether Trailov's injuries exceeded the policy limits.  It is also clear that an insurer may be held liable for the negligence of its salaried adjuster in investigating the claim.[59]

Herron's argument is essentially in two parts.  First, that Allstate did not act diligently in investigating the damages in the eight months following the accident and, therefore, should have known prior to May 16, 2003, that the damages easily exceeded the policy limits.[60]   Second, that Allstate did not act in good faith when it failed to accept

---

[56] There is no evidence that the other alleged Allstate transgressions, even if they did in fact occur, caused Herron any harm, injury or damage.  Indeed, how Allstate concealed the potential UIM claim and separate provision for the medical payments from Kenick and Trailov, represented by counsel who was furnished a copy of the insurance policy and presumptively familiar with Alaska law, is inexplicable.

[57] *Maloney v. Progressive Speciality Ins. Co.*, 99 P.2d 565, 567 (Alaska 2004).

[58] It does not appear from the record that Allstate was placed on notice that Kenick, who was not injured in the accident, was making a NIED claim until February 14, 2003, five months after the accident.

[59] *See C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1220 (Alaska 2000) (a case in which Allstate conceded that point).

[60] For the purposes of ruling on the motion at bar, the Court assumes that the policy limits were $200,000/person plus Rule 82 attorney's fees, the combined per person limits of the

the policy limits demand by May 16, 2003.[61]  In order to enter judgment in favor of
Herron the Court must find that on the undisputed facts he is entitled to judgment as a
matter of law.

The Court is unpersuaded by Herron's arguments that Allstate's investigation of
the claims was not accomplished with due diligence as a matter of law.  The record in
this case is replete with requests for information by Allstate to Power, the attorney for
Kenick and Trailov.  It is also replete with delays by Power in responding to those
requests, in some cases several weeks, and several instances in which the response
was inadequate or incomplete.  Viewing the evidence as a whole and in the light most
favorable to Allstate, a rational trier of fact could find that Allstate investigated the claim
with due diligence and was not negligent.[62]

As for missing the May 16 deadline date, the Court must answer two questions.
First was May 16 a "firm" date?  The April 10 letter does not expressly state that time is
of the essence; indeed, with its "unless there is some discussion regarding pre-filing
resolution" trailer, it is at best ambiguous as to whether time was of the essence.  A
reasonable interpretation of the letter is that it was an opening demand either soliciting a
counteroffer or inviting further negotiations before a suit was filed.  Looking to the law of
contracts by way of analogy, in order to constitute a total breach, it must be shown that
the failure to meet the stated deadline was material.[63]  For the failure to be material,
Herron must have suffered some prejudice.[64]  In order for Herron to have been

---

bodily injury and uninsured motorist coverage ($100,000 each).  *See Progressive Ins. Co. v.
Simmons*, 953 P.2d 510 (Alaska 1998) (holding in a case in which a minor was injured in a
single car accident that the personal injury liability limits and UIM coverage were "stacked,"
allowing recovery under both).

[61] The Court notes that nothing in the record indicates how counsel for Trailov and
Kenick defined "policy limits" or that a specific sum was discussed at any time.

[62] *See Continental Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 288 (Alaska 1980)
("Where the evidence, viewed in the light most favorable to the non-moving party, is such that
reasonable people could differ in their judgment, the question is one for the jury to decide.").

[63] *See Dickerson v. Williams*, 956 P.2d 458, 463 (Alaska 1998).

[64] *Id.*; *see also* RESTATEMENT (SECOND) OF CONTRACTS, §§ 241, 242.

prejudiced by the delay, Trailov and Kenick would had to have been prejudiced by the failure and justified in terminating any further negotiations. The Restatement states with respect to time is of the essence provisions:[65]

> (c) the extent to which the agreement provides for performance without delay, but a material failure to perform or to offer to perform on a stated day does not of itself discharge the other party's remaining duties unless the circumstances, including the language of the agreement, indicate that performance or an offer to perform by that day is important.

The comment to that section explains in part.[66]

> b. *Significant circumstances.* This Section states circumstances which are to be considered in determining whether there is still time to cure a particular failure, or whether the period of time for discharge has expired. They are similar to the circumstances stated in the preceding section. The importance of delay to the injured party will depend on the extent to which it will deprive him of the benefit which he reasonably expected (§ 241(a)) and on the extent to which he can be adequately compensated (§ 241(b)). The extent of the forfeiture by the party failing to perform or to offer to perform (§ 241(c)) is also significant in determining the importance of delay. * * * * The reasonableness of the injured party's conduct in communicating his grievances and in seeking satisfaction is a factor to be considered in this connection. * * * *  On discharge by repudiation, see § 253(2). Finally, the nature of the behavior of the party failing to perform or to offer to perform may be considered here as under the preceding section (§ 241(e)).

What prejudice Trailov and Kenick suffered by the failure to meet the May 16 deadline is not apparent from the record before this court.  The Court also finds troubling the fact that Power did not respond to Allstate's May 16 facsimile, which, in effect, requested an additional two weeks to complete evaluation of Trailov's claim and expressly requested additional information on Kenick's claim.[67]

Based on the record as a whole and looking at the facts in the light most favorable to Allstate, a rational trier of fact could find that the failure of Allstate to accept

---

[65] RESTATEMENT (SECOND) OF CONTRACTS, § 242(c).

[66] *Id.*, cmt. (b).

[67] The Court finds somewhat disingenuous Herron's argument that "Berry did not ask for an extension of time.  Berry did not call the Angstman Law Office." Memorandum in Support of Motion for Summary Judgment, Docket 92-1 at 24–25 (underlining in the original).

the policy limit demand on May 16 was not material and Trailov and Kenick were not justified in refusing to consider any further policy limit offers.[68]

Second, does the evidence necessarily establish that Allstate possessed sufficient information as of May 16 that the damages of Trailov or Kenick easily exceeded policy limits. With respect to Kenick's NIED claim, Allstate did not. All that Allstate had at the time was the fact that Kenick had changed employment and was making approximately $13,000 less per year. Despite Allstate's request for some evidence, any evidence, that the change in employment was tied to her NIED claim, even as of that date Allstate did not have sufficient information to conclude that its insured, Herron, was liable for the damages, let alone that the damages clearly exceeded the policy limits.

With respect to Trailov, the information Allstate had received was that Trailov had incurred $35,000 in medical expenses, of which $25,000 had been paid through the medical payment coverage. It also had information that Trailov more likely than not had suffered brain damage; however, it had not received any medical records or reports, concerning the extent of the injury to her brain.[69]

However, the testimony of Karen Peterson on behalf of Allstate indicates that as of May 16 Allstate had sufficient information that she opined that Trailov would receive the $100,000 liability coverage and likely the $100,000 UIM as well,[70] and authorized a

---

[68] At oral argument counsel for Herron admitted that the issue of bad faith was a triable issue of fact.

[69] Herron criticizes Allstate for failing to request the name of the neuropsychologist or for a copy of the report. Memorandum in Support of Motion for Summary Judgment, Docket 92-1 at 16. However, on the reverse side of the coin, Power never furnished it. More to the point, although Power saw fit to enclose the medical records for Trailov's back pain in her April 10 letter, she apparently did not deem it necessary to provide the medical information concerning Trailov's neurological injury. Indeed, Power acknowledged that it was not obvious and that whatever her brain injuries, it was not reflected in Trailov's school grades. That Power did not include the report of neuropsychologist may be explained by the report itself. That report indicated that the neurological damages were neither severe nor expected to be of a long term nature. Motion for Summary Judgment Applying the Noneconomic Damages Cap of AS 09.17.010(b), Exh. B, Docket 116-3.

[70] Memorandum in Support of Motion for Summary Judgment, Exh. 5, Deposition of Karen Peterson, 82:22–83:15; Docket 100 at 6.

settlement equal to the liability coverage plus Rule 82 attorney's fees.  From this it is obvious that Allstate possessed sufficient information on May 16 that it recognized Trailov's claim easily exceeded the $100,000 liability coverage.  While not so obvious, it also appears that Allstate recognized that Trailov's damages probably exceeded the "stacked" UIM limits as well.

Based on the record as a whole and viewing the evidence in the light most favorable to Allstate, although it may be a close question, a rational trier of fact could not find that Allstate was not possessed of sufficient information on May 16, 2003, to recognize that Trailov's damages easily exceeded policy limits.  On the other hand, based on the evidence in the record and viewing it in the light most favorable to Kenick, a rational trier of fact could not find that Allstate possessed sufficient information on May 16, 2003, to recognize that Herron was either liable for the damages claimed by Kenick or that those injuries exceeded policy limits.

Allstate's motions at dockets 116 and 124 are procedurally defective.  Both motions seek to adjudicate something less than an entire claim.  The motion at docket 116 seeks a ruling on a part of the damages that Trailov may recover while the motion at docket 124 seeks a dismissal of the claim of Kenick.  Neither of these terminate in its entirety any claim raised in the complaint or defense raised in the answer.  Consequently, neither is a proper motion.  Summary judgment addresses an entire

---

Q.      So the attorney has demanded policy limits for Angelina Trailov?
A.      Correct.
Q.      And it says "and for NIED claim for her mother."  Then go to the next line, it says "I agree 04 would probably receive the 100K liability limits in Bethel venue, likely the 100K limits also."
        The 100K SU limits would be the UIM coverage?
A.      Yes.
Q.      So you agreed that Angelina would probably receive the $100,000 in liability limits in Bethel, plus likely the $100,000 in UIM coverage as well.
A.      I agreed that she would likely receive the 100K liability limits.  And then I'm indicating it's likely she would receive the UIM limits also.  That is not part of my agreement with anyone, that second portion.
Q.      Okay, I see.  So someone had asked you whether or not you agreed that she would get $100,000 liability limits in Bethel.  And you said yes, she'd also get the UIM limits probably, too.
A.      Yes.

claim, counterclaim, cross-claim, or affirmative defense.[71/]  Summary judgment may be entered on the issue of liability alone.[72/]  Adjudication of a particular fact, in the context of Rule 56, is addressed by Rule 56(d).  However, Rule 56(d) permits the court to find particular facts uncontroverted in connection with a motion brought under Rule 56 where "judgment is not rendered upon whole case or for all the relief asked."  The procedure in subdivision (d) is ancillary to a motion for summary judgment; it does not authorize the entry of judgment on part of a claim or the granting of partial relief.[73/]  In short, Rule 56(d) neither creates nor authorizes a stand-alone motion.

### VII.  CONCLUSION.

Based on the foregoing, defendant's Motion for Summary Judgment at docket 91 and plaintiff's motions for summary judgment at dockets 116 and 124 are DENIED.

Under FED. R. CIV. P. 56(d), the Court finds the undisputed facts in the record establish that:

1.    At no time did Allstate possess sufficient information that it could determine that Herron was liable to Mary Kenick or that Kenick's damages exceeded policy limits.

2.    On or before May 16, 2003, Allstate possessed sufficient information that it could have determined that Herron was liable to Angelina Trailov and that Trailov's damages easily exceeded the liability policy limits of $100,000.00.

Dated: October 19, 2006

                                              s/ Timothy M. Burgess
                                          TIMOTHY M. BURGESS
                                          United States District Judge

---

[71/] See FED R. CIV. P. 56(a) (motion brought by the party seeking to recover on a claim) and (b) (motion brought by the party defending against the claim).

[72/] FED. R. CIV. P. 56(c).

[73/] See generally 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FED. PRAC. & PROC. CIV., § 2737 (3d ed.).