Mark E. Wilkerson, Esq.
Wilkerson Hozubin
310 K Street, Suite 405
Phone: 907 276-5297
Fax: 907 276-5291
E-mail: mark@wilkersonlaw.net
AK Bar #8310157

Attorneys for Plaintiff Allstate

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANIES, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| CHARLES HERRON, ) | |
| ) | |
| Defendant. ) | |
| )Case No. A04-0043 CV (JKS) | |

**ALLSTATE'S MOTION IN LIMINE NO. 1 TO EXLUDE EVIDENCE AND ARGUMENT CONCERNING ALLSTATE'S HANDLING OF UIM COVERAGE**

Introduction

Just as this Court issued an Order *in limine* precluding Herron from offering evidence or argument about Allstate's handling of the first-party medical payments claim in this third-party bad faith case,[1] so too should the Court preclude evidence or argument of Allstate's handling of any potential first-party UIM claim.  Allstate's handling of the UIM claim is every bit as irrelevant and unfairly prejudicial as its handling of the medical payments claim.  Moreover, there is no

---

[1] Docket 162, at 4.

evidence to even suggest Allstate's handling of UIM coverage had anything to do with its adjustment of this third-party claim. Reasonable minds could not differ. Allstate respectfully requests that this Court exclude evidence or argument of Allstate's handling of any potential UIM claim.

## Facts

Herron alleges Allstate's bad faith is evidenced by:

> at all times acting to prevent Trailov or Kenick from being aware of or making claims for $200,000 or more of available uninsured motorist coverage ("UIM"), which Allstate investigated as early as September 18, 2002.[2]

Counsel for Herron agrees that the Court's prior rulings prevent any pursuit of a "concealing the existence of, or the mishandling of, a UIM claim" theory[3], but seeks to argue and offer expert opinion that Allstate considered/investigated/ opened UIM coverage on September 18, 2002, and thus that Allstate must have already concluded its liability limits would be exhausted.

On September 18, 2002, (two days after Allstate was notified of the September 14, 2002, accident), Craig Elkins

---

[2] Court's Order dated October 19, 2006, docket 160, at 11.
[3] "There is no evidence that the other alleged Allstate transgressions, even if they did in fact occur, caused Herron any harm, injury or damage. Indeed, how Allstate concealed the potential UIM claim and separate provision for the medical payments from Kenick and Trailov, represented by counsel who was furnished a copy of the insurance policy and presumptively familiar with Alaska law, is inexplicable." Fn. 56 to Order at Docket 160.

2

(Allstate) asked Renee Vanzant (Allstate) to "secure cert. dec. and agent application -- waiver issue."[4] Mr. Elkins testified that, "this...was a company requirement...that I secure the selection/rejection form or ensure the insured had an opportunity on the UM/UIM endorsements."[5] Mr. Elkins further testified the request was the result of separate "failure to offer" litigation, and that he was tasked with making the request in every claim where there were objective injuries to a passenger in the insured's vehicle.[6] Mr. Elkins specifically testified that his request had nothing to do with any consideration or evaluation of potential UIM exposure under Herron's policy for Kenick's claims. Mr. Elkins testified unequivocally that no such determination had, or could have been, made at that time.[7] Common sense would render such an "evaluation" with no information two days after learning of the loss impossible speculation. Mr. Elkins' testimony is uncontradicted by any fact witness or exhibit.

The factual record is undisputed: prior to May 29, 2003, Allstate never believed Trailov's claim could exceed the liability limits and no UIM was considered/initiated/opened prior to that date. Kathy Berry testified she never felt the

---

[4] Exhibit 1.
[5] Exhibit 2.
[6] Id., at p. 2 of 2.
[7] Id.

claim exceeded liability policy limits.[8] Allstate's Evaluation Consultant, Lori Barra, reviewed the file in May 2003 and she did not believe Trailov's claim exceeded liability policy limits.[9] Allstate Supervisor, Karen Petersen, was the first person at Allstate to conclude, and she did so on May 29, 2003, that Trailov's claim likely exceeded liability policy limits. On that date, appropriately, Ms. Petersen requested that a UIM feature be opened.[10]

## Argument

This Court previously precluded Herron from offering evidence or argument of Allstate's handling of Trailov's first-party medical payments claim, holding:

> The Court also agrees that whether that conduct also violated Allstate's obligation under the policy with respect to the first-party medical payment claim is not relevant to any issue in this case. Moreover, to the extent that the evidence may be relevant, its probative value is outweighed by its prejudicial effect and danger of confusing the issues.[11]

Allstate's handling of Trailov's first-party UIM claim is every bit as irrelevant and unfairly prejudicial as Allstate's handling of the first-party medical payment claim, for the same

---

[8] Exhibit 3.
[9] Exhibit 4.
[10] Exhibits 5 and 6.
[11] Docket 162, at 4.

reasons set forth previously in Allstate's *Motion to Establish Law of the Case*.[12]

Herron's claim, based solely on his expert's speculation, that Allstate "investigated" UIM coverage as early as September 18, 2002, is completely unfounded. All facts are to the contrary. Reasonable minds could not differ.

Mr. Elkin's September 18, 2002, request to obtain Herron's UIM selection/rejection form is irrelevant to Herron's allegations of negligence and bad faith and therefore inadmissible.[13]

Even if there were some marginal relevance of Mr. Elkin's September 18, 2002 request, such relevance is outweighed by the likelihood such evidence will confuse the jury and distract from the real issues in this case. As this Court indicated:

> The outcome of this case is dependent upon whether at the time Herron consented to judgment Allstate had so breached the insurance contract that it amounted to a repudiation sufficient to excuse Herron from his obligation to assist Allstate in the defense of the lawsuit. This, in turn depends on whether Allstate's failure to accept the policy limits demand made on April 10, 2003, within the time specified, May 16, 2003, was unreasonable under all the facts and circumstances.[14]
>
> There is no evidence that the other alleged Allstate transgressions, even if they did in fact occur, caused Herron any harm, injury or damage. Indeed, how Allstate concealed the

---

[12] Docket 127.
[13] Federal Evidence Rule 401.
[14] Id., at 14.

5

>   potential UIM claim and separate provision for the medical payments from Kenick and Trailov, represented by counsel who was furnished a copy of the insurance policy and presumptively familiar with Alaska law, is inexplicable.[15]

This Court should not allow argument or expert opinion that is pure speculation based on a demonstrably (by undisputed evidence) false premise. For the foregoing reasons, Allstate respectfully requests that the Court preclude Herron from offering evidence or argument that UIM coverage was evaluated or opened prior to May 29, 2003, or that UIM was otherwise mishandled.

DATED this 1st day of April, 2008.

>       WILKERSON HOZUBIN
>       Attorneys for Plaintiff
>
>
>       By: s/Mark E. Wilkerson
>           Mark E. Wilkerson
>           310 K Street, Suite 405
>           Phone: 907 276-5297
>           Fax: 907 276-5291
>           E-mail: mark@wilkersonlaw.net
>           Attorneys for Plaintiff Allstate
>           AK Bar No. 8310157

CERTIFICATE OF SERVICE
I hereby certify that on
April 1, 2008, a true and
correct copy of the foregoing was
served electronically on the following:

Mark A. Sandberg, Esq.


WILKERSON HOZUBIN

By:   s/Mark E. Wilkerson
1000.788/plead/Dec Action/Mtn in Limine.1 UIM

---

[15] Fn. 56 to Order at Docket 160.