IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


ALLSTATE INSURANCE COMPANIES,

     Plaintiff,

vs.

CHARLES HERRON,

     Defendant.

_____ )

NO: A04-0043 CV (JKS)



DEPOSITION OF KATHY BERRY

Volume I -- Pages 1-68

Friday, September 30, 2005, 2:18 p.m.

Anchorage, Alaska



## Alaska Stenotype Reporters

**511 West Ninth Avenue**
**Anchorage AK 99501-3520**
*Serving Alaska Since 1953*

Rick D. McWilliams, RPR, Ret.
Fred M. Getty, RPR, Ret.



Telephone 907.276.1680
Email AkSteno@aol.com
Fax 907.276.8016

Exhibit 3

Page 1 of 2

Page 1

Kathy Berry                    Deposition                    September 30, 2005

**Page 57**

1 sending out excess letters?
2 A.    I don't know if Allstate has a form.
3 Q.    Do you have a form for sending excess
4 letters?
5 A.    I have one that I normally use, yes.
6 Q.    This isn't it, is it?
7 A.    No.
8 Q.    At any time in your handling of this claim,
9 did you ever send Charles Herron an excess letter?
10 A.    No.
11 Q.    Why not?
12 A.    Because I never felt like this claim was in
13 excess of the policy.
14 Q.    You never felt that there was an exposure to
15 Mr. Herron in excess of the policy limits?
16 A.    No.
17 Q.    As of February 18th, 2003, Allstate was in
18 receipt of a demand for the policy limits, correct?
19 A.    Right.
20 Q.    Do you believe an excess letter should have
21 gone out at that time?
22 A.    No.
23 Q.    When is it appropriate to send an excess
24 letter, in your opinion?
25 A.    In a case where, for instance, someone has

**Page 58**

1 $200,000 in medical bills, multiple broken bones
2 within -- you know, 200,000 in bills of maybe within
3 ten days of the accident or something like that
4 where -- and the person maybe has a $50,000 policy.
5 Q.    So is it your normal practice that you would
6 only send an excess letter where it is clear that the
7 case is in excess of the policy limits?
8 A.    I would say if there's a high probability
9 it's in excess of policy limits.
10 Q.    So your normal practice is you would send
11 out an excess letter when it becomes evident to you or
12 to Allstate that the claim is highly probably -- or
13 there's a high probability the claim is in excess of
14 the policy limits?
15 A.    Right.
16 Q.    And otherwise, you would not.
17 A.    Right.
18 Q.    In any event, returning to this particular
19 file, I believe you told me you didn't think this was
20 an excess claim.
21 A.    Right.
22 Q.    And as of March the 18th, 2003, had you
23 evaluated the claim?
24 A.    No.
25 Q.    As of May the 16th, 2003, had you evaluated

**Page 59**

1 the claim?
2 A.    I had read through the claim, yes.
3 Q.    Do we see you documenting anything about
4 value -- or I'm sorry -- documenting an evaluation to
5 the claim file at any point here?
6 A.    No.
7 Q.    Ever?
8 A.    Possibly towards the end of May, but I don't
9 remember.
10 Q.    On May -- on March the 18th, 2003, would you
11 have had the claim file physically in order to write
12 this letter to Mr. Herron?
13 A.    Yes.
14 Q.    So on March the 18th, 2003, did it come to
15 your attention that this was supposed to be a home
16 office referral?
17 A.    Well, Craig, I believe, had already put in a
18 CDS entry stating that.
19 Q.    Okay. And so on March the 18th, 2003 -- all
20 I'm asking is, did the fact you were supposed to have
21 been sending in a home office referral on this file
22 come to your attention on March the 18th?
23 A.    I don't know.
24        MR. SANDBERG:  Off record.
25        (Telephonic interruption.)

**Page 60**

1 BY MR. SANDBERG:
2 Q.    On March the 18th, 2003, would you have
3 reviewed the screens we've been looking at prior to
4 writing this letter to Mr. Herron?
5 A.    Probably.
6 Q.    So if you had reviewed them, presumably you
7 would have seen the instructions from Mr. Elkins to
8 make the home office referral?
9 A.    If I reviewed them, yes.
10 Q.    But as we sit here today, you just don't
11 know one way or the other?
12 A.    Right.
13 Q.    Go to 203, if you would.  203, we're looking
14 at a letter to you from Ms. Power --
15 A.    Yes.
16 Q.    -- dated December the 10th, 2002 and
17 received December 11th, 2002?
18 A.    Right.
19 Q.    And it says that Angelina Trailov will be
20 examined by a neuropsychologist on December 17th,
21 2002?
22 A.    Right.
23 Q.    Did you ever make an effort to determine
24 whether that happened?
25 A.    I don't believe I asked her about that, no.

18 (Pages 57 to 60)

Alaska Stenotype Reporters