Mark E. Wilkerson, Esq.
Wilkerson Hozubin
310 K Street, Suite 405
Phone: 907 276-5297
Fax: 907 276-5291
E-mail: mark@wilkersonlaw.net
AK Bar No. 8310157

Attorneys for Plaintiff Allstate

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANIES, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| CHARLES HERRON, | ) |
| | ) |
| Defendant. | ) |
| | ) Case No. A04-0043 CV (JKS) |

**ALLSTATE'S MOTION IN LIMINE NO. 2 TO PRECLUDE EVIDENCE OR ARGUMENT OF ALLEGATIONS UNRELATED TO ALLSTATE'S CONDUCT IN RESPONSE TO TRAILOV'S APRIL 10, 2003, DEMAND**

Introduction

Defendant alleges Allstate committed numerous transgressions in its handling of Trailov's and Kenick's claims against him. However, all but one of those allegations are immaterial to the real issue in this case because none of the alleged transgressions "caused Herron any harm, injury or damage."[1] Even if there were some marginal relevance to the allegations, the unfair prejudice of such evidence outweighs any probative value. Allstate respectfully requests that the

---

[1] Docket 160 at 14.

Court preclude evidence or argument of immaterial and unfairly prejudicial allegations.

## Facts

Herron alleges Allstate committed numerous transgressions in its handling of the third-party claims asserted against Herron by Kenick and Trailov. This Court previously identified the twenty (20) specific allegations levied by Herron in its Order dated October 19, 2006.[2] The allegations, as identified by this Court, are as follows:

> Herron asserts that Allstate acted in bad faith is established by:
>
> (1) exposing him to an excess judgment as part of an effort from September 16, 2002, to May 12, 2003, to promote Allstate's financial interests in concealing and not paying a $25,000 first party claim for medical payments coverage and at all times acting to prevent Trailov or Kenick from being aware of or making claims for $200,000 or more of available uninsured motorist coverage ("UIM"), which Allstate investigated as early as September 18, 2003;
>
> (2) in spite of Allstate's very swift investigation of its own UIM exposure, failing over a period of eight months from September 16, 2002 to May 16, 2003 to promptly and fairly investigate the claims against Herron, including failing to promptly secure and evaluate medical records and reports, physician interviews, IME's, medical consultations, claimant interviews, and violating the standards of the Unfair Claims Practices Regulation 3 AAC 26.050(a), (b) that requires a prompt investigation "using due diligence";
>
> (3) failing to promptly and fairly evaluate the claimants' damages over the same period of eight months resulting in no evaluation and no attempt to

---

[2] Docket 160, at 11-13.

seek authority to settle by the lapse of a policy limits offer on May 16, 2003;

(4) failing to ever advise Herron or his attorney of the true status of the case, lack of timely investigation, lack of evaluation, and the possible exposure to an excess judgment, including after Allstate internally designated Trailov's claim as a Serious Injury Claim requiring a mandatory evaluation and a mandatory Home Office Referral report with fourteen days of the designation of March 3, 2003, and including after a settlement deadline of May 16, 2003, was set by Ms. Power's letter of April 10, 2003;

(5) failing to fully advise Herron of the settlement status of the claims including not copying him with Ms. Power's letter of April 10, 2003, that set a deadline of May 16, 2003, not explaining the meaning of a settlement deadline of May 16, 2003, and not explaining the risks and possible consequences of not complying with the deadline;

(6) failing to advise Herron's attorney of the settlement status of the case after his appearance on March 26, 2003, including failure to copy Herron's attorney with the deadline letter of April 10, 2003, and not advising him at all in relation to the May 16, 2003, settlement deadline set forth in that letter;

(7) failing to advise Herron or his attorney of Allstate's intent not to comply with that May 16, 2003, deadline and of the risk that settlement within policy limits was thus jeopardized;

(8) failing to allow Herron and his attorney the opportunity to seek an extension of the deadline or to try to force or demand that Allstate settle one or both cases before May 16, 2003;

(9) failing to timely and unconditionally tender any settlement offers within policy limits at any time before the May 16, 2003, deadline lapsed; and

(10) even after the May 16, 2003, deadline, seeking to conceal the potential UIM claims of Trailov and Kenick by not disclosing them and on May 30, 2003,

3

offering full and final settlement for all their bodily injury claims without reference to or any reservation of the UIM claims.

Herron also argues that Allstate's negligent handling of the claim is evidenced by:

(1) failing over a period of eight months to promptly secure and use medical releases, medical records, physician interviews, medical consultations, IME's, and interviews so as to competently and reasonably investigate and evaluate the potential amounts of the claims against Herron;

(2) failing to comply with Alaska's regulations on investigating claims promptly and with due diligence;

(3) failing to comply with Allstate internal standards on a designated Serious Injury Claim in relation to evaluating and reporting to the Home Office within fourteen days and indeed not doing so until 2½ months had elapsed and a settlement offer deadline of May 16, 2003, had lapsed;

(4) failing to comply with internal Allstate procedures regarding promptly advising Allstate supervisors of the settlement deadline of May 16, 2003;

(5) failing to comply with Allstate's Demand procedure requiring entry of the deadline of May 16, 2003, into the Allstate Demand Log;

(6) failing to advise Herron as to the true status of the claims including the lack of timely investigation, lack of any evaluation, and the insured's exposure to an excess judgment;

(7) failure to fully and promptly advise Herron as to settlement status, including explaining a settlement demand deadline of May 16, 2003, and explaining the potential risks and consequences if the deadline was missed;

(8) after his appearance on March 26, 2003, completely failing to advise Herron's attorney of the true status of the case, including lack of investigation and evaluation, Herron's exposure to an

excess judgment and a settlement demand deadline of May 16, 2003;

(9) failing to timely advise an insured and his attorney of Allstate's intent not to meet a settlement demand deadline of May 16, 2003, and the risks posed by such decision;

(10) failing to promptly offer or accept settlement within policy limits within a known settlement deadline of May 16, 2003.

## Argument

This Court framed the issue in this case as follows:

> The outcome of this case is dependent upon whether at the time Herron consented to judgment Allstate had so breached the insurance contract that it amounted to a repudiation sufficient to excuse Herron from his obligation to assist Allstate in the defense of the lawsuit. This, in turn depends on <u>whether Allstate's failure to accept the policy limits demand made on April 10, 2003, within the time specified, May 16, 2003, was unreasonable under all the facts and circumstances.</u>[3]

In order for Allstate's alleged conduct to constitute a material breach of the insurance contract, the conduct must have caused Herron "some harm, injury or damage."[4] As this Court has already indicated:

> There is no evidence that the other alleged Allstate transgressions, even if they did in fact occur, caused Herron any harm, injury or damage.[5]

---

[3] <u>Id.</u>, at 14 (emphasis added).
[4] <u>Id.</u>, at 14, fn. 56; <u>Dickerson v. Williams</u>, 956 P.2d 458, 463 (Alaska 1998); Restatement (Second) of Contracts, §§ 241, 242.
[5] Docket 160, at 14, fn. 56; <u>see</u> <u>also</u>, Docket 160 at 15-16.

Herron's allegations that Allstate failed to comply with various internal policies and procedures[6] are irrelevant to whether Allstate materially breached the insurance contract by tendering a policy limits offer to Trailov on May 30 instead of May 16, 2003. In *Hillman v. Nationwide*,[7] the insured attempted the same argument Herron attempts here: the insurer's alleged failure to comply with all aspects of its guidelines and procedures established bad faith. The *Hillman* court dispatched this argument, holding that the alleged violations of guidelines had little or no relevance on the insurer's decision to apply or not apply a particular coverage exclusion.[8]

Likewise, alleged violations of general guidelines and procedures have no bearing on Allstate's decision to meet or not meet the May 16, 2003 "deadline." Whether Allstate timely sent a home office referral when home office authorization was not required in order to tender a policy limits offer,[9] or concealed UIM coverage, or failed to enter a demand in a "demand log," or any of Herron's "other alleged Allstate transgressions"[10] have nothing to do with Allstate meeting the

---

[6] See allegations 4 (bad faith) and 3-5 (negligent handling) set forth above.
[7] Hillman v. Nationwide, 855 P.2d 1321 (Alaska 1993).
[8] Id., at 1326.
[9] Exhibit 1, Deposition of Karen Petersen, pp. 42, 91-92, 98.
[10] See list of allegations, infra.

settlement "deadline."[11]  None of these alleged transgressions caused Herron any harm or prejudice.  They are not material.

Even if there were some marginal relevance or materiality to Herron's other allegations, such is outweighed by the risk of unfair prejudice such evidence will cause.[12]

Additionally, permitting Herron to introduce numerous, irrelevant allegations of misconduct will confuse and distract the jury as to the real issue they are to decide.[13]

For the foregoing reasons, Allstate respectfully requests that the Court preclude Herron from introducing evidence or argument related to any claim other than whether Allstate materially breached the policy by its conduct in response to the April 10, 2003, demand.

DATED this 1st day of April, 2008.

                                  WILKERSON HOZUBIN
                                  Attorneys for Plaintiff

                                By:s/Mark E. Wilkerson
                                    Mark E. Wilkerson
                                    310 K Street, Suite 405
                                    Phone: 907 276-5297
                                    Fax: 907 276-5291
                                    E-mail: mark@wilkersonlaw.net
                                    Attorneys for Plaintiff Allstate
                                    AK Bar No. 8310157

---

[11] Federal Rule of Evidence 401.
[12] Federal Rule of Evidence 403.
[13] Federal Rule of Evidence 403.

<u>CERTIFICATE OF SERVICE</u>
I hereby certify that on
April 1, 2008, a true and
correct copy of the foregoing was
served electronically on the following:

Mark A. Sandberg, Esq.

WILKERSON HOZUBIN

By:___s/Mark E. Wilkerson___
1000.788/plead/Dec Action/Mtn in Limine.2 Other Allegations