Mark E. Wilkerson, Esq.
Wilkerson Hozubin
310 K Street, Suite 405
Anchorage, AK 99501
Phone: 907-276-5297
Fax: 907-276-5291
mark@wilkersonlaw.net
Alaska Bar No. 8310157

Attorneys for Plaintiff Allstate

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANIES, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>CHARLES HERRON, )<br>)<br>Defendant. )<br>_____ ) | Case No. A04-0043 CV (JKS) |

## JOINT PRE-TRIAL ORDER

Pursuant to the Court's Pre-Trial Order [Docket 210], the parties provide the following proposed Joint Pre-Trial Order:

**A.   Remaining Claims, Affirmative Defenses, and Counterclaims To Be Decided:**

The parties have been unable to agree on this issue.

Allstate's position is:

1.   Whether at the time Herron breached his insurance contract with Allstate by confessing judgment and assigning rights to Angelina Trailov, Allstate had so breached the insurance contract that it amounted to a repudiation sufficient to excuse Herron's breach.  This turns on whether Allstate's failure to accept the policy limits

demand made on April 10, 2003, within the time specified, May 16, 2003, was unreasonable under all the facts and circumstances. This turns on the answer to two questions:

First, was May 16 a "firm" date? Did Allstate's conduct and correspondence meet the terms of the "unless there is some discussion regarding pre-filing resolution" language in the demand deadline?

Second, assuming Allstate did not meet the terms of the demand deadline by tendering the policy limits on May 30 instead of May 16, 2003, did this failure cause prejudice to Trailov?.[1]

Herron's position is:

1. Did Allstate breach the duty of good faith and fair dealing, through negligent or bad faith handling of the Trailov claim, thereby excusing Herron from his obligation to cooperate under the insurance contract? Or, was Herron's agreement to consent to entry of judgment and assign his claims against Allstate an unexcused breach of the insurance contract?

**B.     Statement of All Relief Sought**

Plaintiff Allstate seeks the following relief:

1.     An order declaring that Charles Herron's breach was unexcused, thereby voiding the insurance contract such that Allstate owed and owes no further obligation.

---

[1] See Order at Docket 160 at 14, 15; see also, Dickerson v. Williams, 956 P.2d 458, 463 (Alaska 1998); RESTATEMENT (SECOND) OF CONTRACTS, §§ 241, 242.

Defendant Herron seeks the following relief:

1. An order declaring that Allstate's handling of the Trailov claim breached the duty of good faith and fair dealing, thereby excusing Herron from his obligation to cooperate under the insurance policy.

**C.     Statement of Uncontested Facts**

The parties have stipulated to the following facts drawing largely from the Court's Order at Docket 160. The parties are continuing to work toward additional stipulations, which will supplement this stipulation of facts.

This lawsuit arises out of an accident that occurred on September 14, 2002, when a vehicle operated by Herron, Allstate's insured, was involved in a single-car collision in which Angelina Trailov ("Trailov") was a passenger. Allstate was timely notified of the accident on September 16, 2002. On September 19, 2002, James Valcarce ("Valcarce"), the attorney for Herron, was informed by Michele Power ("Power") that she represented Mary Kenick ("Kenick") on behalf of Kenick's minor child, Trailov. This letter was forwarded to Herron's father on September 23. On September 21, 2002, Allstate resolved the issue of liability, determining that Herron, its insured, was 100% liable for the accident. From that point, the only matter left for resolution was the extent of the injuries suffered and the amount of the damages for which Herron and, ultimately, Allstate would be liable. Subsequent to determining its insured was 100% liable, Allstate undertook to investigate the extent of the damages. It is this activity that is the subject matter of the dispute between the parties in this case. The following is a summary of the pertinent facts:

September 16, 2002: Allstate adjuster Renee Vanzant ("Vanzant") contacted Herron's mother and discussed the insurance coverage with her. Vanzant discovered Tailov had been medevac'd from Bethel to Anchorage and was being transferred to the Alaska Native Medical Center ("ANMC").

September 17, 2002: Vanzant called ANMC and learned that Trailov had been moved to a room.  Vanzant went to ANMC.  The hospital staff would not allow Vanzant to visit Trailov without Kenick present.  Vanzant left her card and contact information at the nursing station where Trailov was located.

September 25, 2002: Allstate requested the accident report from the Bethel Police Department by letter.  Allstate also sent a letter to Margaret Herron introducing Renee Vanzant and advising the insureds that Allstate was working on the claim.  Robert Herron, Herron's father, then faxed this letter to Valcarce on October 7, 2002.  That same afternoon, Valcarce faxed the same letter to Michele Power.  The insured left a message with Allstate that Trailov had an attorney.

October 18, 2002: Allstate adjuster Kathy Berry ("Berry") sent a letter to Power identifying an ongoing investigation and requesting (1) a complete description of injuries; (2) the names and addresses of treating physicians; (3) whether Trailov was still receiving treatment; and (4) a signed release or, in the alternative, all medical records and bills as Power received them."

October 30, 2002: Berry received the police report from Bethel.

November 7, 2002: Berry discovered that the letter sent on October 18 to Power did not include the release and sent it to Power.

November 25, 2002: Berry received the medical release form signed by Kenick of behalf of Trailov.  Also the Alaska Native Medical Center ("ANMC") recorded its lien in the amount of $10,416.23.

December 10, 2002: Power corresponded with Berry requesting a copy of Herron's policy and informed Berry that Trailov would be examined by a neuropsychologist on December 17, 2002, but provided no further information.

January 17, 2003: Berry corresponded with Power acknowledging receipt of the records of the Yukon-Kuskokwim Delta Regional Hospital and requested execution of a special release form for the ANMC. Also enclosed was a copy of the policy declarations pages.

February 6, 2003: Power returned the signed ANMC release form.

4

<u>February 14, 2003</u>: Power sent a "demand" letter to Berry making a policy limits demand on behalf of Trailov for her injuries. The letter did not specify a deadline date for response.

<u>March 17, 2003</u>: Berry corresponded with Power acknowledging receipt of Power's February 14 letter and requested additional information concerning medical care received by Trailov other than as had been provided, further information concerning the extent the injuries affected Trailov's school work.  Berry also on that date sent a request to ANMC for copies of Trailov's medical records.

<u>March 18, 2003</u>: Berry corresponded with Herron, and included a copy of the demand letter from Power and an explanation that punitive damages were not covered.

<u>March 26, 2003</u>: Valcarce, on behalf of Herron, corresponded with Berry insisting that Allstate accept a policy limits offer and, if it did not, Herron would look to Allstate for all damages awarded, including any punitive damage claim.  Berry also received a response from ANMC.

<u>March 27, 2003</u>: Berry received copies of the bills for services rendered to Trailov by City of Bethel, Alaska Regional Hospital, Alaska Imaging Associates, Denali Anesthesia, and ANMC.  Berry also received a copy of a letter sent to Kenick by her health insurer on December 9, 2002, advising her of the need to provide it with information concerning a primary automobile insurance carrier.

<u>April 10, 2003</u>: Power wrote to Berry again stating: "While the offer dated February 14, 2002, *[sic]* remains open, it will be revoked May 16, 2003, and a complaint will be filed, unless there is some discussion regarding pre-filing resolution." The letter also included some additional medical records from the Yukon-Kuskokwim Delta Regional Hospital.

<u>May 9, 2003</u>: Berry responded to Power acknowledging receipt of the April 10 letter.  The letter also stated:

5

> We are in the process of completing our evaluation of Angelina Trailov's claim and anticipate responding to your demand by your May 16, 2003 deadline.

<u>May 12, 2003</u>: Allstate paid $25,000 in medical payments.

<u>May 16, 2003</u>: Power faxed a letter to Berry providing information with respect to Kenick, but not with respect to Trailov. Berry responded by facsimile, stating:

> With regard to Angelina's claim, unfortunately our evaluation is not completed today as expected. Obviously this is a claim that needs a thorough review and the policy limits that you have demanded comprise a significant amount of money. Our evaluation will be completed by the end of the month, and I am hoping to respond to your demand sooner than that.

On or before May 16, 2003, Allstate possessed sufficient information that it could have determined that Herron was liable to Angelina Trailov and that Trailov's damages easily/likely[2] exceeded the liability policy limits of $100,000.

<u>May 30, 2003</u>: Berry sent a letter by facsimile to Power, which included the following offer.

> At this time we are prepared to offer the $100,000.00 face value of the Herron's auto policy plus Rule 82 attorney's fees of $12,500.00, for a total of $112,500.00 as full and final settlement of Ms. Trailov's bodily injury claim.
>
> * * * *
>
> Please note that checks totaling $25,000 have already been issued to your office on behalf of Ms. Trailov under the medical payments coverage of the Herron's policy.

On the same day, that offer was faxed by Power to "D.J." (presumably Douglas Johnson). Berry also received correspondence from Douglas G. Johnson ("Johnson") dated May 29, 2003, which stated in part:

---

[2] The parties disagree as to which of these words should be used. Herron argues that this fact was conclusively established by the Court's Order at Docket 160 at page 19, and seeks to use the exact language set forth by the Court. Allstate argues that the word "easily" is an inaccurate statement of the law that would be prejudicial to Allstate, and that the Court's last word on this topic came in its Order re Partial Reconsideration at Docket 165 wherein the Court used the word "likely."

> I have been retained to file suit, as co-counsel in this matter. As you know the last time-limited policy limits offer in this matter lapsed on May 16, 2003. No further policy limits offers will be made or accepted. Allstate has had a great deal of time to investigate and evaluate this clear liability and large damages case. It had more than adequate time to accept the policy limits offers. Separate offers were made for Ms. Trailov and for Ms. Kenick. Allstate never accepted an offer for either. It never made any offers to either of them.

That correspondence also expressed a willingness "to enter into good faith negotiations to settle this matter for the full and past future damages of our clients, if Allstate is willing to assume full responsibility for all those damages in writing."[3]

<u>June 4, 2003</u>: Berry responded to Johnson noting that his May 29 letter and Berry's May 30 fax appeared to cross and asked if there was a settlement of one or both claims.

Thereafter, Herron consented to entry of judgment in favor of Trailov, and assigned all his rights and claims against Allstate to Trailov. This action by Herron was a material breach of the cooperation clause in his insurance contract with Allstate. The question remaining for the jury's consideration is whether Herron's breach was excused by bad faith conduct on the part of Allstate.

**D.    List of All Factual Issues Remaining**

The parties have been unable to agree on this issue.

Allstate's position is:

---

[3] The parties disagree as to adding an additional statement of uncontested fact set forth in the Court's Order at Docket 160 at fn. 32. The Court's footnote states "Allstate's claims adjuster did not receive the May 29 letter before the May 30 letter to Power was sent. Nor was Allstate informed by Power that Johnson was co-counsel in the case." [Citations omitted.] Allstate believes the Court's statement of uncontested fact is binding, and entirely accurate. Herron argues that a jury need not believe Berry's testimony on this point.

1. Did Allstate's conduct and correspondence meet the terms of the April 10, 2003, demand letter, which set forth a deadline of May 16, 2003, "unless there is some discussion regarding pre-filing resolution"?

2. If Allstate did not meet the terms of the May 16, 2003, deadline by tendering the policy limit on May 30, 2003, did that delay cause prejudice to Trailov?

Herron's position is:

1. Did Allstate's handling of the Trailov claim breach the duty of good faith and fair dealing that it owed to Herron? Or, was Herron's agreement to consent to entry of judgment and assign his rights an unexcused breach of the contract?

Dated this 9th day of April, 2008, at Anchorage, Alaska.

WILKERSON HOZUBIN
Attorneys for Plaintiff

By:   s/Mark E. Wilkerson
310 K Street, Suite 405
Anchorage, AK 99501
Phone: 907-276-5297
Fax: 907-276-5291
mark@wilkersonlaw.net
AK Bar No. 8310157

SANDBERG, WUESTENFELD & COREY
Attorneys for Defendant

BY:   s/Mark A. Sandberg
701 W 8th Avenue, Suite 1100
Anchorage AK  99501
Phone: 907-276-6363
Fax: 907-276-3528
msandberg@aol.com
AK Bar No. 7510084

1000.788/DJA Trial /Joint Proposed PreTrial Order.Final