Mark A. Sandberg
SANDBERG, WUESTENFELD & COREY
701 W. 8th Ave., Suite 1100
Anchorage, Alaska  99501
(907) 276-6363

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANIES, )<br>          )<br>        Plaintiff,       )<br>          )<br>    v.        )<br>          )<br>CHARLES HERRON,      )<br>          )<br>        Defendant.      )<br>          ) | Case No. 3:04-cv-0043 TMB |

**OPPOSITION TO ALLSTATE'S MOTION IN LIMINE NUMBER 1**

Allstate asks this Court to enter an Order precluding "evidence or argument of Allstate's handling of any potential first-party UIM claim." (Memorandum at pg. 1). Perhaps the easiest way to respond to by telling the Court what Herron does (and does not) contemplate offering as evidence regarding UIM coverage.

Allstate had $100,000.00 in liability coverage available to protect Herron against the Trailov claim. Ms. Trailov was also entitled to $100,000.00 in underinsured motorist (UIM) coverage, since she was a passenger in Herron's car. But, Trailov could not collect this $100,000.00 UIM insurance until Herron's $100,000.00 liability policy was exhausted. None of these facts are in dispute.

This will be a trial about whether Allstate properly investigated and evaluated Trailov's damages in a timely manner. Herron will contend Allstate should have recognized that the Trailov claim easily exceeded the $100,000.00 liability insurance policy limits long before May 16, 2003. The existence of the UIM coverage is relevant to that inquiry for (at least) several reasons:

1. The fact that Allstate had Mr. Elkins investigate UIM coverage issues within days of the accident demonstrates that Allstate recognized there was at least a possibility that Trailov's damages exceeded the liability insurance limits.[1] That should have resulted in Allstate sending an excess letter to Herron, advising him of the possibility of an excess judgment and the steps he might take to protect himself. *Jackson v.*

---

[1] Contrary to the suggestion in Allstate's Memorandum, Herron does not contend that Allstate determined that Trailov's claim exceeded the available liability insurance within days of the accident. Rather, we only contend that Allstate recognize the possibility.

OPPOSITION TO ALLSTATE'S MOTION IN LIMINE NUMBER 1
*Allstate v. Herron*
Case No. A04-0043 CIV (TMB)
Page 2 of 5

*American Equity Ins. Co.*, 90 p.2d 136,142 (Alaska 2004).[2] An insurer owes a duty to send an excess letter whenever there is the possibility of an excess judgment. *Id.* Allstate breached that duty in this case.

2. When the Trailov claim was finally evaluated by Karen Peterson on May 29, 2003, Ms. Peterson quickly recognized that Trailov's damages exceeded $100,000.00. In fact, Ms. Peterson recognized that Trailov's damages would also exceed the additional $100,000.00 of available UIM coverage.[3] Had the Trailov file been shown to Ms. Peterson earlier, Allstate could have arrived at this evaluation earlier.[4] The existence of UIM coverage is relevant to demonstrating Allstate's (albeit untimely) evaluation that Trailov's damages far exceeded the $100,000.00 in liability insurance.

3. Allstate finally made an offer to settle with Trailov on May 30, 2003.[5] Allstate contends that this was an offer of the $100,000.00 liability insurance limits in exchange for a release of Trailov's claims against Herron. Herron's expert disagrees because Allstate proposes to settle "Ms. Trailov's bodily injury claim." Herron's expert will testify that Allstate was trying

---

[2] "The covenant of good faith and fair dealing also obligates the insurer to inform the insured of the possibility the injured claimant may recover a judgment in excess of the insured's policy limits." *Id*.
[3] Exhibit 1, deposition of Karen Peterson at pg. 83.
[4] Exhibit 1, deposition of Karen Peterson at pg. 86.
[5] Joint trial exhibit number 27.

OPPOSITION TO ALLSTATE'S MOTION IN LIMINE NUMBER 1
*Allstate v. Herron*
Case No. A04-0043 CIV (TMB)
Page 3 of 5

to extinguish both Trailov's liability claim and her UIM claim in exchange for $100,000.00. In other words, Herron's expert will testify that Allstate was attempting to settle $200,000.00 worth of exposure (both the liability and UIM claims) in exchange for payment of the $100,000.00 liability limits. That testimony, if believed, will demonstrate that Allstate never offered its $100,000.00 liability limits in exchange for a release of only Trailov's liability claim against Herron at any relevant point in time.

## CONCLUSION

Herron understands that this is a trial about whether Allstate fulfilled the obligations it owed under the liability insurance policy. Herron intends to discuss the existence of UIM coverage only to the extent that it is relevant to assessing Allstate's handling of the liability claim.

The documents in Allstate's own claim file (that has been stipulated into evidence) refer repeatedly to the existence of UIM coverage. Any specific objections to testimony or arguments can be raised at trial. There is no basis for a broad prophylactic Order. Herron respectfully requests that Motion in Limine Number 1 be denied.

DATED this 25th day of April 2008, in Anchorage, Alaska.

        s/ Mark A. Sandberg
        701 W 8th Avenue, Ste. 1100
        Anchorage, Alaska 99501
        Phone: (907) 276-6363
        Fax: (907) 276-3528
        E-Mail: msandberg@aol.com
        Alaska Bar No.: 7510084

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by ( ) mail ( ) fax (  ) hand this 25th day of April 2008 upon:

Mark Wilkerson, Esq.
Wilkerson, Hozubin & Burke
310 K Street, Suite 405
Anchorage, Alaska  99501

Gary A. Zipkin, Esq.
Guess & Rudd, P.C.
510 L Street, Suite 700
Anchorage, AK  99501


s/ Mark A. Sandberg