Mark A. Sandberg
SANDBERG, WUESTENFELD & COREY
701 W. 8th Ave., Suite 1100
Anchorage, Alaska  99501
(907) 276-6363

Attorneys for Defendant


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANIES, )<br>        )<br>        Plaintiff,     )<br>        )<br>    v.      )<br>        )<br>CHARLES HERRON,     )<br>        )<br>        Defendant.     )<br>        ) | Case No. 3:04-cv-0043 TMB |


**OPPOSITION TO ALLSTATE'S MOTION IN LIMINE NUMBER 2**


　　1. Introduction.

　　Allstate asks this Court to make a blanket ruling excluding "all evidence or arguments regarding allegations unrelated to Allstate's conduct in response to Angelina Trailov's April 10, 2003 demand."  The thrust of the Motion seems primarily (although not exclusively) to be an effort to exclude Allstate's

claims manuals and internal procedures from the evidence at trial. This Memorandum will discuss Allstate's claims handling duties under Alaska law and then demonstrate how claims manuals and other evidence are relevant to assessing Allstate's performance.

2. <u>Claims handling duties under Alaska Law</u>.

On October 19, 2006, this Court entered an Order pursuant to Rule 56(d) establishing as an undisputed fact that:

> "On or before May 16, 2003, Allstate possessed sufficient information that it could have determined that Herron was liable to Angelina Trailov and that Trailov's damages easily exceeded the policy limits of $100,000.00."[1]

The Court also said that the law is clear in Alaska that an insurer owes a duty to tender a policy limits offer as soon as the insurer recognizes that its insured is liable for plaintiff's injuries and that "the injured parties damages will easily exceed the limits of coverage."[2] But Allstate did not tender its policy limits before May 16, 2003, despite possessing sufficient information to understand that Trailov's damages easily exceeded policy limits. Instead, Kathy Berry wrote to Trailov's lawyer on May 16, 2003 and said:

"With respect to Angelina's claim, unfortunately our evaluation is not completed as expected.[3]"

---

[1] Docket Number 160, at pg. 19.
[2] Docket Number 160, at pg. 14.
[3] Joint Trial exhibit 28.

OPPOSITION TO ALLSTATE'S MOTION IN LIMINE NUMBER 2
*Allstate v. Herron*
Case No. A04-0043 CIV (TMB)

This trial will show the reasons Allstate's evaluation was not completed in a timely manner. Herron's position, as correctly characterized by this Court, is "that Allstate did not act diligently in investigating the damages in the eight months following the accident and, therefore, should have known prior to May 16, 2003 that the damages easily exceeded the policy limits."[4]

In *Continental Ins. Co. v. Bayless and Roberts, Inc.*, 608 P.2d 281, 293 (Alaska 1980), the Alaska Supreme Court described an insurer's duty of care in the following terms:

> "We reject Continental's argument and join those jurisdictions holding that an insurer, defending an action against the insured, is bound to exercise that degree of care which a man of ordinary prudence would exercise in the management of his own affairs, and if the insurer fails to meet that standard it is liable to the insured for the excess of the judgment over the policy limits, irrespective of fraud or bad faith. That is to say, an insurer undertaking a defense must exercise not only good faith, but also ordinary care and reasonable diligence and caution ….
>
> It has more than a duty of care of an ordinary man unskilled in litigation; it must exercise more than mere good faith. It is a professional which advertises by all media of mass communication its skill in the investigation, settlement, and litigation of liability cases. It asks the individual, who is an amateur in these matters but who would be deeply concerned over a case in which he is personally interested, to substitute its skill for his, its judgment for his judgment, and its conduct for his own acts. It then becomes chargeable with a greater duty even as the brain surgeon must exercise greater knowledge,

---

[4] Docket 160, at pg. 14.

OPPOSITION TO ALLSTATE'S MOTION IN LIMINE NUMBER 2
*Allstate v. Herron*
Case No. A04-0043 CIV (TMB)

> judgment, and skill in a brain operation than would a general practitioner of medicine. It is not an extraordinary degree of care but the care that is required under these particular circumstances. It must use skill diligently and adequately to investigate a case, it must use skill in negotiation, it must select skilled trial counsel not the lowest priced member of the bar and that individual, so selected by it, may bind the insurer by this derelictions. It is not a comfortable spot for a liability insurer to occupy, but it seeks the business on the basis of its skill. Even as an attorney, abstractor, accountant or physician may be liable if he fails to use the degree of skill in the handling of a professional matter that one is entitled to expect of one possessing like training and abilities, so must the insurer accept legal duties commensurate with its responsibilities."

Allstate's claims handling over the eight month span between September 2002 and May 2003 was sadly deficient. The actions that Allstate undertook (or failed to undertake) to investigate and evaluate Trailov's damages prior to May 16, 2003 are all relevant to assessing whether Allstate met the standard required by *Continental*.

3. <u>The general principal; relevance of industry practices and guidelines</u>.

The general rule is that a defendant's own practices and and procedures provide evidence of the standard of care but are not controlling. They may be received along with other evidence to determine whether the defendant met its duties. This was described in *Peal by Peal v. Smith*, 444 S.E. 2d 673, 678 (N.C. App. 1994) as follows:

> "Likewise, in *Klassette v. Mecklenburg County Area Mental Health Center,* 88 N.C.App. 495, 500, 364 S.E.2d 179, 183 (1988), the "defendant's own written policies and procedures" were found to be evidence of a standard of care. The *Klassette* Court held, "We recognize voluntary written policies and procedures do not themselves establish a *per se* standard of due care appropriate to these circumstances; however, they represent some evidence of a reasonably prudent standard of care."

This general rule has been applied in Alaska in a variety of contexts. For example *Wilson v. City of Kotzebue*, 627 P.2d 623, 629-630 (Alaska 1981) the Court held that violation of a "Contract Jail Manual" published by the State of Alaska provided evidence of negligence, but did not constitute negligence per se. The Alaska Supreme Court said the Trial Judge "committed no error in instructing the Jury that violation of these non-enforceable guidelines could be considered as evidence of negligence." *Id.*

Likewise, in *Swenson Trucking & Excavating, Inc. v. Truckweld Equipment Co.*, 604 P.2d 1113, 1118 (Alaska 1980) the Alaska Supreme Court cited *Prosser,* Law of Torts § 33 for the proposition that, "Evidence of industry practice is, of course, relevant but not determinative of due care."

4. <u>Specific application: relevance of claims and procedures manuals</u>.

Many cases have applied these general principals to determine that insurance claims and procedures manuals are

relevant in cases where bad faith or negligent insurance claims handling is alleged. A non-exhaustive list of authorities includes:

   a. In *Robertson v. Allstate Ins. Co.*, 1999 WL 179754(E.D.Pa.1999) the Court said:

> "This court has determined that information contained in the manuals is relevant because it contains instructions concerning procedures used by Allstate employees in handling UIM claims such as plaintiff's claim. Although the fact that Allstate employees departed from established standards in handling plaintiff's UIM claim would not alone establish bad faith, such information "is probative evidence for plaintiff to demonstrate bad faith."

   b. In *Cecena v. Allstate Ins. Co.*, 2006 WL 3898178 (N.D.Cal.2006) the Court said:

> "This court agrees that the CCPR documents are relevant or reasonably calculated to lead to the discovery of admissible evidence inasmuch as they may contain information that bears upon Allstate's claims adjusting practices or policies."

   c. In *Zappile v. Amex Assur. Co.*, 928 A.2d 251, 258 (Pa.Super., 2007), the Court said: "A trial court may consider the insurer's claims manual when considering bad faith."

   d. In *Miel v. State Farm Mutual Auto Ins. Co.*, 912 P.2d 1333, 1337 (Ariz. App. 1995), the Court said:

> "The trial court admitted into evidence two articles from State Farm's in-house newsletter, which discussed the handling of excess liability claims. The court also admitted a portion of State Farm's General Claims Manual which discussed the handling of such claims.

> State Farm argues that this evidence bore no relevance to the facts of this case, and that even if it did, such relevance was substantially outweighed by its prejudicial effect.
>
> The articles were relevant because they addressed the company's approved policies and procedures for handling such claims-policies and procedures which the claims representative admits she did not follow. The manual, like the articles, notes that the failure to keep an insured informed of settlement offers can constitute bad faith."

e. In *Bonenberger v. Nationwide Mutual Ins. Co.*, 791 A.2d 378, 382 (Pa. Super., 2002), the Court said:

> "We also find the court properly considered the contents of Nationwide's Pennsylvania Best Claims Practice Manual. The court found that the manual was in existence since 1993 and was used by Nationwide's employees as their primary guide in evaluating, valuing and negotiating claims."

f. In *Rhodes v. AIG Domestic Claims Inc.*, 2006 WL 307911 (Mass.Super.,2006), the Court said:

> "AIG contends that its claims manuals are not discoverable because they are not relevant. This is plainly wrong because the plaintiffs are entitled to investigate whether AIG and National Union complied with their own written policies in handling this claim in determining whether they acted in good faith."

g. In *Ohio Cas. Ins. Co. v. Firemen's Ins. Co. of Washington, D.C.,* 2008 WL 413849(E.D. N.C. 2008), the Court said:

> "Ohio Casualty first requests production of Defendant's claims manual. North Carolina courts have concluded that a claims manual is discoverable and relevant in cases involving allegations of bad faith

or unfair trade practices. *See Evans v. United Servs. Automobile Ass'n,* 541 S.E.2d 782, 792 (N.C.App.2001) (noting that an insurance carrier's procedure manual was relevant to determine whether the carrier complied with its own procedures in denying an insurance claim); *Vazquez v. Allstate Ins. Co.,* 529 S.E.2d 480, (2000) (affirming a judgment for unfair trade practices against an insurance carrier based, in part, on the carrier's failure to follow its own standards). Because Plaintiff has alleged claims of bad faith and unfair trade practices, which involve reviewing a carrier's own procedures for claims investigations, the court concludes that the claims manual is discoverable and relevant to the current action."

h. In *Ace v. Aetna Life Ins. Co.*, 40 F.Supp.2d 1125, 1130 (D.Alaska 1999) it is obvious that Aetna's claims manuals were admitted into evidence because the Court said:

> "Ace's lawyer asked Aetna for a copy of its policies or guidelines for reviewing claims. Aetna responded that there were no claim adjustment guidelines which Aetna followed. In fact, trial testimony confirmed that Aetna did have manuals establishing claim handling guidelines."

i. In *Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241,1245 (9th Cir. 1998), the Ninth Circuit discussed Aetna's claim manuals that had been admitted into evidence, saying:

> "Aetna's Proper Claim Handling Guidelines instruct claim analysts to "[c]onsider subjective complaints of the claimant as well as objective evidence" and give as an example "[a] disability claimant [who] genuinely appears to be in pain, although there are no objective medical findings."

j. In *Glenfed Development Corp. v. Superior Court*, 62 Cal.Rptr.2d 195, 197-198 (Cal.App. 1997), the Court said:

"Although the parties have not cited any California case specifically holding that an insurer's claims manual is discoverable (and we have found none), our courts have for years recognized that claims manuals are *admissible* in coverage dispute litigation. (See, e.g., **198 *Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 923, fn. 8, 148 Cal.Rptr. 389, 582 P.2d 980; *Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1082, 1099, 234 Cal.Rptr. 835; *Moore v. American United Life Ins. Co.* (1984) 150 Cal.App.3d 610, 620, fn. 3, 197 Cal.Rptr. 878.) If claims manuals are admissible, it follows (as the courts of other states with similar discovery statutes have held) that they are *discoverable*. (See *1118 *Blockbuster Entertainment v. McComb Video* (M.D.La.1992) 145 F.R.D. 402, 404-405; *Champion Intern. Corp. v. Liberty Mut. Ins. Co.* (S.D.N.Y.1989) 129 F.R.D. 63, 67; *APL Corp. v. Aetna Cas. & Sur. Co.* (D.Md.1980) 91 F.R.D. 10, 14-15; *Hoechst Celanese v. National Union* (Del.Super.1991) 623 A.2d 1099, 1107.)"

5. Hillman v. Nationwide distinguished.

The only case cited by Allstate is *Hillman v. Nationwide Mutual Fire Ins. Co.*, 855 p.2d 1321 (Alaska 1993). But *Hillman* does not establish a blanket rule excluding claims and procedures manuals from evidence. Rather, *Hillman* only says that the specific portions of the manuals being offered in that case were not relevant to the issue that was actually before the Court.

*Hillman* is a first party bad faith case. The question before the Court was whether it was unreasonable for Nationwide to rely upon a family member exclusion when denying an uninsured motorist claim.

OPPOSITION TO ALLSTATE'S MOTION IN LIMINE NUMBER 2
*Allstate v. Herron*
Case No. A04-0043 CIV (TMB)

In a first party bad faith case (unlike our third party bad faith case), an insurer cannot be liable if it has a reasonable basis for delaying or denying payment of benefits under the policy. *Hillman*, *supra.* at 1324. Since the Nationwide policy had an explicit exclusion, the Alaska Supreme Court held, as a matter of law, that there was a reasonable basis to deny the claim. *Hillman, supra.* at 1325-1326. The fact that Nationwide did not follow its own policies did not make it unreasonable for Nationwide to rely upon the explicit family member exclusion found in the policy. *Id.*

*Hillman* stands only for the proposition that not all portions of the claims manual are always relevant for determining all issues. Herron does not contend otherwise. But our case it quite different.

Herron intends to prove that there was unreasonable delay in Allstate's investigation of Trailov's damages, unreasonable delay in evaluating Trailov's claim, unreasonable delay in tendering the policy limits in settlement, unreasonable failure to advise Herron's lawyer concerning negotiations and deadlines and unreasonable refusal to accept the policy limits demand. Allstate's own claims and procedures manuals provide a yardstick for assessing the reasonableness of Allstate's conduct on each of those subjects.

OPPOSITION TO ALLSTATE'S MOTION IN LIMINE NUMBER 2
*Allstate v. Herron*
Case No. A04-0043 CIV (TMB)

6. <u>Relevance of home office referral process and demand logs</u>.

Allstate's Motion in Limine cites only two specific examples of claims procedures that it contends are irrelevant: The process for home office referrals and maintenance of a demand log. (Memorandum at pg. 6)

a. Allstate has a procedure requiring that serious claims be referred to the home office. It will be undisputed that Kathy Berry violated this procedure, despite being told by her supervisor to follow it. Allstate contends that is irrelevant because "home office authorization was not required in order to tender a policy limits offer." (Memorandum at pg. 6). Allstate's position is mistaken.

Craig Elkins (Ms. Berry's supervisor) designated the Trailov claim as a mandatory home office referral because of the allegation of brain damage.[5] The designation for referral was made pursuant to Allstate's claim manual.[6] The stated reason for referral was that "damages exceed office authority."[7] Elkins made that designation on March 3, 2003, months before the May 16, 2003 deadline.[8]

---

[5] Exhibit 1, Elkins Deposition at pg. 90.
[6] Exhibit 1, Elkins deposition at pg. 91.
[7] Exhibit 1, Elkins deposition at pg. 91.
[8] Exhibit 1, Elkins deposition at pg. 89.

OPPOSITION TO ALLSTATE'S MOTION IN LIMINE NUMBER 2
*Allstate v. Herron*
Case No. A04-0043 CIV (TMB)

Allstate's own claims manual states that mandatory referrals are made to the home office "for advice, direction and authorization."[9] If Allstate's own procedures had been followed, the Trailov claim would have been referred to the home office before March 17, 2003.[10] But, Berry did not follow the guidelines.[11]

As a result, no one who possessed authority to settle the Trailov claim ever saw it until the file was reviewed by Karen Peterson on May 29, 2003. When Ms. Peterson finally reviewed the file, she was able to conclude that the claim exceeded policy limits within a day or two.[12] Ms. Peterson testified that, if she had seen the information earlier, she could have come to the same conclusion earlier.[13]

If the home office referral procedures had been followed, the Trailov claim would have been reviewed and evaluated by a person possessing authority to settle the case, and power to direct that it be settled, well before May 16, 2003. The fact that Allstate violated its own guideline is certainly relevant to deciding whether there was unreasonable delay in evaluating the claim and tendering policy limits.

---

[9] Trial exhibit 152, pg 29 of 50.
[10] Exhibit 2, Berry deposition at pg. 51.
[11] Exhibit 2, Berry deposition at pg. 51.
[12] Exhibit 3, Peterson deposition at pg. 83-84.
[13] Exhibit 3, Peterson deposition at pg. 86.

OPPOSITION TO ALLSTATE'S MOTION IN LIMINE NUMBER 2
*Allstate v. Herron*
Case No. A04-0043 CIV (TMB)

b. When Allstate receives a demand from a plaintiff attorney, that demand is logged in. Part of Craig Elkins' job was to review the demand log periodically to know when demands were expiring.[14] Herron intends to prove that the May 16, 2003 deadline set forth in Michelle Power's letter of April 10, 2003[15] was never properly logged in. As a result, neither Kathy Berry's supervisor nor any of Berry's other superiors were aware that the deadline was expiring. The relevance of that fact to determining whether Allstate properly evaluated the Trailov claim in a timely manner seems obvious.

7. Conclusion.

This Memorandum only discusses two particular examples of Allstate's violations of its own policies and procedures because those are the only two discussed in Allstate's Memorandum. If there are others that Allstate contends are irrelevant, we can deal with that on an individualized basis at the trial.

The point for now is that there is no basis no issuing a broad prophylactic Order excluding evidence wholesale. Allstate's Motion in Limine Number 2 should be denied.

---

[14] Exhibit 1, Elkins deposition at pg. 30-32.
[15] Joint trial exhibit 31.

OPPOSITION TO ALLSTATE'S MOTION IN LIMINE NUMBER 2
*Allstate v. Herron*
Case No. A04-0043 CIV (TMB)

DATED this 25th day of April 2008, in Anchorage, Alaska.

        s/ Mark A. Sandberg_
        701 W 8th Avenue, Ste. 1100
        Anchorage, Alaska 99501
        Phone: (907) 276-6363
        Fax: (907) 276-3528
        E-Mail: msandberg@aol.com
        Alaska Bar No.: 7510084

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by ( ) mail ( ) fax ( ) hand this 25th day of April 2008 upon:

Mark Wilkerson, Esq.
Wilkerson, Hozubin & Burke
310 K Street, Suite 405
Anchorage, Alaska  99501

Gary A. Zipkin, Esq.
Guess & Rudd, P.C.
510 L Street, Suite 700
Anchorage, AK  99501


s/ Mark A. Sandberg_