**Supplemental Report of Robert N. Wainscott in the Matter of Allstate vs. Herron**

On June 1, 2006, I authored a report on the underlying case of Kenick and Trailov vs. Allstate and Kathy Berry. Subsequent to authoring that report I received a copy of a 14 page document which appears to have been produced in a case entitled <u>Hensel vs. Allstate, Case # 3AN-02-7154 Civil</u>. The pages are Bate stamped 116888 -116892, 116784 -116487, 116792, 116797-116800.

The following is a supplement to my report based upon these newly reviewed materials.

The items that make up the 14 pages of documentation produced by Allstate in the Hensel case are materials common to insurance carrier "procedure manuals"; the corporate modus operandi in the management of claim files.

The history of the underlying Kenick and Trailov case contains multiple examples of Allstate's failure to abide by the standards which are outlined in the materials. It is my opinion that the Herron litigation emanated from Allstate's failure to meet their own corporate standards for claims administration and supervision in the underlying case.

COVERAGE INVESTIGATION

Ms. Trailov's head injury placed this claim in a position to receive "high priority" when it was first reported. Bate stamped page 116888, at 2. <u>Coverage Investigation</u> outlines the urgency of Company notification to the insured with regard to potential coverage issues. The file handling protocol states "Reservation of Rights letters need to be sent at the first notice that there is a possible coverage issue."

Ms. Peterson, identified as Head Supervisor, reviewed the file and within 12 days of the accident gave instructions to send a Reservation of Rights letter to Mr. Herron. The notice was supposed to advise him that because the accident led to a DWI Mr. Herron may be liable for punitive damages which are not covered under his policy. Ms. Peterson also suggested an excess letter be sent. Ms. Peterson's comments on that initial review instruct the adjuster that there should be no additional investigation until after the Reservation of Rights letter had been sent to Mr. Herron. The file reflects that despite Ms. Peterson's instructions, the investigation continued and there were no action on her instructions to send a Reservation of Rights letter until six months after her review.

It is significant that Ms. Peterson neglected to include in her instructions that AS09.60.070 allows for assessment of actual attorneys fees because of the DWI charge and, as a matter of law; the fees would not be covered by the policy.

RESERVING

Bate stamped page 116890 outlines corporate guidelines for the setting of reserves. Reserves are required to be evaluated when specific benchmarks occur, including at the



Exhibit 1
Page 1 of 4

603624   1

time of opening, at 30 days pending, at the time of a transfer, within 7 days of receipt of new information, and at the time of FPL/FPE reviews.

Mr. Elkins initially established a base line reserve of $25,000. On November 14, 2002, the adjuster was advised to increase the reserve to $75,000. The adjuster's authority was limited to $20,000; Allstate's procedure required reporting evaluation and documentation with the increased reserve instruction which is not reflected in the claim materials.

EVALUATION

Bate stamped page 116891 at 6 requires that demands by represented claimants be logged in and evaluated. There is no indication that Ms. Berry followed Allstate's procedure with regard to the 2/14/03 demand for policy limits.

NEGOTIATION

Bate stamped page 116891 requires that negotiations always be commenced within the demand time frame. Ms. Power's second demand for policy limits which was dated April 10, 2003, expired on 5/16/2003. Ms. Berry did not meet the demand time frame, nor did she request or receive an extension of time for the demand.

Ms. Berry missed an opportunity to evaluate the demand by her failure to attend an examination of Ms. Trailov by Dr. Craig, a neuropsychologist, on 12/17/2002. She failed to assign an expert to attend the evaluation. She failed to order an IME to assist her in her evaluation of the claim.

Failing to evaluate the claim, she was unable to comply with the corporate procedures for claim negotiation and settlement outlined at 3 on Bate stamped page 116891.

GOOD FAILTH CLAIMS HANDLING

Bate stamped page 116891 and 116892 outline corporate guidelines for Good Faith Claims Handling. These include:

-Respond promptly and in writing to plaintiff attorney on:
  * Time limit demands
  * Excess demands
  * Policy limit demands
-Advise or copy insured promptly and in writing on:
  * Time limit demand responses
  * Policy limit demands /settlement offers
  * Excess demand/offers
  * Limits offered and attorney wishes to pursue insured for excess
 - Alert Conference Required:
  * Time limit demands
  *Closed head injury with allegations of cognitive loss.



Exhibit 1
Page 2 of 4

Exh__ /35
Page 2 of 4

603625  2

Ms. Berry and the Allstate claims staff routinely breached their stated obligations of good faith to Mr. Herron by violating all of the above standards set by the Allstate Corporation.

On February 18, 2003 Ms. Berry received a policy limits demand which was dated February 14, 2003. The demand was not reported to Home Office; it was not promptly reported to the insured or his attorney. It was not until a month later, March 18, 2003, that Mr. Berry finally advised Mr. Herron of the policy limits demand. That letter was also Mr. Herron's first notice that punitive damages were not covered under the terms of the policy.

Mr. Herron's attorney, Mr. Valcarce, responded with a letter on March 26, 2003, demanding that Ms. Berry settle the case for the policy limits or agree to pay any adverse verdicts in excess of the policy limits. When Ms. Berry received this letter she did nothing. She didn't answer Mr. Valcarce's letter, she didn't attempt to settle the claim and she didn't report the matter to her Home Office.

When plaintiff attorney Power received no response to her February 14, 2003, letter, she sent another letter to Ms. Berry on April 10, 2003. The letter extended the policy limits demand until May 16, 2003. Again Ms. Berry did nothing. She did not send the offer to Home Office, she did not accept the policy limits settlement demand, she did not update the log system to reflect that the demand was now time sensitive, and she did not send a copy of the letter to Mr. Herron or his attorney, Mr. Valcarce.

Ms. Berry ignored specific instructions from Mr. Elkins to send the file to Home Office in March of 2003. It was not until May 6, 2003, when Mr. Elkins discovered that Ms. Berry had not followed his instructions, that the file was finally sent to Home Office.

On May 9, 2003, Ms. Berry directed a letter to Ms. Power stating that she expected to be able to "respond before the May 16 deadline". On May 16, 2003, she increased the reserve from $75,000 to $112,500. She did not settle the claim by the deadline. She did not request that Ms. Power extend the deadline, she did not advise Mr. Valcarce of the time limit demand, and she did not complete an evaluation form to document the file.

When Home Office finally received the file on May 20, 2003, they were unable to respond because Ms. Berry had not "evaluated" the claim. Ms. Peterson reviewed the file on May 29, 2003. At that time she evaluated the claim as having a BI value of $100,000 with an additional probable UIM value of $100,000. (Both limits would be subject to Rule 82 add ons.) Allstate received no new information between May 16, 2003 and May 29, 2003, which would impact their ability to evaluate the claim of Ms. Trailov.

SUMMARY

Allstate's failure to follow their corporate guidelines in the evaluation, negotiation and settlement of claims, correspondence with counsel, and notification of the insured with regard to settlement demands, punitive damages, and excess issues is rampant throughout

Exhibit 1
Page 3 of 4

Exhibit 135
Page 3 of 4

603626    3

the claim file. As a direct result of this blatant disregard for good faith claims handling, it became necessary for Mr. Herron to hire Mr. Varcarce to protect his interests.

Robert N. Wainscott

This document does not replace or substitute for my original report or sworn affidavit, but is a supplement to those documents. I reserve the right to revise or supplement those opinions if additional information is made available for my review.

Exhibit 1
Page 4 of 4

Exhibit 135
Page 4 of 4

603627    4