Northwest CSA
File Handling Protocols
October 2002

RECEIVED
SANDBERG,
WUESTENFELD & COREY

OCT 2 3 2007

ATTY_____ L. ASST _____
APPROVED FILE _____

1.    Review the file
- Review the documentation in the LRS diary from the Agent and Claim Service Center
- Determine and document the Liability Issues under the analysis on CDS 04 screen or Claim Handling Analysis on CP

2.    Coverage Investigation
- Opened within 24 hours of the time that the CMR is established or on the date of notice of injury or damage
- Coverage Questions should be addressed at First Notice, and the investigation should be completed within 7 days and should include:
  - ❖ Insured/Driver Statements
  - ❖ Review of Client File
  - ❖ R/S of agent if necessary
  - ❖ Request for PORS
  - ❖ Reservation of Rights if appropriate
- Possible Coverage issues:
  - ❖ Permissive Use
  - ❖ Excluded Drivers
  - ❖ Vehicle is not an Insured Vehicle
- Reservation of Rights letters need to be sent on the first notice that there is a possible coverage issue
- Disclaimer – once the coverage investigation is completed, if it is determined that there is no coverage for this loss, then the FPL must review the disclaimer letter and MCM must approve, and sent certified Mail
- Coverage should be documented in CDS 02, and should include:
  - ❖ Verification of VIN
  - ❖ Identification of driver
  - ❖ Permissive Use
  - ❖ Additional layers of coverage
  - ❖ UM should be ruled out within 7 days

3.    Liability Investigation
- Must be completed in a timely manner and no longer than 30 days, and should include
  - ❖ Liability matrix items or appropriate waivers
  - ❖ Liability analysis must be documented on the Claim Handling Analysis on Claim Portfolio, and if more space is needed CDS 03/01 statement type "other" "Liability Analysis"
  - ❖ Subro should be addressed if appropriate
  - ❖ Comp Neg Tool should be used if appropriate
- % of negligence must appear on CDS 04 Screen 3 and on LRS Screen 28
- When a file is transferred the new file handler must address liability again, if they agree, then simply indicate on CDS 04 if space is available that you agree, if they do not

*must do res of rights or non-waiver prior to R/S if cov/issue known*

Exhibit 7
Page 1 of 14

PRODUCED PURSUANT TO PROTECTIVE ORDER IN CASE 3:04-CV-00043 ALLSTATE 7154 Civil
CONFIDENTIAL

116888

they need to indicate what are the additional Liability Issues and then investigation and upon completion document the final decision.

4.  Promptness in Handling
    Every injured unrepresented claimant should be contacted within 3 days from the date of loss.

    Initial Contact
    - Facts of loss- covering speed and distance, follow statement guidelines on all RS's and/or Interviews
    - Cover all Liability Issues- Rule out or Prove them and document that in the summaries of the statements
    - Gather Injury information –
        - Present Complaints
        - Present treating doctors/providers
        - Explanation of the type of treatments
        - Past History of Injuries
        - Past treatments and providers
        - Diagnosis
        - Prognosis
        - Loss Wage/Employment/Occupation
    - Cover 9 Steps/Confirm the Claim Process
    - Face to Face (if required and/or at the claimant's request)
    - Medical/Wage Authorizations * MAWA *
    - Property Damage Information- Set up Assignments when warranted
    - Discuss Settlement Options
    - Schedule Follow Up

    Properly split assignments to unrepresented processors

    Subsequent Contact
    - Requirements per Type
        - Type I= 1st follow up within 5-7days, 2nd and subsequent follow ups every 30 days, or unless the claim warrants them sooner
        - Type II= 1st follow up within 5-7 days, 2nd and subsequent follow ups every 30 days, or unless the claim warrants them sooner
        - Type III= 1st follow up within 5-7 days, 2nd within 14 days, 3rd within 21 days and subsequent every 7 days thereafter unless a walk away is warranted
    - Content
        - Injury Information
            - Update Treatment Information
                - Who are they treating with?
                - What type of treatment are they getting?
                - What is the expected duration of the TX?
                - What is the expected prognosis?
                - When do they expect to be released?
                - What specials have they incurred to date?
            - Update Loss Wage Claim
                - Have they missed any time from work?
                - Was the missed time due to doctor's orders?

PRODUCED PURSUANT TO AND SUBJECT TO A PROTECTIVE ORDER IN JENSEN v. ALLSTATE CIVIL NO. 3AN-02-7154 Civil

Exhibit 7
Page 2 of 14

116889

        ➢  What kind of work do they do?
- Inquire about Medical/Wage Authorization (if not received)
- Discuss Settlement Options
- Schedule Follow Up

4. <u>Reserving</u>
- Reserves should be established to reflect the ultimate value of the injury at the time of opening, and should be adjusted accordingly to the activities on the file.
  - ❖ Reserve reviews
    - ➢ Pending at 30 days
    - ➢ At time of Transfer
    - ➢ Within 7 days of receipt of new information
    - ➢ At the time of FPL/FPE reviews
- Documentation is needed to support the reserve and the adjusting of the reserves on CDS 03 per the ID of the item claimant, under the title of "other: Reserve Analysis"

5. <u>Damage Investigation - Medical/Wage Investigation</u>
- Follow the Damage Matrix
- MAWA should be requested within 30 days if the file does not CWP. Follow up should be every 7 days until received.
- Medical Records should be requested within 5 days of receipt of the MAWA
- ISO search within 30 days and at 180 day intervals (Index Bureau)

General- it is the responsibility of the adjuster to verify that the claimant sustained an injury, was actually disabled (if alleged) and the resulting special damages (medical, wage loss, etc.) were appropriate. It is recognized that complete verification is not possible in all cases. However, the per-claimant verification standards set forth below for each of the following categories of claims are required. (CPP Manual)

- **Colossus or C1098-total special damages $1500 or Less-** if total incurred expenses (other than ambulance and emergency room charges if incurred within 24 hours after the accident) are $1,500 or less and treatment does not extend beyond 90 days from the date of loss, then a reasonable attempt to verify such expenses is required. If bills, wage statements, medical reports, etc. (including billings for any ambulance and emergency room charges) are available on such claims, an effort should be made to obtain them.

        **-total special damages more than $1,500-** if total special damages (other than ambulance and emergency room charges incurred within 24 hours after the accident) exceed $1,500 complete **written verification**, i.e., copies of bills, wage statements, medical reports, etc., is required.

**Special Damages Projected-** Future medical expenses and income loss may be projected in addition to the incurred and verified special damages. Such projections are to be based on the medical investigation, the general nature of the injury, its normal disability period and treatment course, and the realistic cost of such treatment.

- **Open-End Medical Release-** when offering to settle a claim, the claimant may be offered an open-end medical release of up to $2,500.00 in reasonable and necessary medical treatment related to the loss. All treatment must take place within one year of settlement. Written verification will be required (i.e. copies of medical bills, medical records).

Exhibit 7

Page 3 of 14

PRODUCED PURSUANT TO CONFIDENTIAL PROTECTIVE ORDER

116890

**Fast Track Settlements**- Up to 30 days the claim rep should make reasonable attempt to verify specials. 31 to 60 days phone verification is required and 61-90 days written verification and MBRS must be completed.

6. Evaluation
   - Unrepresented
     - ❖ Adjuster should discuss settlement at each suspense, to determine the possibility of settlement.
     - ❖ Adjuster should determine the injury status – prognosis, permanency to determine the method of evaluation
     - ❖ If at the first call with the claimant, liability has been determine and the claimant is at the point to discuss settlement then "FIRST CALL SETTLEMENT" should be attempted
     - ❖ If during the follow up conversations the claimant's injury meets the criteria for "FAST TRACK SETTLEMENTS" then it should be attempt when warranted
     - ❖ If at the point the claimant has completed their treatment and ready to discuss settlement the adjuster should be in a place to complete the appropriate evaluation tool.
       - The majority of the medicals should already be in the file, through attempts to secure the MAWA and follow up on the records.
       - When the Processors return a completed damage package the file should be evaluated within 2 weeks of the return date.
   - Represented
     - ❖ Demands must be logged, date stamped and postmarked envelope attached
     - ❖ Evaluation must be to the EC within 2 weeks of completed packages returned from the processors

7. Negotiation
   - Negotiation plans must be completed at the time of submission to the EC. The plans should be completed on CDS OS and should cover all issues pertaining to liability, damages, the injury, the treatment, the diagnosis, the prognosis and any other matter.
   - Negotiations should commence within 10 days of the completed evaluation, and always within the demand timeframe.
   - Subsequent follow up negotiations should occur at 21-30 day intervals until the claim is concluded or if the file dictates due to additional information or suit results
   - Structured Claim Settlements should be considered on all appropriate cases and CDS documentation should reflect the discussion

8. Suit Handling
   - Suits must be logged
   - Litigation communication protocols must be followed
   - 120 day trial alerts/conferences
   - 60 day Arbitration alerts/conference
   - other alerts/conferences on a case by case basis

9. Good Faith Claim Handling
   Summary of Requirements (refer to Home Office communication of February 19, 2001 for full details) also, any state specific requirements.
   - Respond promptly and in writing to plaintiff attorney on:

PRODUCED IN CONFIDENTIAL PURSUANT TO PLAINTIFF V. ALLSTATE PROTECTIVE ORDER 3:04-CV-00043-TMB

Exhibit 7
Page 4 of 14

116891

- ❖ Time Limit Demands
- ❖ Excess Demands
- ❖ Policy Limit Demand
- Advise or copy insured promptly and in writing on:
  - ❖ Time Limit Demands responses
  - ❖ Policy Limit Demands/Settlement offers
  - ❖ Excess Demands/Offers
  - ❖ Limits offered and attorney wishes to pursue insured for excess
  - ❖ Lawsuits received directly from plaintiff counsel
- Alert Conference Required:
  - ❖ Time Limit Demands
  - ❖ Serious Injury Triggers identified
    - ➢ Death
    - ➢ Objective injury/minimal limits
    - ➢ Surgery
    - ➢ Fracture with open reduction or internal/external fixation
    - ➢ Closed head injury with allegation of cognitive loss
    - ➢ Fracture with complications (i.e. non-union, leg shortening, necrosis)
    - ➢ Paralysis
    - ➢ Amputation
    - ➢ Back injury with alleged need for laminectomy or fusion
    - ➢ Allegation of serious scarring/disfigurement
    - ➢ Hospitalization with stay in ICU

10. Management Oversight

File Reviews:

| | | |
|---|---|---|
| ➢ FPL 1st & 3rd Party | 5 per Adjuster and 5 per Processor per Quarter |
| ➢ FPE 1st & 3rd Party | 3 Re-Reviews per FPL per Quarter |
| | 5 EC Reviews per EC per Quarter |
| ➢ CPS | 3 Re-Reviews per FPE per Quarter |
| | 5 EC Reviews per EC per Quarter |
| ➢ Additional reviews necessary for performance issues or skill issues based on the needs of the employee, the unit or the leader. | |

Coaching/Sit Along:

| | |
|---|---|
| ➢ FPL 1st & 3rd Party | 1 per Adjuster and Processor per Quarter |
| ➢ FPE 1st & 3rd Party | 2 per FPL and EC per Year |
| ➢ CPS | 1 per FPE per year, FPL & EC as needed |
| Additional Coaching Sessions and Sit Alongs based on the needs of the employees, the unit or the leader. | |

STATEMENT OF CONFIDENTIALITY
This material has been compiled exclusively for internal use and is not for distribution outside Allstate Insurance Company. It contains trade secrets and confidential information, which are proprietary to Allstate Insurance Company. The use, reproduction, transmission or disclosure of this material, in whole or part, without the express written permission of Allstate is prohibited.

STATEMENT OF COMPLIANCE
All of our processes must comply with state laws, regulations and court decisions. To the extent that these procedures, processes, forms, scripts or other material conflict with state laws, state law will take precedence. The material in this manual must be modified or revised to conform to the applicable state law when implementing Allstate practices and procedures.

Exhibit 7
Page 5 of 14

116892

# REPRESENTED FILE ANALYSIS

- **Indicative Information** - Is completed as part of the pre-work. This includes claim number, item/claimant (one per file), desk location, loss date, notice date, and date of attorney representation.

- **Coverage Investigation**
  - ⇒ *Coverage Investigation Completed* - Coverage has been identified, investigated, and documented to support the coverage decision.
  - ⇒ Documentation (CDS: Screen 2) - "Coverage Proper" should be marked "Y" or "N" and policy information for other policies covering the insured or other involved parties should be captured.
    - * **"Any Additional Insurance Sources"** should be completed any time there is additional insurance that specifically applies to the loss being investigated as applicable coverage. Therefore, there is no requirement to enter the claimants insurance information unless there is evidence that it could apply to the loss and should at least be considered in negotiating the settlement.

- **Liability Investigation** - Any investigation that is recommended on the matrix must be completed unless the Claim Rep documents why it wasn't needed. If investigation is required on the matrix, an FPL must sign off for a waiver of these requirements. Reasons must be documented for either a Claim Rep or FPL waiver.
  - ⇒ Insured/Claimant/Witness Statements - The Claim rep must interview all involved parties. If facts are indispute or liability is questionable, statements should be attempted. If a statement is required or recommended, it must be secured or the appropriate waiver (with reason) documented even if an interview is obtained.
    - * *R/S, Int. - Indicate the investigation actually conducted by the adjuster. The purpose of this field is to track how often statements are taken compared to interviews.*
    - * *W. AD - Determine whether the liability matrix requires an interview or statement. If the required investigation was waived, place a mark in the W field. If the required investigation is missing, and not waived, the overall statement category should be marked as NO.*
    - *O (Quality) - A mark in this field indicates the recorded statement, interview, or waiver has significant quality opportunities. If Quality is marked, the overall statement category should be marked as NO.*
  - ⇒ Police Report - Police report must be secured or properly waived as long as a report was completed.
  - ⇒ Insured/Claimant Vehicle Photos - Must include photos of damaged areas and license plate.
  - ⇒ PD Estimates - If not inspected by Allstate, estimates should be obtained from claimant carrier.
  - ⇒ Scene Photos - Should be completed or properly waived per Matrix.
  - ⇒ *Timeliness of Liability Investigation - The investigation should be completed within 30 days of the date of notice (state law supercedes this requirement) unless the reason is documented.*

Exhibit 7
Page 6 of 14

116784

# REPRESENTED FILE ANALYSIS (Continued)

⇒ <u>Prior Loss History</u> - Customer service screens should be checked for prior losses.  If same vehicles were involved, check for damaged areas.

⇒ *<u>Identification / Application of Comparative Negligence</u> - All issues should be identified and the appropriate defenses documented.  The negligence assessment should reflect the investigation.*

⇒ <u>Liability Documentation</u> (CDS:  Screen 4, all three pages) - All information relevant to determining liability should be captured on these screens.  Liability completed, date completed, liability analysis, liability percentages, etc. should all be completed if the liability investigation is completed.

    * **Photo Date**- This field must be completed because it drags the "Photo Date" forward from CDS 04 to the third CDS 06 screen along with the estimate amount.  There is added value in being able to determine the date the photos were secured.  In many cases, this date is the only evidence we have of when the photo was actually taken.  If we have no photos of the vehicle, the date should be blank.

⇒ <u>SIU Scorecard</u> (CDS:  Screen 12) - Scorecard should be updated and scored properly as information is developed.

■ **Damage Investigation**

⇒ <u>Index Bureau</u> – Basic IIB information for the injured person must be contained in the HUB (e.g. correct name, DOB or Social Security number, and the type of injury with the specific body part) to increase the chance of an IIB "hit".  If a "hit" occurs, claimant carrier contact should be made on all prior losses to determine nature of injury, treating doctors, plaintiff attorney, period under care and status of claim.  (In most jurisdictions, this will require a signed authorization.)

⇒ <u>Claimant Carrier Contact</u> - Policy information (including PIP/Med Pay information), treatment information, and prior loss history should be secured (if allowed by statute). *Effective 1/1/99, this category is optional for tort states and required for threshold states.*

⇒ <u>Medical and Wage Authorization Requested</u> – **Aggressive attempt, including reasonable follow-up, should be made to secure authorizations from plaintiff attorney.** *Effective 1/1/99, medical-wage authorizations are optional in threshold states for subjective injuries, and required for all other injuries and impacts for both tort and threshold states.*

⇒ <u>Medical and Wage Verification</u> - Sufficient records should be secured to support or refute the injuries and treatment being alleged.

⇒ <u>MBRS</u> - Must be used on all claims where there are out-of-pocket medical expenses.  All overrides must be supported by documentation.

⇒ *<u>Timeliness of Damage Investigation</u> - Processor/File Manager follow-ups should be completed in intervals of not more than 45 days unless supported by documentation.*

⇒ <u>Damages Documentation</u> (CDS:  Screen 6) - All relevant information regarding the nature of the injury, specials, diagnostics, analysis, etc. should be captured on these screens.  Once investigation is completed, special damages should be marked YES.

    * **IIB -Analysis - Date -**
      *Effective 7/17/98, the requirement that a date be entered in this field is suspended.* The IIB Analysis of any "hit" should be documented on CDS 06 "comments" section. CDS 03 should be used for any documentation that will not fit due to lack of space.

PRODUCED CONFIDENTIAL PROTECTION UNITED STATES v. Civil

**Exhibit** 7
**Page** 7 of 14

**116785**

# REPRESENTED FILE ANALYSIS (Continued)

* **Clmt Carrier Contact - Date** -
  *Effective 1/1/99, Claimant Carrier contact is optional for tort states and required for threshold states. The requirement that a date be entered in the Clmt Carrier Contact field is suspended effective 7/17/98.* Any information secured from the claimant carrier should be documented on CDS 02 under "Any additional Insurance Sources". CDS 03 should be used to document any additional information pertinent to the file that will not fit under the analysis section of this screen due to lack of space.

⇒ **Suspense Follow-up (screen 16)** -All pending follow-ups should be viewed on screen 16, and all completed follow-ups will be viewable by answering "Y" to the prompt in the lower right corner of the screen. The observer must spot-check follow-up entries by comparing them to CDS: 03. The spot-check should confirm that the file handler utilizes the mechanized follow-up system.

■ **Evaluation**

⇒ Timeliness of Evaluation - Evaluation should be completed within 30 days (or sooner, if required by statute) from receipt of demand package unless documented why not and attempts were made to resolve outstanding issues.

⇒ Colossus Input Proper - All screens should reflect information in the file unless reasons are documented in Comments.

⇒ Re-evaluation Proper - Re-evaluation should be supported by new information that impacts the value of the claim.

⇒ EC Range Proper - EC low should be no less than 85% of the EC high.

⇒ Evaluation  (screen 9) - Claim Rep's and EC's evaluation range should be input. EC's comments should also be captured (PF8).

■ **Negotiation**

⇒ First Offer Within EC Range - The first offer should be within the EC range unless documented why not.

⇒ Negotiation Plan Complete - Negotiation plan should be fully developed and reflect information developed in the file.

⇒ Negotiation Plan (CDS: Screen 8) - Arguments for "Ours, Theirs, and Counters" should be captured on CDS Screen 8.

⇒ Negotiation Sessions (CDS: screen 8) (PF5) - A summary of all negotiations should be captured here.

■ **Litigation**

⇒ *DOLF* - Indicate YES where DOLF segmentation is proper, NO where the file qualifies as DOLF but not segmented as DOLF, and N/A for non-DOLF files properly segmented.

* *Last Offer* - This offer should equal the Evaluated amount, and should be made/restated within 90 days prior to the assignment to DOLF. The claim adjuster is the one to make the last offer.

* *Value Driver* - Defense counsel must contact the gatekeeper with value-driving information.

* *Re-evaluation as a result of call* - Indicate whether there was a post-DOLF re-evaluation following a call from the defense attorney.

* *Re-evaluation Proper* - Indicate whether the re-evaluation was proper.

PRODUCED PURSUANT TO CONFIDENTIALITY AGREEMENT - NOT TO BE USED OR DISSEMINATED EXCEPT AS PERMITTED 3AIG 002757



Exhibit 7
Page 8 of 14

116786

# REPRESENTED FILE ANALYSIS (Continued)

      *   *Has defense counsel sent non-value driving correspondence to adjuster after assignment to DOLF? - Indicate YES if there is indication that defense counsel sent correspondence to the claim adjuster of a non-value driving nature.*

⇒   <u>Litigation Plan (CDS: Screen 13)</u> - Suit filed date, attorney assigned, case segment (defend liability, settle for x or less, etc.), litigation plan, etc. should be completed.

⇒   <u>Suit Disposition (CDS: Screen 14)</u>- Suit closure date and disposition code should be input.

■   **Subrogation**

⇒   *<u>Potential Identified</u> - Where there is subro potential, subro indicator should be marked "Y" and CDS should contain the insured driver's version of the loss. Third party carrier information, and percentages of negligence must be documented on LRS Screen 28.*

CONFIDENTIAL

PRODUCED PURSUANT TO PROTECTIVE ORDER

HENSEL v. ALLSTATE

CASE NO. 3AN-02-7154 Civil

Exhibit 7
Page 9 of 14

# REPRESENTED PROCESSOR ANALYSIS

■ **Initial File Handling**

⇒ <u>24 Hour Contact Made</u> – Contact with attorney within 24 hours of receipt must include: **1)** name of claimant carrier or social security number, **2)** emergency room treatment, **3)** nature of injury, 4) treating doctor information, and **5)** wage loss information.

- <u>Name of Claimant Carrier/Social Security Number Obtained</u> – The claimant carrier's name and policy information or claimant social security number must be obtained.
- <u>Nature of Injury Determined</u> – Secure diagnosis and body parts injured.
- <u>Determined Whether Wage Loss Is Being Presented</u> – Even if no wage loss claim is being presented, need employer's company name.
- <u>Treating Doctors Identified</u> – Need to secure names and addresses/phone numbers of **all** treating doctors.

⇒ <u>Claimant Profile Completed</u> – All items on sheet should be completed.

⇒ <u>CDS: Screen 20 Properly Completed</u> – Processor should input receipt date which should be the same date shown on assignment checklist (next day is acceptable if transferred after noon).

*Update CDS as information rec'd*

■ **Suspense/Follow-up**

⇒ <u>45 day Contact Completed</u> – Was follow-up with attorney completed within 45 days of assignment to Processor?

⇒ <u>90 day Contact Completed</u> – Was second follow-up contact with attorney completed within 90 days of assignment to Processor?

⇒ <u>MA/WA Requested</u> – Was the MA/WA requested? Was the request or denial documented?

⇒ <u>Medical Care Provider Contact Attempted</u> – If medical authorization was secured, did the Processor attempt to make contact with **all** treating doctors *by sending the MA/WA with a request for information?*

⇒ <u>Wage Loss Verification Attempted</u> – If wage authorization was secured did Processor attempt to contact employer to verify any alleged wage loss *by sending the MA/WA with a request for information?*

■ **File Manager Review**

⇒ <u>Assignment Checklist Completed</u> – Did Claim Rep circle Liability and Damage Matrix items to be completed?

⇒ <u>60 day Review Completed</u> – Did the Claim Rep complete a 60 day review of the file from the date of assignment to Processor?

PRODUCED PURSUANT TO PROTECTIVE ORDER — COUNSEL'S EYES ONLY — 3AI-045 IS A COPY

Exhibit 7
Page 10 of 14

**ANCHORAGE MCO**
CPS VISIT
December 11-13

**Filenet Training**
Completed training with Beth, Tina, and Karen
Pending Issue: System problem with Beth's computer
Advised Rick Blonden who has forwarded back to Kevin Dougherty – Canvas
Kevin and Karen Petersen corresponding now to resolve the problem

**Legal Path**
Technology Based Method of Assigning Files to Retained Counsel through Staff Counsel
Process applies to Casualty, Med Pay, SIU, Property
Attorney Panel Selected by County based on Competitive Pricing
Updated Pricing Changes Reviewed by CPS, FPE with Recommendations to HO
Non Qualifiers of LP: HO Referrals, SIU cases involving fraud rings, Dec Actions, Large
Loss Exposures
Waiting for Confirmed 2002 Schedule
PRE WORK: Review, Update and "Clean Up" Lit Mgt lists, C242 lists, and Make sure
Process in place to Update CDS #13, Attorney information once suit has been assigned

**Effective Negotiations**
This Process in Place and Occurs Weekly
A Great Way of Training and Calibrating, Especially with and for Beth
Also had a Discussion on DOLF – Lori is the "Owner" on this one. Assist with
Identifying and Follow Up to Make Sure file is Dolf'd When Appropriate
Keep The FOCUS on Working the Normal Pending – Not the Big and Ugly

**UM/UIM File Review Requirements**
Reviewed C178 and spotcheck 57 Lists to identify claim numbers for review
Overall, nice job in documentation of CDS 2/01 Coverage Screen and addressing
Other policies in the household and Resident Issues
FPE can incorporate this review with the Compliance Reviews

**Fastrack Reviews and Coaching with FPE/FPL**
Once Reviews Completed, Need to Coach with the Reps
Overall Settlement Ranges/Severity of Impact Selected were Fine
All Reviews Included Pre Judgement Interest and Signed Off by FPL
Need to make sure Claim Rep Name and Date on the Form
Improvement Needed in CDS #6 and Addressing Clmt RS – Recommended Item
FPE was in majority of the Files Reviewed – All of the Insd RS' were addressed
Need to make sure Facts Clear/Unclear Addressed in CDS #4

**Pre-Judgement Interest**
Log is Maintained for the UM – Pre Judgement Interest Issue
BI Interest is split code to Trans Rsn 55
Spotcheck of Log for Validation Completed
Teleconference with Eva is scheduled to discuss the Interest
Being IRS Reportable – How Do We Report?

Exhibit 7
Page 11 of 14

PRODUCED CONFIDENTIALLY PURSUANT TO A PROTECTIVE ORDER STATE FARM 54 C1

116797

**EC Sit Along**
Lori Currently Has Pending of 12 Coverage Files, 6 Consults Pending
Discussed Reps that are Challenging: Tina – value, Marguerite – low volume
More Coaching Sheets completed than in the Past
Important to get the "buy in" from the Reps when Coaching
Working and Reviewing C178 lists/non seg issues and proper reserving to the EA
Production about 2.6 per day
Participating in Pre Trial Teleconferences
Advised Lori of the NO EA Reports from Staff Counsel to be Proactive – she
Will Request this directly from Staff Counsel

**CPL Redesign**
Discussed what the Redesign is – Specialization is Required
Similar Process to Auto CCPR with Initial Contact Guidelines
All Documentation in PWS so Proper Access Is Needed
Application Involved in the Training
Whole Section on the Evaluation/Calibration of Scoring
Theories of Defense on Liability Addressed – Licensee, Trespasser, Guest

**CPL Scorecard**
Discussed and Calibrated on What Should Be Transferred to SIU
Confirmed The Proper SIU Scorecard Being Utilized

**FTO Process**
Reviewed Current Process – Seems OK, no changes made

**FPE Discussion**
FPL to Continue to Collect the Fastrack Sheets
FPE to Spotcheck and Coach on the findings (Coaching can include discussing with Rep
Directly to remove duplicate review by the FPL)
MCO Oversight is the area of Compliance and UM/UIM Documenting Requirements
Make Sure Pre Work for Legal Path in HI and AK get started – CDS Clean Up of Lit Mgt
Lists and Updating CDS #13 Screen with Proper Atty Information
MCM wants Support by Completing Profiles, Put on Calendar

**Misc. Discussions**
UM/UIM Handling
In November, Staffing Change with Tina and Beth. Beth now Handling UM/UIM Files
And Tina handling BI Files – Mostly Retained Counsel to better Manage Legal
Bills/Activity in the file – Auditing of Bills
Tina Requested Transfer of Assignment and Beth was Being Trained as Back Up since
Tina Could Not Handle those Cases where She is Named as a Defendant

Beth Maternity Leave in February – 8 Weeks
Developing Back Up Plan….

Can Utilize EC/Lori More…..either as Claim Rep or FPL/Development (assist with
spotchecking 57 lists, disposition, give direction to drive disposition/results)
Her Workload Should be Very Managable

PROTECTIVE ORDER CONFIDENTIAL NOT TO BE DISSEMINATED CAN v. ALLSTATE CIVIL N-02-715-Civil

Exhibit 7
Page 12 of 14

116798

Karen Petersen                          Anchorage MCO                    December 11, 200

November 2001   -  Changes to Rep Unit ①

Beth is handling  Rep UM/UIM - Arbitration ④          Pending
                                                      75-80 Files (w/ processor
Tina is Lit Mgt Retained Counsel - BI    ⑧           75 Files      pending)
                                  CPL

                    Rep
Kathy - Deerbrook, Rep Coverage, - BI              125
                                   CPL

Don - Rep BI, CPL                                  125

  - Specialization w/CPL → 1 Rep and
                      Can have             together

             Maternity Leave
Beth -  Mid February about 8 weeks

Legal Path Discussion :
        What is it
        How Works
        Pre Work
        Staff Counsel Involvement
Janet Training Completed

UM/UIM File Review Requirements - Centralized UM File Handling ✓

Brenda - UM/rep
Beth - Rep

          Home Office Referral/Pending Issues :
 : Judgement Interest / IRS Reportable
 Rule 82 Policy Limits in the Unrep Cases  -

Track Review Sheets
DET Issues → To Bill Vanderborg

CONFIDENTIAL
PRODUCED PURSUANT TO PROTECTIVE ORDER
HENSEL v. ALLSTATE
CASE NO. 3AN-02-7154 Civil

Exhibit  7
Page 13 of 14

116799

IM/VIM Staffing - 1st Brought Up when discussing the need of
Filenet Discussion - Beth was in training for VM Handling
Business Meeting - VM Issues were stabilizing
(October)        FTD Issues were slowing
                 Beth training & handling VM files

Tina - Unhappy & wanted new Assignment - She basically left no choice in this.
Beth already handling those VM where Tina is listed as Defendant
Kathy - Deerbrook handling the 2 pending Deerbrook Issues
   Questioning the DB VIM Selection/Rejection criteria

CONFIDENTIAL
PRODUCED PURSUANT TO PROTECTIVE ORDER
HENSEL v. ALLSTATE
CASE NO. 3AN-02-7154 Civil

Exhibit 7
Page 14 of 14

116800