Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK  99501
Phone:   (907) 793-2200
Fax:     (907) 793-2299
E-mail:  gzipkin@guessrudd.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANIES, )<br>            )<br>         Plaintiff, )<br>            )<br>     v.     )<br>            )<br>CHARLES HERRON, )<br>            )<br>         Defendant. )<br>_____) | No. 3:04-cv-00043-TMB |

ALLSTATE'S TRIAL BRIEF

Pursuant to the court's Pre-Trial Order, dated February 1, 2008, Allstate Insurance Companies, by and through its attorneys, Guess & Rudd P.C., hereby submits its trial brief.

Introduction

Herron has conceded that he materially breached his insurance contract with regard to his duty to cooperate with Allstate in the defense of Trailov's claim by confessing judgment in favor of Trailov and assigning rights to her without the prior consent of Allstate.[1]  Therefore, the issue remaining in this case is whether, at the time Herron breached his insurance contract, Allstate had previously materially breached the insurance contract, thus excusing Herron's breach.  Herron has multiple theories for how Allstate allegedly materially breached the insurance contract before his material breach, but the Court's Order at Docket 160, dated October 19, 2006, limited which theories may proceed to trial.[2]

In making a determination whether Allstate materially breached the insurance contract prior to Herron's breach, the law does not require Allstate to have acted perfectly with regard to its adjusting of Trailov's claim.  All the law requires is that

---

[1] See Joint Pre-Trial Order, dated April 9, 2008, at p. 7.

[2] That Order held:

> The outcome of this case is dependent upon whether at the time Herron consented to judgment Allstate had so breached the insurance contract that it amounted to a repudiation sufficient to excuse Herron from his obligation to assist Allstate in the defense of the lawsuit.  This, in turn depends on whether Allstate's failure to accept the policy limits demand made on April 10, 2003, within the time specified, May 16, 2003, was unreasonable under all the facts and circumstances.

Allstate act reasonably under all the circumstances.[3]  Therefore, the jury must evaluate Herron's allegations with an eye towards the reasonableness of Allstate's actions.

Relevant Facts

The parties have previously provided the court with a detailed list of uncontested facts. Allstate will not restate those facts here.

This is a case in which Allstate's claim handlers acted properly to obtain relevant records, to evaluate the evidence regarding Allstate's insured's liability and Trailov's damages, to initiate and maintain good lines of communication with Allstate's insured and his attorney (Mr. Valcarce) and Trailov's attorney (Ms. Power), to act reasonably and consistent with Allstate's claim processes in reaching the determination that Allstate should accept Power's demand that it offer Trailov the full "per person" liability limit of $112,500 in settlement of her claim.  It is certainly true that mistakes were made in the course of handling Trailov's claim, but none of those mistakes were serious mistakes and none of them evidence conscious wrongdoing of any kind.  The test is not whether a given claim was handled perfectly.  Rather, the test is whether Allstate's

---

[3] See Peter v. Progressive Corp., 2006 Alas. LEXIS 27 (Alaska Feb. 22, 2006) citing Jackson v. American Equity Equity Ins. Co., 90 P.3d 136, 143 (Alaska 2004).

conduct, including the timing of its policy limits offer to Trailov, was reasonable under all of the circumstances. It was.

In addition, Herron must prove by a preponderance of the evidence that Allstate's conduct, including the timing of Allstate's settlement offer to Trailov, caused prejudice to Herron. He cannot do so.

### C. Issues Remaining for Trial

As Allstate understands Herron's position, he has four separate theories for how Allstate materially breached the insurance contract, which excuse his material breach of his duty to cooperate with Allstate in the defense of Trailov's claim. These are:

1. Allstate materially breached the insurance contract by failing to offer full policy limits to Trailov on or before May 16, 2003;

2. Allstate materially breached the insurance contract by failing to offer full policy limits to Trailov in response to her attorney's demand;

3. Allstate materially breached the insurance contract by negligently adjusting Trailov's claims; and

4. Allstate materially breached the insurance contract by acting in bad faith with regard to adjusting Trailov's claim.

Herron's third and fourth theories are the subject of currently pending motions in limine and it is Allstate's position that facts relating to those claims should not proceed to the

jury for the reasons stated in those motions and in the Court's Order at Docket 160. However, Allstate will address each of these issues in turn below.

      1.      Allstate Did Not Materially Breach the Insurance Contract by Failing to Offer Full Policy Limits to Trailov on or Before May 16, 2003.

In situations where the insurer is defending a claim against its insured and an adverse verdict in excess of policy limits is substantially likely, the insurer has a duty to offer in settlement that portion of the projected money judgment which it contractually agreed to pay.[4] In other words, the insurer has the duty to tender " policy limits" to settle a plaintiff's demand when there is a substantial likelihood of an excess verdict against the insured.[5]

However, a material breach of the insurance contract arises only when the insurer's failure to offer full policy limits by a particular date was unreasonable under the circumstances. In other words, if there was a delay between the date when the insurer knew or should have known that there was a substantial likelihood of an excess verdict against the insured, and the date when the insurer offered policy limits, the question that must be asked is, "Was that delay reasonable under all of the circumstances?"[6]

---

[4] Schultz v. Travelers Indem. Co., 754 P.2d 265 (Alaska 1988).

[5] See Jackson v. American Equity Insurance Co., 90 P.3d 136 (Alaska 2004).

[6] Peter v. Progressive Corp., 2006 Alas. LEXIS 27 (Alaska Feb. 22, 2006) citing Jackson 90 P.3d at 143.

There is no evidence that Allstate acted unreasonably under the circumstances. All the evidence demonstrates that Kathy Berry was working politely and cooperatively with Michele Power to reach a settlement in this case. Berry had to send all communications to Trailov through Power so, in essence, Berry was forced to follow the pace set by Power. Power set the pace. It was not urgent. The evidence also demonstrates that Berry had to, and did, follow a procedure to receive authority from her local supervisor to offer policy limits to Trailov. Berry extended the policy limits offer as soon as she had vetted the information through her supervisor and had the authority to do so.

If there was a delay, it must have resulted in some prejudice (or harm) to the insured or it is not a material breach. Therefore, another question that <u>must</u> be asked is "did the delay, if any, result in harm or prejudice to Herron?" In turn, to determine that Herron suffered some prejudice or harm as a result of Allstate's alleged delay, "Trailov and Kenick would had to have been prejudiced by the [alleged] failure and justified in terminating any further negotiations."[7] There is no evidence that either Herron or Trailov were prejudiced or harmed by Allstate offering to settle for policy limits on May 30, 2003, instead of May 16, 2003.

---

[7] Court's Order at Docket 160, dated October 19, 2006, at p. 16.

2.  **Allstate Did Not Materially Breach the Insurance Contract by Failing to Offer Full Policy Limits to Trailov in Response to Her Attorney's Demand.**

Herron also claims that Allstate materially breached the insurance contract by failing to offer full policy limits to Trailov by May 16, 2003, in response to her attorney's demand. The first issue that needs to be addressed at trial is whether Trailov's demand contained a firm deadline. The evidence is clear that the demand did <u>not</u> contain a firm deadline. Moreover, Allstate met the terms of the "deadline" in the demand letter by its continued "discussion regarding pre-filing resolution." Thus, when it accepted the policy limits demand to settle Trailov's claim on May 30, 2003, Allstate was in compliance with the "deadline."

Power's April 10, 2003 letter stated that her previous offer to settle for policy limits would "be revoked on May 16, 2003, and a complaint will be filed, <u>unless</u> there is some discussion regarding pre-filing resolution." The only reasonable reading of this sentence is that the policy limits settlement offer would remain open so long as there were continuing settlement discussions. In other words, May 16 was not a "drop dead deadline." Berry's May 9 letter seeking information to allow her to complete her evaluation was a discussion regarding resolution. And, her May 16, 2003 letter is clear evidence that demonstrates she was continuing to work with Ms. Power toward the resolution of Trailov's claim. That letter stated that Allstate was continuing to evaluate

the claim and would respond by "the end of the month." That letter also invited Power to call Berry if she had any questions.

Furthermore, even if the jury finds that Trailov's demand contained a firm deadline, then the jury must also determine whether Allstate's failure to meet that deadline was a material breach of Allstate's duties towards Herron. A failure to meet a policy limits demand by a specifically stated date is not a material breach unless the circumstances, including the language of the demand, indicate that performance by that date is important.[8]

In considering whether an insurer's failure to meet a policy limits demand by a specifically stated deadline constitutes a material breach, other considerations include: (1) the extent to which the delay in making a policy limits offer deprived the insured of the benefit he reasonably expected and the extent to which he can be adequately compensated; (2) the extent of the forfeiture by the party failing to perform or offering to perform by the stated deadline; (3) the reasonableness of the injured party's conduct in communicating his grievances and in seeking satisfaction, including whether the injured party responded to any requests to extend the stated deadline; and (4) the nature of the behavior of the party failing to perform or to offer to perform, including

---

[8] See Restatement (Second) of Contracts, §242(c); and Court's Order dated October 19, 2006, Docket 160, p.16.

whether the party failing to perform or offering to perform had sufficient information to perform or offer to perform by the stated deadline.[9] When applying the facts and taking all of these factors into consideration, it is clear that Allstate did not materially breach its insurance contract with Herron by not offering policy limits to settle with Trailov by May 16, 2003.

    3.    Allstate Did Not Materially Breach the Insurance Contract by Negligently Adjusting Trailov's claims.

Again, Allstate does not believe that Herron should be allowed to present evidence to the jury referencing Allstate's alleged negligent adjusting of Trailov's claim.[10] This Court has previously held that "[t]here is no evidence that the other alleged Allstate transgressions (those unrelated to the policy limits demand), even if they did in fact occur, caused Herron any harm, injury or damage." Negligent adjusting of a claim against an insured is not a material breach unless the conduct resulted in harm or prejudice to the insured, Herron. Therefore, Allstate's alleged negligent adjusting cannot constitute a material breach of the insurance contract.

---

[9] Comment (b) to Restatement (Second) of Contracts, § 242(c); and Court's Order dated October 19, 2006, Docket 160, p. 16-17.

[10] See Allstate's Motion In Limine No. 2 to Preclude Evidence or Argument of Allegations Unrelated to Allstate's Conduct in Response to Trailov's April 10, 2003, Demand, dated April 1, 2008.

However, if these allegations are allowed to be presented to the jury, the jury must be properly instructed with regard to the required element of harm or prejudice to the insured.[11]  To reach a determination that Herron suffered some prejudice or harm as a result of Allstate's conduct, it must also be found that Trailov was prejudiced, or harmed, by Allstate's allegedly negligent conduct.  There is no evidence that either Herron or Trailov suffered any prejudice or harm from any of Allstate's alleged acts of negligent claim handling.

    4.    <u>Allstate Did Not Materially Breach the Insurance Contract by Acting in Bad Faith with Regard to Adjusting Trailov's Claim.</u>

Herron also claims that Allstate acted in bad faith with regard to adjusting Trailov's claim.  Again, the court's previous holding demonstrates why this claim cannot proceed to the jury.  It held, "[i]ndeed, how Allstate concealed the potential UIM claim and separate provision for the medical payments from Kenick and Trailov, represented by counsel who was furnished a copy of the insurance policy and presumptively familiar with Alaska law, is explicable."[12]  If the bad faith claim is allowed to proceed to the jury, Herron has a very high burden to establish this claim.

---

[11] See Continental Ins. Co. v. Bayless and Roberts Inc., 608 P.2d 281, 293 (Alaska 1980).

[12] Order at Docket 160, dated October 19, 2006.

The Alaska Supreme Court stated that it has traditionally aligned Alaska with those jurisdictions following <u>Gruenberg v. Aetna Ins. Co.</u>, 108 Cal. Rptr. 480, 510 P.2d 1032 (Cal. 1973), which is the first case to apply bad faith as a tort in first-party actions.[13] That Court's articulation of bad faith requires <u>both</u> unreasonable conduct and bad faith.[14]

While the Alaska Supreme Court has thus far declined to comprehensively define the elements of a bad faith action, it reiterated its prior alignment with <u>Anderson v. Continental Ins. Co.</u>, 271 N.W.2d 368 (Wis. 1978), which held that:

> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that <u>the tort of bad faith is an intentional one</u>...[15]

The tort of bad faith is an intentional one, requiring (1) the absence of a reasonable basis for the insurer's actions <u>and</u> (2) the insurer's knowledge or reckless disregard of the lack of a reasonable basis for its actions.[16] Herron will have to show that

---

[13] <u>Hillman v. Nationwide Mut. Fire Ins. Co.</u>, 855 P.2d 1321, 1323 (Alaska 1993).

[14] <u>Id.</u> at 1323-24, citing <u>Gruenberg</u>, 510 P.2d at 1038. A similar double requirement was imposed in <u>Nobel v. Nat'l Am. Life Ins. Co.</u>, 624 P.2d 866 (Ariz. 1981), cited by <u>State Farm Fire & Casualty Co. v. Nicholson</u>, 777 P.2d 1152 (Alaska 1989).

[15] <u>Hillman</u>, 855 P.2d at 1324, <u>citing</u> <u>Anderson</u>, 271 N.W.2d at 376-77 (emphasis added).

[16] <u>Id.</u>

Allstate's conduct "was of such an arbitrary and reprehensible nature as to constitute bad faith, meaning conscious doing of wrong, or breaching a known duty through some motive of interest or ill will."[17] No such "conscious doing of wrong" or "motive of interest or ill will" is present here, and Herron has wholly failed to produce any evidence that any Allstate employee intended to deprive Trailov of uninsured motorist coverage benefits, or in any other way acted with malice in adjusting Trailov's claim.

## Conclusion

The Court's Order at Docket 160, dated October 19, 2006, properly framed the issues for trial:

> The outcome of this case is dependent upon whether at the time Herron consented to judgment Allstate had so breached the insurance contract that it amounted to a repudiation sufficient to excuse Herron from his obligation to assist Allstate in the defense of the lawsuit. This, in turn depends on whether Allstate's failure to accept the policy limits demand made on April 10, 2003, within the time specified, May 16, 2003, was unreasonable under all the facts and circumstances.

Therefore, the only information that should be presented to the jury is that which has any bearing on the reasonableness of Allstate's conduct with regard to its offer to settle Trailov's claim for policy limits on May 30, 2003 instead of May 16, 2003.

---

[17] See Federal Jury Practice and Instructions, Fifth Edition, §127.20.

DATED at Anchorage, Alaska, this 16th day of May, 2008.

GUESS & RUDD P.C.
Attorneys for Allstate


By:    s/Gary A. Zipkin
      Guess & Rudd P.C.
      510 L Street, Suite 700
      Anchorage, Alaska  99501
      Phone: 907-793-2200
      Fax:   907-793-2299
      Email: gzipkin@guessrudd.com
      Alaska Bar No. 7505048

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the
16th day of May, 2008, a copy
of the foregoing document was served
electronically on:

Rebecca J. Hozubin
Mark A. Sandberg
Mark E. Wilkerson

Guess & Rudd P.C.


By:    S/Gary A. Zipkin

F:\DATA\5976\1\PLEADING\18 CAR trail brief.doc