Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK  99501
Phone:    (907) 793-2200
Fax:       (907) 793-2299
E-mail:    gzipkin@guessrudd.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANIES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHARLES HERRON, )<br>)<br>Defendant. )<br>_____) | No. 3:04-cv-00043-TMB |

ALLSTATE'S BRIEFING RE PROOF OF PREJUDICE TO THE CLAIMANT

       This court's Order, dated October 19, 2006 (Docket No. 160) correctly held that "for Herron to have been prejudiced by the delay, Trailov and Kenick would had to have been prejudiced by the failure and justified in termination any further discussions." There is ample case law which supports this conclusion.   There is no basis to conclude that the Alaska Supreme Court would make a determination inconsistent with these

holdings.  In fact, prior Alaska Supreme Court decisions indicate that it has adopted a consistent position.  Therefore, this court should not certify the question posed by Herron's attorney to the Alaska Supreme Court.  Trial should proceed as scheduled with Herron bearing the burden of proving that Trailov was prejudiced by Allstate's offering of policy limits on May 30, 2003, instead of May 16, 2003.[1]  If Herron concedes he cannot meet this burden, Allstate suggests the court take Herron up on his offer and enter a directed verdict in Allstate's favor.

Furthermore, Herron's last ditch effort to avoid trial in this matter should be rejected on procedural grounds.  Herron raised what amounts to a grossly untimely motion for reconsideration <u>three</u> business days before the start of trial.[2]  The court's Order on this subject was issued <u>over</u> 18 months ago (Docket 160).  In that time, Allstate has prepared its case in a manner consistent with that Order and more recently spent countless hours preparing for trial as it was framed by this Order.  To request a "change to the game" on the eve of trial (and raising it at what was supposed to be the <u>final</u> pre-trial hearing) is grossly inappropriate.  Herron did not even provide Allstate copies of his proposed "question" until the <u>middle</u> of the pre-trial hearing.

---

[1] At the pre-trial hearing on May 29, the undersigned was willing to "meet Mr. Sandberg halfway" and agree that prejudice to Trailov was only required under any theory not tied to May 16 deadline.  However, as the authorities discussed below demonstrate, the claimant should be required to prove prejudice even if an insurer missed a "firm deadline."

[2] If trial had not been postponed a day it would have only been two business days pre-trial.

In Peter v. Progressive Corp., the Alaska Supreme Court held that "excess liability arises only if an insurer's failure to settle for policy limits was unreasonable".[3] In other words, in order to prevail on the claim that Allstate breached the insurance contract prior to Herron's breach, he must prove that Allstate did not act reasonably in its settlement negotiations with Trailov. However, it is impossible to determine if Allstate acted reasonably in its negotiations without also looking at the conduct of the party with whom Allstate was negotiating. In other words, Allstate's conduct cannot be evaluated in a vacuum. Similarly, how can a jury reach a determination that Allstate acted unreasonably in its negotiations without evaluating whether the claimant -- Trailov -- was harmed by its actions? It cannot.

Likewise, Wade v. EMCASCO articulates a reasonableness standard. Wade is one of the most recent articulations of the applicable standards in establishing a breach of the insurance contract when the insurer did not "refuse a settlement offer, but was delayed in accepting one."[4] That court reviewed and analyzed numerous other authorities before reaching its conclusions that the claimant's conduct, motives, and alleged prejudice were probative as to whether the insurer acted unreasonably or, in other

---

[3] Peter v. Progressive Corp., 2006 Alas. LEXIS 27 (Alaska 2006)(unpublished), citing Jackson v. American Equity Ins. Co., 90 P.3d 136, 143 (Alaska 2004).

[4] 483 F.3d 657 (10th Cir. 2007).

words, in bad faith. Any other holding "would be turning the cause of action on its head."[5]

The facts in Wade are very similar to the facts of this case. The accident in Wade occurred on February 23, 2001.[6] On May 1, 2001, a policy limits demand was made.[7] On May 21, 2001, the claimant imposed a June 15, 2001, deadline for accepting the policy limits demand.[8] On August 2, 2001, a second demand to settle for policy limits was conveyed and then withdrawn on August 20, 2001.[9] The insurer offered policy limits on November 1, 2001.[10] If anything, the facts in Wade are far more favorable to the insured. In Wade there was a far greater delay between the offer of limits and the imposed deadline and, unlike here, there was no evidence of communication from the insurer regarding when it would have a response.

The lower court granted EMCASCO's summary judgment motion. In affirming the lower court's ruling, the Wade court said that courts cannot presume that a failure to reach settlement within an arbitrary and unilateral deadline is the fault of the

---

[5] Id. at 674.

[6] Id. at 660.

[7] Id. at 661.

[8] Id. at 662.

[9] Id.

[10] Id. at 663.

ALLSTATE'S BRIEFING RE PROOF OF PREJUDICE TO THE CLAIMANT
Allstate Insurance Co. v. Herron; Case No. 3:04-cv-0004-TMB
Page 4 of 9

insurer. Where a claimant arbitrarily withdraws or places a deadline on a policy limits demand and later rejects an identical offer it is the claimant's conduct, not the insurer's, that is the legal cause of the failure to settle.[11] To reach a determination that the insurer acted in bad faith, the burden is on the claimant to demonstrate why the offer is no longer good. To hold otherwise would allow claimants to create bad faith irrespective of an insurer's diligence. Wade went on to conclude:

> It is therefore necessary to take into consideration . . . relevant aspects of the third-party plaintiff's conduct, including any responsibility the plaintiff might have for the insurer's lack of adequate information upon which to judge a proposed settlement offer and <u>the reasons the plaintiff had for declining to entertain an offer after expiration of a deadline</u>.[12]

Similarly, in Miel v. State Farm, the court addressed a "delayed" acceptance of a policy limits demand.[13] Miel held that the trial court erred when it did not allow State Farm to present testimony about the claimant's motives for refusing to accept policy limits twelve days after the deadline. "[T]he reasons the plaintiff adhered to

---

[11] Id. at 674.

[12] Id. at 670 (emphasis supplied).

[13] 912 P.2d 1333 (Arizona 1995). The relevant facts of Meil are as follows: The accident occurred in December 1988. By April 1989 it was reasonably clear that the claimant had suffered a permanent hearing loss. A policy limits demand, $25,000, was made on May 4, 1989, requiring a response by May 19, 1989. The claims representative failed, in violation of State Farm's policy, to immediately refer the demand to her supervisor or to inform the insured. The claims representative did not take the demand to her supervisor until May 31, 1989, at which time she received policy limits authorization. The claims representative immediately called claimant's attorney and left a message agreeing to policy limits. The claimant rejected the offer by filing suit on May 31, 1989.

the deadline are relevant to whether the insurer acted unreasonably."[14] "[W]hat is reasonable on the part of an insurer … must be judged in light of all the facts surrounding the demand."[15] This allows inquiry into whether the refusal to accept an offer after a specific deadline was to set up a bad faith claim.

Adduci v. Vigilant Insurance Co., is another similar case.[16] The Adduci court held that the allegations of a delayed settlement were insufficient to establish a claim for bad faith:

> Here, the allegations show that Insurer did respond to the claimants' demand. While this response was forthcoming after passage of the claimants' self-imposed deadline, it followed only 40 days thereafter, and came only 13 months after the occurrence of the accident giving rise to the claimants' suit. <u>No facts sufficiently indicate why the claimants found it impossible to accept the offer at this time, so as to fairly place the blame for failure of settlement upon insurer.</u> The allegations of the complaint simply do not show why the offer <u>would have been good on May 7, 1976, but was not acceptable on June 18, 1976.</u> In such circumstances, we

---

[14] Id. at 1339.

[15] Id.

[16] 424 N.E.2d 645 (Illinois 1981). The accident happened on May 10, 1975. Suit was filed on May 19, 1975. Medical records and reports were produced in November 1975. Policy limits demands were made in mid-1975 and February 1976. On April 7, 1976 the insurer acknowledged that the damages exceeded policy limits. On April 7, 1976, claimants made a written demand for policy limits and set a 28-day deadline unless a written request for an extension on reasonable grounds was requested. No timely response was made and the claimant continued preparation for trial by amending the complaint to add two additional plaintiffs. On June 7, 1976, the insurer responded to the April 7 demand by saying that a response would be forthcoming at the June 18, 1976, pretrial conference. At that conference, 72 days after the demand and some 40 days after the deadline, the insurer offered policy limits.

cannot say that the recited facts adequately allege a breach of duty on the part of Insurer.[17]

In Humphrey v. Founders Insurance Co., the court granted the insurer's motion for summary judgment on grounds any delay in settlement did not prejudice the claimant.[18] The court held:

> The court found that the claimant could offer no explanation as to why he could not accept the settlement offer or how he would be prejudiced if he had accepted the offer. The court rejected the claimant's argument that negotiations had ceased after the insurer's initial rejection because the claimant had never established a time line for settlement negotiations. Because the insurer believed that negotiations were ongoing and offered to settle for the policy limits before the claimant filed suit, within two months of the initial rejection, the court found that the claimant could not show that the insurer acted in bad faith. In addition, the court found the claimant failed to present any evidence that the insurer placed its interests above the insured's. Accordingly, the court affirmed the motion to dismiss claimant's lawsuit.[19]

In Meixell v. Superior Insurance Co., the claimant never offered any explanation about how he would have been prejudiced if he had accepted the "delayed"

---

[17] Id. at 649 (emphasis supplied).

[18] Humphrey v. Founders Ins. Co., 2006 U.S. Dist. LEXIS 22908, * 17-18 (N.D. Ind. Apr. 7, 2006). The accident in Humphrey occurred on September 15, 2000. On November 6, 2000, claimant requested that the insurer make an immediate coverage determination. On November 15, 2000, claimant made a policy limits demand with a November 17, 2000, deadline. The insurer responded on November 16, 2000, that it would need more time and asked claimant for a copy of his medical bills. The insurer offered the policy limits on December 22, 2000.

[19] Id. (emphasis supplied).

offer.[20] Therefore, the court concluded that the insured was not harmed and that there was no bad faith. The Meixell court determined that the claimant must show a breach of duty that was the legal cause of the harm. In order to do so "the claimant must allege sufficient facts to demonstrate why the offer of settlement after the deadline could not have been accepted."[21] By failing to do so, the claimant could not show proximate cause.

## Conclusion

The Alaska Supreme Court has not directly addressed this issue. However, it has held that the reasonableness of the insurer's conduct is a key element to a claim that it failed to settle for policy limits. Other jurisdictions have further detailed what types of facts go into making a reasonableness determination. There is no reason to believe that the Alaska Supreme Court would not reach the same conclusion with regard to what facts are relevant to determining whether an insurer acted reasonably under similar circumstances.

---

[20] 230 F.3d 335, 337-338 (7th Cir. 2000).

[21] Id. at 337 (emphasis supplied) (internal citations omitted).

DATED at Anchorage, Alaska, this 30th day of May, 2008.

GUESS & RUDD P.C.
Attorneys for Allstate


By:   s/Gary A. Zipkin
      Guess & Rudd P.C.
      510 L Street, Suite 700
      Anchorage, Alaska  99501
      Phone: 907-793-2200
      Fax:   907-793-2299
      Email: gzipkin@guessrudd.com
      Alaska Bar No. 7505048

CERTIFICATE OF SERVICE

I hereby certify that on the
30th day of May, 2008, a copy
of the foregoing document was served
electronically on:

Rebecca J. Hozubin
Mark A. Sandberg
Mark E. Wilkerson

Guess & Rudd P.C.


By:   s/Gary A. Zipkin

F:\DATA\5976\1\PLEADING\23 car Author re prejudice.doc